| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| MATTHEW W. GRIMSHAW, #210424<br>grimshaw@marshackhays.com<br>DAVID A. WOOD, #272406<br>dwood@marshackhays.com<br>AARON E. DE LEEST, #216832<br>adeleest@marshackhays.com<br>MARSHACK HAYS WOOD LLP<br>870 Roosevelt, Irvine, CA 92620<br>Telephone: 949-333-7777<br>Facsimile: 949-333-7778<br><br>☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP, | CASE NO.: 8:24-bk-11945-TA<br>CHAPTER: 11 |
|---|---|
| • ALL DEBTORS<br>☐ Caduceus Physicians Medical Group, dba Caduceu<br>☐ Caduceus Medical Services, LLC, ONLY<br><br>Debtor(s). | **NOTICE OF SALE OF ESTATE PROPERTY** |

| **Sale Date:** 03/19/2025 | **Time:** 10:00 am |
|---|---|
| **Location:** 411 W. Fourth Street, Santa Ana, CA 92701 - Ctrm 5B - ZoomGov  Audio/Video | |

**Type of Sale**: ☒ Public    ☐ Private        **Last date to file objections**: 03/12/2025

**Description of property to be sold**:
 Certain tangible and intangible assets ("Purchased Assets"), used in connection with Debtors' medical practices operated at the Debtors' clinic located at 18200 Yorba Linda Boulevard, Suite 111, Yorba Linda, California 92886 (the "Clinic," and the medical practices operated at the Clinic referred to herein as the "Business"). See Motion for complete details.

**Terms and conditions of sale**:
 See Attached.

**Proposed sale price**: $ 1,500,000.00

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 1                                    **F 6004-2.NOTICE.SALE**

**Overbid procedure (*if any*)**:

See Attached.


**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**

Date: March 19, 2025; Time: 10:00 a.m.
Place: 411 W. Fourth Street, Santa Ana, CA 92701
Ctrm: 5B

Video/audio web address: https://cacb.zoomgov.com/j/1619816052; ZoomGov meeting number: 161 981 6052 Password: 046472 Telephone conference lines: 1 (669) 254 5252 or 1 (646) 828 7666 For more information on appearing before Judge Albert by ZoomGov, please see the "Notice of Video and Telephonic Appearance Procedures for Judge Theodor C. Albert's Cases" on the Court's website at: https://www.cacb.uscourts.gov/judges/honorable-theodor-c-albert under the "Telephonic Instructions" section.


**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*)**:

MATTHEW W. GRIMSHAW
mgrimshaw@marshackhays.com
DAVID A. WOOD
dwood@marshackhays.com
AARON E. DE LEEST
adeleest@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778


Date: 02/26/2025

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 2                                    **F 6004-2.NOTICE.SALE**

# BID PROCEDURE ORDER

1  MATTHEW W. GRIMSHAW, #210424
   mgrimshaw@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  AARON E. DE LEEST, #216832
   shasselberger@marshackhays.com
4  MARSHACK HAYS WOOD LLP
   870 Roosevelt, Irvine, CA 92620
5  Telephone: 949-333-7777
   Facsimile: 949-333-7778
6
   Attorneys for Debtor,
7  CADUCEUS PHYSICIANS MEDICAL GROUP,
   a Professional Medical Corporation, dba
8  CADUCEUS MEDICAL GROUP and
   CADUCEUS MEDCAL SERVICES, LLC
9

**FILED & ENTERED**

**FEB 20 2025**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

10            UNITED STATES BANKRUPTCY COURT

11      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| 12  In re | Case No. 8:24-bk-11945-TA |
| 13  CADUCEUS PHYSICIANS MEDICAL | Chapter 11 |
| 14  GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP, | (Jointly Administered with 8:24-bk-11946-TA) |
| 15         Debtor. | AMENDED ORDER GRANTING |
| 16  ☒   ALL DEBTORS | DEBTORS' MOTION FOR ORDER APPROVING BIDDING PROCEDURES |
| 17  ☐   Caduceus Physicians Medical Group, dba Caduceus Medical Group, ONLY | [EXHIBIT ATTACHED] |
| 18  ☐   Caduceus Medical Services, LLC, ONLY | Hearing: Date:  February 12, 2025 |
| 19 | Time: 10:00 a.m. Ctrm: 5B |
| 20 | Place: 411 W. Fourth Street Santa Ana, CA 92701 |

22         Upon consideration of the motion ("Motion") of Caduceus Physicians Medical Group, a

23  Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus

24  Medical Services, LLC ("CMS") (collectively, CPMG and CMS are defined as "Debtors") for an

25  order (i) approving sale and bidding procedures for sale of certain tangible and intangible assets

26  ("Purchased Assets"), used in connection with Debtors' medical practices operated at the

27  Debtors' clinic located at 18200 Yorba Linda Boulevard, Suite 111, Yorba Linda, California

28  92886 (the "Clinic," and the medical practices operated at the Clinic referred to herein as the

1

307628v2/1436-003

EXHIBIT 2, PAGE 96

"Business") and to enter into certain other agreements in connection therewith (the

"Transaction"); (ii) scheduling a hearing to approve the sale of the Purchased Assets at Auction,

on **March 19, 2025, at 10:00 a.m., pacific time**;[1] (ii) authorizing the Debtor to enter into a

Stalking Horse APA with a Stalking Horse Purchaser; (iv) scheduling an auction for the Assets

(the "Auction"); and (v) granting related relief; and due and proper notice of the Motion having

been given; and it appearing that no other or further notice of the Motion is required except as set

forth herein; and it appearing that the Court has jurisdiction to consider the Motion in accordance

with 28 U.S.C. §§ 157 and 1334 and it appearing that this is a core proceeding pursuant to 28

U.S.C. §157(b)(2); and it appearing that venue of this proceeding and the Motion is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion; and the

Bidding Procedures Hearing (as defined herein) having been held; and the Court having found

and determined that the relief set forth herein is in the best interests of the Debtor, its estate and

creditors and all parties in interest, and that the legal and factual bases set forth in the Motion and

the evidence adduced at the Bidding Procedures Hearing establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby,

> **IT IS HEREBY FOUND AND DETERMINED** as follows[2]:

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.      Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105, 363, and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules.

D.      In the Motion and at the hearing on the relief set forth herein (the ''Bidding

---

[1] The auction date has been changed from March 12, 2025, to March 19, 2025, based on the availability of the Bankruptcy Court (as defined in the Bid Procedure Motion).

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

307628v2/1436-003

1   Procedures Hearing"), the Debtors demonstrated that good and sufficient notice of the relief

2   granted by this Order has been given and no further notice is required except as otherwise

3   provided for herein. A reasonable opportunity to object or be heard regarding the relief granted

4   by this Order (including, without limitation, with respect to the Bidding Procedures) has been

5   afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other

6   interested parties.

7        E.    The Debtors have articulated good and sufficient business reasons for the Court to

8   approve the Bidding Procedures set forth in the Motion. The Bidding Procedures are fair,

9   reasonable, and appropriate and are designed to maximize the value of the proceeds of one or

10  more Sale Transactions of all or substantially all of the Debtors' Assets. The Bidding Procedures

11  were negotiated in good faith and at arm's length and are reasonably designed to promote a

12  competitive and robust bidding process to generate the greatest level of interest in the Debtors'

13  Assets.

14       F.    The Debtors have articulated good and sufficient business reasons for the Court to

15  approve the Bidding Procedures. The Bidding Procedures are: (i) fair, reasonable, and

16  appropriate; and (ii) designed to maximize recovery with respect to the Sale. The Bidding

17  Procedures were negotiated in good faith and at arm's-length and are reasonably designed to

18  promote a competitive and robust bidding process to generate the greatest level of interest in the

19  Debtor's Assets.

20       G.    The Stalking Horse form APA provides the Debtors with the opportunity to sell

21  such Assets in a manner designed to preserve and maximize their value and provides a floor for a

22  further marketing and auction process. Without the Stalking Horse form APA, the Debtors are at

23  significant risk of realizing a lower price for their Assets. Pursuit of a Stalking Horse Purchaser

24  as a "stalking horse bidder" and the Stalking Horse APA as a "stalking horse purchase

25  agreement" is in the best interests of the Debtors and their estates and their creditors, and it

26  reflects a sound exercise of the Debtors' business judgment.

27       H.    Entry of this Order is in the best interests of the Debtor, its estate and creditors

28  and all other interested parties.

3

EXHIBIT 2, PAGE 98

**IT IS HEREBY ORDERED THAT:**

Based on the foregoing, the Debtors respectfully request that this Court enter an order:

1.       The Motion is Granted in its entirety;

2.       Any objections to the Motion as it pertains to the Bidding and Auction Process or the relief granted by this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

3.       Sale of the Purchased Assets at Auction is authorized;

4.       Bidding Procedures are approved as set forth in the Motion. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5.       The Debtors are hereby authorized to conduct the Auction pursuant to the terms of the Bidding Procedures and this Order, provided however that the Debtors have the right to seek to alter or amend the Bidding Procedures by application to this Court.

6.       The Debtors shall have the right, in its reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine are business-sensitive or otherwise not appropriate for disclosure to an Acceptable Bidder. The Debtors and their estates shall be authorized to provide due diligence information to Acceptable Bidders.

7.       For all purposes under the Bidding Procedures: (a) the Stalking Horse Purchaser, if any, shall be considered a Qualified Bidder, and the Stalking Horse APA shall be considered a Qualified Bid; (b) the Stalking Horse Purchaser, if any, is, and will be deemed to be, a Qualified Bidder for all purposes under the Bidding Procedures, without regard to any of the requirements or conditions set forth herein and without any other or further action by the Stalking Horse Purchaser; and (c) in determining whether the Acceptable Bidders constitute Qualified Bidders, the Debtors may consider a combination of bids for the Assets.

8.       The Bidding Procedures shall apply to the Acceptable Bidders, the Qualified Bidders, the submission, receipt, and analysis of all bids relating to the Sale, and the conduct of the Sale and the Auction.

4

307628v2/1436-003

9.    The Debtors' decision to assume and assign the Purchased Contracts to any Stalking Horse Purchaser or, in the event the Stalking Horse Purchaser is not the Successful Bidder, then to the Successful Bidder, is subject to this Court's approval and the closing of the Sale. Accordingly, absent this Court's approval and the closing of the Sale, the Purchased Contracts shall not be deemed assumed or assumed and assigned, and shall in all respects be subject to further administration by the Debtors and their estates under the Bankruptcy Code in connection with this chapter 11 case (the "Chapter 11 Case").

10.    The Stalking Horse form APA is approved;

11.    The Amended Sale Notice and bid procedure deadlines attached here as Exhibit "1" are approved;

12.    Within (7) days of the entry of the Bidding Procedure Order, the Debtors will also provide notice of the March 19, 2025, Auction on their restructuring website with Stretto; and

13.    A hearing on the Sale Motion has been rescheduled for March 19, 2025 at 10:00 a.m.

# # #

Date: February 20, 2025

*Theodor C. Albert*

Theodor C. Albert
United States Bankruptcy Judge

4917-4115-7661, v. 2

307628v2/1436-003

# EXHIBIT 1

1 MATTHEW W. GRIMSHAW, #210424
grimshaw@marshackhays.com
2 DAVID A. WOOD, #272406
dwood@marshackhays.com
3 AARON E. DE LEEST, #340640
shasselberger@marshackhays.com
4 MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
5 Telephone: 949-333-7777
Facsimile: 949-333-7778
6
Attorneys for Debtor,
7 CADUCEUS PHYSICIANS MEDICAL GROUP,
a Professional Medical Corporation, dba
8 CADUCEUS MEDICAL GROUP and
CADUCEUS MEDCAL SERVICES, LLC
9
10                    UNITED STATES BANKRUPTCY COURT

11            CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12

| | |
|---|---|
| In re | Case No. 8:24-bk-11945-TA |
| CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP, | Chapter 11 |
| | (Jointly Administered with 8:24-bk-11946-TA) |
| Debtor. | **AMENDED NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE APA, BIDDING PROCEDURES, AUCTION, AND SALE HEARING** |
| ☒    ALL DEBTORS | |
| ☐    Caduceus Physicians Medical Group, dba Caduceus Medical Group, ONLY | Hearing: Date: **March 19, 2025** Time: 10:00 a.m. Ctrm: 5B |
| ☐    Caduceus Medical Services, LLC, ONLY | Place: 411 W. Fourth Street Santa Ana, CA 92701 |

22

23 TO THE HONORABLE THEODOR C. ALBERT, UNITED STATES BANKRUPTCY COURT

24 JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

25 PARTIES:

26        PLEASE TAKE NOTICE that Debtors, Caduceus Physicians Medical Group, a

27 Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus

28 Medical Services, LLC ("CMS") (collectively, CPMG and CMS are defined as "Debtors") are

seeking to sell certain tangible and intangible assets ("Purchased Assets"), used in connection

---
1
AMENDED NOTICE OF SALE

1 | with Debtors' medical practices operated at the Debtors' clinic located at 18200 Yorba Linda
2 | Boulevard, Suite 111, Yorba Linda, California 92886 (the "Clinic," and the medical practices
3 | operated at the Clinic referred to herein as the "Business") and to enter into certain other
4 | agreements in connection therewith (the "Transaction").

5 | **Summary of Key Dates Established by Bidding Procedures**

6 | (1) **Deadline to file Stalking Horse APA**: the Stalking Horse APA is attached as Exhibit 3
7 | to the Bidding Procedures Motion.

8 | (2) **Entry of the Amended Bidding Procedure Order**: February XX, 2025;

9 | (3) **Bid Deadline**: March 10, 2025, at 5:00 p.m., pacific time, deadline for which the Debtors
10 | must actually receive binding bids from parties;

11 | (4) **Sale Motion Deadline**: February 26, 2025, deadline by which the Debtors must file a
12 | sale motion for approval of the Successful Bidder at the Auction to be held on March 19,
13 | 2025;

14 | (5) **Sale Objection Deadline**: March 12, 2025, Deadline by which objections to the sale
15 | must be filed with the Bankruptcy Court;

16 | (6) **Auction/Sale Hearing:** March 19, 2025, at 10:00 a.m., date when the auction
17 | ("Auction"), if necessary, will be conducted in front of the United States Bankruptcy
18 | Court, Central District of California, Santa Ana Division, the Honorable Theodor C.
19 | Albert presiding ("Bankruptcy Court").

20 | PLEASE TAKE FURTHER NOTICE that by order, dated February X, 2025 [Docket No.
21 | [X] (the "Amended Bidding Procedures Order"), the Bankruptcy Court approved certain relief
22 | requested in the related motion [Docket No. [211]] (the "Bidding Procedures Motion"), and
23 | certain "Bidding Procedures" that govern the sale of the Purchased Assets to the highest or
24 | otherwise best bidders. Copies of the Bidding Procedures Motion, the Bidding Procedures Order,
25 | and the  Stalking Horse APA are available for download at https:// Cases.stretto.com/caduceus
26 | (the "Stretto Website") or from the Debtors' claims and noticing agent, Stretto, via telephone at
27 | 855-622-6657 or via email to TeamCaduceus@stretto.com. **Any interested bidder should**
28 |

EXHIBIT 1, PAGE 7
EXHIBIT 2, PAGE 103

1    **contact the Debtor's counsel at dwood@marshackhays.com or**

2    **mgrimshaw@marshackhays.com.**

3       PLEASE TAKE FURTHER NOTICE that the deadline to submit a bid for any Assets is

4   March 10, 2025, at 5:00 p.m., pacific time.

5       PLEASE TAKE FURTHER NOTICE that an auction for the Assets, unless cancelled or

6   adjourned in accordance with the Bidding Procedures Order, will be held on March 19, 2025, at

7   10:00 a.m. pacific time,  in front of the United States Bankruptcy Court, Central District of

8   California, Santa Ana Division, 411 W. Fourth Street, Santa Ana, CA 92701, the Honorable

9   Theodor C. Albert presiding ("Bankruptcy Court"), or virtually via telephone and/or video

10   conference pursuant to information to be timely provided by the Debtor to the Auction

11   Participants.

12       PLEASE TAKE FURTHER NOTICE that unless adjourned in accordance with the

13   Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to

14   consider the Sale on March 19, 2025, at 10:00 a.m. pacific time, subject to the Bankruptcy

15   Court's availability.

16       PLEASE TAKE FURTHER NOTICE that any objections to the Sale or the relief

17   requested in connection with the Sale, including any objection to the sale of any Purchased

18   Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of

19   the Bankruptcy Code, the identity of the Stalking Horse Purchaser, or the adequate assurance of

20   future performance by the Stalking Horse Purchaser but not including objections related to cure

21   amounts for the Purchased Contracts or general objections to the assumption and assignment of

22   the Purchased Contracts (each, a "Sale Objection"), must: (a) be in writing; (b) comply with the

23   Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d)

24   be filed with the Clerk of this Court, [address] (the "Clerk"), and proof of service of such Sale

25   Objection upon the Objection Notice Parties (as defined below) shall be filed with the Court as

26   and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. Sale

27   Objections must be filed with the Clerk on or before March 12, 2025.

28

3

AMENDED NOTICE OF SALE

1        You must also serve a copy of your Sale Objection upon David A. Wood and Matthew

2  W. Grimshaw (email: dwood@marshackhays.com; and mgrimshaw@marshackhays.com) at the

3  mailing address indicated in the upper left corner of the first page of this Notice, and upon the

4  Office of the United States Trustee, 4111 W. Fourth Street, Ste. 7160, Santa Ana, Ca 92701.

5       **PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE
BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER**

6  **APPLICABLE ORDER OF THE COURT ENTERED IN THIS CHAPTER 11 CASE MAY**

7  **RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION
FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE**

8  **DEBTOR'S ASSETS.**

9       **PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT
FILED AND SERVED ON OR BEFORE THE APPLICABLE SALE OBJECTION**

10  **DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE**

11  **OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND
BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY**

12  **ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

13

14  DATED: February X, 2025        MARSHACK HAYS WOOD LLP

15                          /s/ David A. Wood

16                By: _____

17                   MATTHEW W. GRIMSHAW
DAVID A. WOOD

18                   AARON E. DE LEEST
Attorneys for Debtors CADUCEUS

19                   PHYSICIANS MEDICAL GROUP, A
PROFESSIONAL MEDICAL CORPORATION

20                   dba CADUCEUS MEDICAL GROUP and
CADUCEUS MEDICAL SERVICES, LLC.

21

22

23

24

25

26

27

28

AMENDED NOTICE OF SALE

EXHIBIT 1, PAGE 9
EXHIBIT 2, PAGE 105

1

2    4900-7222-4029, v. 1

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

DECLARATION OF JOHN O'NEILL

307628v2/1436-003

# SALE TERMS AND OVERBID PROCEDURES

1.    **Bid Procedure Motion**

On February 5, 2025, as Dk. No. 211, the Debtors' filed a motion for approval of sale and bidding procedures for sale of the Purchased Assets. Through the Bid Procedure Motion, the Debtors' set forth the schedule for the marketing, and sale of the Debtors' assets. On February 12, 2025, the Court approved the Bid Procedure Motion and scheduled the Auction for March 12, 2025. On February 12, 2025, as Dk. No. 220, the Court entered an order granting the Bid Procedure Motion. On February 20, 2025, as Dk. No. 235, the Court entered an Amended order granting the Bid Procedure Motion and continuing the auction to March 19, 2025 at 10:00 a.m. ("Bid Order").

A.    **The Terms of the Sale**

In order to ensure that the Estate receives the maximum value for the Purchased Assets, the Debtors have marketed the Business and conduct a fair and open Auction subject to the sale and bidding procedures ("Bidding Procedures") contained herein. Below are the Bidding Procedures as approved by the Bid Order:

(1) **Stalking Horse Purchaser and Purchase Price:** As set forth more fully in the Stalking Horse APA, the minimum bid requirement is $1,500,000 (with a minimum deposit of $250,000), and the consideration for the Purchased Assets is: "[i]n consideration of the sale, conveyance, transfer and delivery of the Purchased Assets, and subject to the terms and conditions herein, Buyer agrees to pay an aggregate purchase price for the Purchased Assets of One Million Five Hundred Thousand Dollars ($1,500,000) plus the cure costs as described in Section 6 (the "Purchase Price"). The Purchase Price shall be delivered by Buyer to Seller (or its designee) on the Closing Date by wire transfer to such account(s) as may be designated by Seller. For the avoidance of doubt, Buyer is buying Seller's interests in the Purchased Assets free and clear of all liens, claims, and interests pursuant to Section 363(f) of the Bankruptcy Code;

(2) **Assets to be sold:** The Debtors shall offer for sale the Purchased Assets, provided that the Debtors determine that the aggregate consideration offered by any bid, or

combination of bids, for the Purchased Assets, satisfies the requirements set forth

herein, potential bidders may bid on all or any number of combination of the

Purchased Assets, however, expressly excluded is the Debtors' cash, and their interest

in the ERTC;

(3) **<u>Requirements to be deemed an acceptable bidder:</u>** Any person or entity that

wishes to conduct diligence about the Debtors (an "Interested Party") may request

access to the Debtors' confidential electronic data room concerning the Purchased

Assets. To become an acceptable bidder, and thus be able to conduct due diligence,

an acceptable bidder must execute a non-disclosure agreement, in form and substance

satisfactory to the Debtors, with the Debtors and submit the following documents

(collectively the "Preliminary Bid Documents").

Any Interested Party that wishes to participate in the bidding process for the

Purchased Assets other than in the case of the Stalking Horse Purchaser (each, a

"Potential Bidder") must first become an "Acceptable Bidder." To become an

Acceptable Bidder, an Acceptable Bidder must submit to the Debtors and its advisors:

a.  documentation identifying the Potential Bidder, its principals, and the
    representatives thereof who are authorized to appear and act on their behalf
    for all purposes regarding the contemplated transaction;

b.  an executed confidentiality agreement on terms acceptable to the Debtors, to
    the extent not already executed, which confidentiality agreement shall, among
    other
    terms, contain customary provisions regarding: (i) the nondisclosure of
    confidential information, (ii) prohibitions on contacting third parties in
    connection with a transaction, (iii) and the survival of certain provisions of the
    confidentiality agreement;

c.  evidence by the Potential Bidder of its sufficient financial capacity to close a
    proposed transaction, which may include financial statements of, or verified

financial commitments obtained by, the Potential Bidder (or, if the Potential

Bidder is an entity formed for the purpose of acquiring the Purchased Assets,

the party that will bear liability for a breach), the adequacy of which will be

assessed by the Debtors;

d.   a statement and other factual support that the Potential Bidder has a bona fide

interest in consummating a sale transaction, to the reasonable satisfaction of

the Debtors;

e.   written disclosure of any connections or agreements with the Debtors, the

Stalking Horse Purchaser, any other known Potential Bidder, or Qualified

Bidder (as defined below), "insiders" of the Debtors (as that term is

contemplated by 11 U.S.C. § 101(31)), or any manager or direct or indirect

equity security holder of the Debtor; and

f.   documentation identifying the Potential Bidder, its principals, and the

representatives thereof who are authorized to appear and act on its behalf for

all purposes regarding the contemplated transaction.

Only Acceptable Bidders may submit Bids. Notwithstanding anything to the

contrary herein, and for the avoidance of doubt, for all purposes under the Bidding

Procedures: (i) the Stalking Horse Purchaser shall be considered an Acceptable

Bidder, and the Stalking Horse APA shall be considered an Acceptable Bid, for all

purposes under the Bidding Procedures, without regard to any of the requirements or

conditions set forth therein and without any other or further action by the Stalking

Horse Purchaser; and (ii) in determining whether the Potential Bidders constitute

Acceptable Bidders, the Debtors may consider a combination of bids for the

Purchased Assets.

(4) **Qualified Bids & Bid Requirements**.  Each bid (a "Bid") submitted by an

Acceptable Bidder must be submitted in writing and satisfy the following

requirements (collectively, the "Bid Requirements,") unless otherwise modified by

the Debtors (except for the requirement set forth below), in its discretion:

a.  Marked Agreement. A Bid must be in writing and include an executed asset purchase agreement (a "Competing APA"), together with all exhibits and schedules (the "Transaction Documents"), pursuant to which the Acceptable Bidder proposes to effectuate the contemplated transaction, which Competing APA must be similar in form and substance to the Stalking Horse APA and be marked to reflect the differences between the Stalking Horse APA and the Acceptable Bidder's Competing APA, including, without limitation, specification of the proposed purchase price, any assumed liabilities, and any changes to any exhibits or schedules to the Competing APA. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Transaction Documents. The Transaction Documents must include a commitment to close the Transaction by no later than the Closing Date provided in the Stalking Horse APA. A Bid should propose a contemplated transaction involving all or substantially all of the Assets; provided, however, that the Debtors in their discretion may consider proposals for less than substantially all the Assets, provided further that the Debtors will evaluate all Bids, in their sole discretion, subject to prior consultation with the Consultation Parties, to determine whether such Bid or combination of Bids maximizes the value of the Debtors' estate as a whole in light of any factors regarding such bid which the Debtors, in its discretion, determine are appropriate to be considered in evaluating Bids;

b.  Purpose. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Assets and state which Assets with reasonable specificity. Each Bid must clearly identify

the following: (i) contracts to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; (ii) the liabilities, if any, to be assumed; (iii) leases of equipment or stores to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; and (iv) which employees or groups thereof will be offered employment.

c.  The consideration proposed by a Bid may include cash or other consideration acceptable to the Debtors in an amount of no less than the sum of (i) the Purchase Price plus (ii) $50,000; provided that the Bid must include sufficient cash to pay all contracts the Bid seeks to assume and assign through the sale process.

d.  Forms of Consideration. Each Bid must (a) indicate (x) whether it is an all-cash offer (including confirmation that the cash component of the Bid is based in U.S. Dollars) or consists of certain non-cash components, such as a credit bid or the assumption of liabilities; and (y) the liabilities to be assumed, if applicable; and (b) provide sufficient cash consideration specifically designated for the payment contemplated in the Stalking Horse APA. The Debtors may request that any Bid include the allocation of the Purchase Price

among the Purchased Assets to be acquired. In addition, any Bid shall identify separately any cash and non-cash components.

e.  Deposit. Each Bid must be accompanied by a cash deposit in the amount

f.  equal to 10% of the aggregate value of the cash and non-cash consideration (assuming the initial bid for the cash consideration is $150,000) (with the deposit amount for the non-cash consideration determined by the Debtors in their discretion) of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"); provided that  the Debtors reserve

the right to increase the amount of the Deposit in its discretion, including,
without limitation, the right to request an additional Deposit in the event an
Acceptable Bidder increases the amount of its Bid.

g.  Irrevocable. All Bids must be irrevocable until the Debtors' selection of
the Successful Bid and Backup Bid (each as defined below); provided,
however, that the Successful Bid shall be irrevocable until the closing of
the Approved Transaction (as defined below) and the Backup Bid must be
irrevocable in accordance with the Bidding Procedures Order.

h.  Committed Financing. To the extent that a Bid is not accompanied by
evidence of the Acceptable Bidder's capacity to consummate the
Transaction set forth in its Bid with cash on hand, each Bid must include
committed financing documented to the Debtors' satisfaction that
demonstrates that the Acceptable Bidder has received sufficient debt or
equity funding commitments to satisfy the Acceptable Bidder's purchase
price and other obligations under its Bid. Such funding commitments or
other financing must be unconditional and must not be subject to any
internal approvals, syndication requirements, diligence, or credit
committee approvals, and shall have covenants and conditions acceptable
to the Debtors.

i.  Unconditional Offer / Contingencies. Unless otherwise agreed ahead of time
with Debtor, a statement that the Bid is formal, binding, and unconditional
and is not subject to any further due diligence or contingencies related to
financing, internal approval, due diligence, or otherwise, and is irrevocable
until the Debtors notify the Acceptable Bidder that such Bid is not a
Successful Bid or a Backup Bid.

j.  Non-Reliance. A Bid must include a written acknowledgement and
representation of the Acceptable Bidder that it has had an opportunity to

conduct any and all due diligence regarding the Assets and assumed liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation or inspection of any documents or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the assumed liabilities, or the completeness of any information provided in connection therewith or the Auction.

k.  Identity. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder, sponsor, parent company or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the should contact regarding such Bid. Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent to such submission and the disclosure requirements set forth herein.

l.  Adequate Assurance. Each Bid must contain evidence acceptable to the Debtors in its discretion that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under 11 U.S.C §§ 365(b)(1) and 365(b)(3). Such evidence may include audited and unaudited financial statements, tax

returns, bank account statements, a description of the proposed business to be conducted at the premises or any other documentation that the Debtors further request.

m. Authorization. Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the closing of the Transaction contemplated in such Bid (including the submission, execution, and delivery of the Competing APA).

n.  No Fees Payable to Bidder. A Bid other than the Stalking Horse Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue any break-up fee, termination fee, expense reimbursement or similar type of payment, or substantial contribution claim under 11 U.S.C. § 503 and related in any way to the submission of its Bid or the Bidding Procedures. By submitting its Bid, each Acceptable Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen any round of bidding or the Auction after conclusion of any round of bidding or the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets as reflected in such Bid. Notwithstanding anything herein to the contrary and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse APA submitted by the Stalking Horse Purchaser is a Qualified Bid without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser.

(5) **Bankruptcy Court Jurisdiction**. Any Potential, Acceptable Bidders, and Acceptable Bidders shall: (i) be deemed to have waived any right to a jury trial in connection with, and consented and submitted to the exclusive jurisdiction of the Bankruptcy Court over, any disputes relating to, actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction and the construction and enforcement of the contemplated transaction documents; (ii) bring any such action or proceeding in the Bankruptcy Court; and (iii) be deemed to have consented to the Bankruptcy Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law;

(6) **Due Diligence**: The Debtors will provide any Acceptable Bidder with reasonable access to the data room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.

The due diligence period shall extend through and including the Bid Deadline. The Debtors in their business judgment, may, but shall not be obligated to, furnish any due diligence information after the Bid Deadline.

The Debtors reserve the right, in their reasonable discretion, to withhold or limit access to any due diligence information that the Debtors determine is business-sensitive or otherwise not appropriate for disclosure to an Acceptable Bidder. Notwithstanding any prepetition limitations, including, without limitation, any non-disclosure, confidentiality or similar provisions relating to any due diligence information, the Debtors and their estates shall be authorized to provide due diligence information to Acceptable Bidders provided that such Acceptable Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no

liability with respect to, any information obtained by, or provided to, any Acceptable

Bidders in connection with the Bidding Procedures and the Sale;

(7) **Designation of Qualified Bidders**:  A Bid will be considered a "Qualified Bid," and

each Acceptable Bidder that submits a Qualified Bid will be considered a "Qualified

Bidder," if the Debtors determine, in its discretion, that such Bid:

        (a)  satisfies the Bid Requirements set forth above; and

        (b)  is reasonably likely (based on availability of financing, antitrust,
            or other

regulatory issues, experience, and other considerations) to be consummated, if

selected as the Successful Bid, within a time frame acceptable to the Debtors. The

Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder. If

any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will

refund such Acceptable Bidder's Deposit on the date that is the later of (i) three (3)

Business Days after the Bid Deadline and (ii) the date on which the Debtor make a

final determination that such Bid is not a Qualified Bid or, in each case, as soon as is

reasonably practicable thereafter. The Debtors reserves the right to work with any

Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is

not initially deemed a Qualified Bid and to determine at any time prior to the start of

the Auction that such Bid, as modified, is a Qualified Bid. Between the date that the

Debtors notifies an Acceptable Bidder that it is a Qualified Bidder and the Auction,

the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a

Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder

may not modify, amend, or withdraw its Qualified Bid, except for proposed

amendments to increase the Acceptable Bidder's purchase price, or otherwise

improve the terms of, the Qualified Bid, during the period that such Qualified Bid

remains binding as specified in these Bidding Procedures; provided that any Qualified

Bid may be improved at the Auction as set forth herein; provided, further, that the

Stalking Horse Bid may be modified or amended pursuant to its terms. Any improved Qualified Bid must continue to comply in all respects with the requirements for Qualified Bids set forth in these Bidding Procedures.  Notwithstanding anything herein to the contrary, the Debtors reserves the right, (a) to work with potential bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualified Bid prior to the conclusion of the Auction. No bidders, Acceptable Bidders or Qualified Bidders may aggregate any Bids without the Debtors' prior consent. Notwithstanding anything herein to the contrary and for the avoidance of doubt, for all purposes under the Bidding Procedures, the Stalking Horse Purchaser is a Qualified Bidder without regard to any of the requirements or conditions set forth therein and without any other or further action by the Stalking Horse Purchaser.

(8) **The March 19, 2025, Auction**:  If the Debtors receives one or more Qualified Bid for the Purchased Assets the Debtors will conduct the Auction to determine both the Successful Bidder and the Backup Bidder with respect to such Purchased Assets on March 19, 2025, at 10:00 a.m., pacific time, at the Bankruptcy Court.  No later than March 10, 2025, at 5:00 p.m., pacific time, the Debtors will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, or, if multiple bids are received in respect of non- overlapping Purchased Assets, the highest or best Qualified Bid(s) received in relation to each group of Purchased Assets, in each case as determined in the Debtors' business judgment (each such bid, a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders. The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) shall take into account any factors the Debtors, reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estate, which may include, among other things: (a) the type and

amount of Purchased Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estate from the transaction contemplated by the Bid; (e) the tax consequences of such Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including, but not limited to the number of employees proposed to be transferred and employee-related obligations to be assumed (collectively, the "Bid Assessment Criteria."

 a. The Auction will be conducted, directed, and/or presided by either the Bankruptcy Court and/or the Debtors, at the discretion of the Bankruptcy Court.  The Auction shall be conducted in an open format (and not by way of sealed bids). At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s). All incremental Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders. The Debtors in conjunction with the Bankruptcy Court, shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, the Successful Bid(s), and any Backup Bid(s). Only (i) Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Purchaser) and each of their respective legal and financial advisors, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person (live or on videoconference depending on the discretion of the Bankruptcy Court) and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders (including, for the avoidance of doubt, the Stalking Horse Purchaser) shall be entitled to make any subsequent bids at the Auction; provided,

however, that any creditor who wishes to physically attend the Auction (other than (i) the parties set forth in the Bidding Procedures (including the Qualified Bidders), and (ii) such other parties the Debtors deem appropriate), shall provide at least two (2) days' notice of such attendance prior to the Auction by sending an email to counsel to the Debtors.

(9) **Terms of Overbids**. The term "Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

    a. Minimum Overbid Increment. Any Overbid to the initial Baseline Bid at the start of the Auction shall be in increments of no less than a value equal to $50,000 unless otherwise determined by the Debtors in an exercise of their business judgment.

    b. Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in its business judgment, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors.

    c. Overbid Alterations. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estate than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

    d. No Round-Skipping. Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in

such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in its reasonable business judgment, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for the Assets including, without limitation, submitting further Bids.

    e.   Announcing Highest Bid. With respect to the Auction, the Debtors shall, subsequent to each Overbid Round Deadline, (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid in respect of the Assets that are the subject of the Auction or (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtor as the prevailing highest or otherwise best Bid (the "Prevailing Highest Bid"). The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtor as the Prevailing Highest Bid as well as the value attributable by the Debtor to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(10)    **<u>The Debtors' business judgment and consideration of overbids</u>**. The Debtors reserves the right, in its business judgment, to adjourn the Auction one or more times, subject to Bankruptcy Court approval, to, among other things, (i) facilitate discussions between the Debtor and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in its business judgment, may require that the Qualified Bidder has sufficient internal approvals and resources or has received sufficient non-contingent debt or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

(11)    **Closing of the Auction**.  The Auction shall continue until there is only one

Qualified Bid that the Debtors determines, in its discretion following consultation

with the Consultation Parties, to be the highest or otherwise best Qualified Bid for the

Purchased Assets. Such Qualified Bid shall be declared the "Successful Bid," and

such Qualified Bidder, the "Successful Bidder," at which point the Auction will be

closed. The Auction shall not close unless and until all Qualified Bidders have been

given a reasonable opportunity to submit an Overbid at the Auction to the then

Prevailing Highest Bid. Such acceptance by the Debtors of such Successful Bid is

conditioned upon approval by the Bankruptcy Court of such Successful Bid. As soon

as reasonably practicable after closing the Auction, the Debtor shall finalize definitive

documentation to implement the terms of the Successful Bid, and, as applicable,

cause such definitive documentation to be filed with the Bankruptcy Court.

(12)    **Good faith finding pursuant to 11 U.S.C. § 363(m)**. Each Qualified Bidder

participating at the Auction will be required to confirm on the record at the Auction

that (i) it has not engaged in any collusion, within the meaning of section 11 U.S.C. §

363(m) of the Bankruptcy Code with respect to any bids submitted or not submitted

in connection with the Sale, and (ii) its Qualified Bid is a good faith bona fide offer

and it intends to consummate the proposed Transaction if selected as the Successful

Bidder.

(13)    **Potential continuance of the Sale Hearing**. As discussed above, the sale hearing

will occur on March 19, 2025, at 10:00 a.m., pacific time, at the Bankruptcy Court.

The Sale Hearing may be continued to a later date by the Debtors by filing with the

Bankruptcy Court and sending notice prior to, or making an announcement at, the

Sale Hearing.

(14)    **Backup Bidder**.  Notwithstanding anything in these Bidding Procedures to the

contrary, if the Auction is conducted, the Qualified Bidder with the next-highest or

otherwise second-best Qualified Bid at the conclusion of the Auction for the Assets or

any sub-group thereof, as determined by the Debtors in the exercise of its business judgment, shall be required to serve as a backup bidder (the "Backup Bidder") in accordance with the terms and conditions set forth herein. Each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors, subject to the terms of such Backup Bidder's Competing APA. The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder related thereto. Such Backup Bidder shall be required to keep its Qualified Bid (the "Backup Bid") (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the earlier of (i) the closing of the Approved Transaction and (ii) 30 days from entry of the Sale Order. Each Backup Bidder's Deposit shall be held in escrow until the earlier of (i) three (3) Business Days after the closing of the Approved Transaction and (ii) 30 days from entry of the Sale Order, subject to the terms of such Backup Bidder's Competing APA. If a Successful Bidder fails to consummate the Approved Transaction contemplated by its Successful Bid, the Debtors may select the Backup Bidder (which may be the Stalking Horse Purchaser) with respect to the Assets or sub-group of the Debtors' Assets or business as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Bankruptcy Court or notice to any party. Notwithstanding any of the foregoing, in the event that the Successful Bidder (other than the Stalking Horse Purchaser) fails to consummate the Transaction on or before [date to be determine], 2025 (or such date as may be extended by the Debtor), the Backup Bid will be deemed to be the Successful Bid, the Backup Bidder will be deemed to be the Successful Bidder, and the Debtor shall be authorized to consummate the Transaction

with the Backup Bidder subject to the terms of the Backup Bid without the need for
further order of the Court and without the need for further notice to any interested
parties.

(15)    **Deposit Return**. The Deposit of the Successful Bidder shall be applied to the
purchase price of the Approved Transaction at closing. The Deposits for each
Qualified Bidder shall be held in one or more escrow accounts on terms acceptable to
the Debtors in their sole discretion and shall be returned (other than with respect to
each Successful Bidder and each Backup Bidder) on the date that is three (3) business
days after the Auction, or as soon as is reasonably practicable thereafter. Upon the
return of the Deposits, the applicable Qualified Bidders shall receive any and all
interest that will have accrued thereon. If the Successful Bidder (or, if the Sale is to be
closed with the Backup Bidder, then the Backup Bidder) other than the Stalking
Horse Purchaser fails to consummate the Sale because of a breach or failure to
perform on the part of such bidder, then, subject to the terms of the Competing APA,
the Debtors and their estate shall be entitled to retain the Deposit of the Successful
Bidder (or, if the Sale is to be closed with the Backup Bidder, then the Backup
Bidder). To the extent the Debtors do not consummate the proposed transaction with
the Backup Bidder due to the closing of the transaction with the Successful Bidder,
the Backup Bidder's deposit shall be refunded within three (3) business days of the
closing of the Approved Transaction.

(16)    **Reservation of Rights**. The Debtors reserves their rights to modify these Bidding
Procedures in their business judgment in any manner that will best promote the goals
of these Bidding Procedures or impose at or prior to the Auction, additional
customary terms and conditions on a Transaction, including, without limitation: (a)
extending the deadlines set forth in these Bidding Procedures; (b) adjourning the
Auction at the Auction; (c) adding procedural rules that are reasonably necessary or
advisable under the circumstances for conducting the Auction; (d) canceling the

Auction; and (e) rejecting any or all Bids or Qualified Bids (other than the Stalking Horse Bid). Notwithstanding the foregoing, the Debtor shall not be permitted to modify these Bidding Procedures in any way that (i) permits the submission of Bids after the close of bidding or the close of the Auction, (ii) permits Qualified Bids that propose consideration that does not include cash sufficient.