Brett H. Ramsaur, Bar No. 281566
Joshua M. Nyman, Bar No. 356484
RAMSAUR LAW P.C.
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626
Telephone:    949.200.9114
Facsimile:    949.222.3453
Email:        brett@ramsaurlaw.com
              josh@ramsaurlaw.com

Attorneys for Creditor Bates Johnson Building, Ltd.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation,<br><br>Debtor. | Case No. 8:24-bk-11945-TA<br><br>Chapter 11<br><br>**CREDITOR BATES JOHNSON BUILDING, LTD.'S LIMITED OPPOSITION TO DEBTOR'S MOTION FOR ORDER: AUTHORIZING SALE OF CERTAIN TANGIBLE AND INTANGIBLE ASSETS ("PURCHASED ASSETS"), USED IN CONNECTION WITH DEBTORS' MEDICAL PRACTICES; (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); (E) FOR WAIVER OF 14-DAY STAY; AND (F) AMENDING BID PROCEDURES**<br><br>Date:    March 18, 2025<br>Time:    10:00 a.m.<br>Ctrm:    5B |

1    Bates Johnson Building, Ltd. ("Bates Johnson"), creditor of chapter[1] 11 debtor Caduceus

2    Physicians Medical Group ("Debtor"), by and through its undersigned counsel, Ramsaur Law

3    P.C., hereby respectfully submits its limited opposition to that certain *Motion for Order:*

4    *Authorizing Sale of Certain Tangible and Intangible Assets ("Purchase Assets"), Used in*

5    *Connection with Debtors' Medical Practices; (A) Outside the Ordinary Course of Business; (B)*

6    *Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; (D) for*

7    *Determination of Good Faith Purchaser Under 11 U.S.C. §363(M); (E) for Waiver of 14-day*

8    *Stay; and (F) Amending Bid Procedures* (the "Motion") filed by Debtor on February 26, 2025

9    (docket no. 248).

**I.**

**FACTUAL BACKGROUND**

12    On or about February 11, 2009, Bates Johnson and Debtor entered into that certain *Office*

13    *Lease* (the "Lease"), pursuant to which Bates Johnson agreed to lease a portion of the Property to

14    Debtor in exchange for monthly rent payments.[2]

15    The Lease has been amended and extended several times over the ensuing years, with the

16    most recent iteration, the *Seventh Lease Amendment* (the "Seventh Lease Amendment"), being

17    entered into by and between Bates Johnson and Debtor on or about July 30, 2024.[3]

18    The Seventh Lease Amendment provides for reduced monthly rent payments for the

19    months of August 2024 through March 2025.[4]

20    In the Seventh Lease Amendment, Debtor acknowledged the existence of unpaid rent at

21    the time of signing in the amount of $86,140.50, along with additional unpaid rent in the amount

---

[1]    Unless otherwise indicated, all "Code," "chapter," and "section" references are to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").

[2]    Declaration of Dale T. Falasco, ¶ 4, Ex. 1.

[3]    *Id.* at ¶ 5, Ex. 2.

[4]    *Id.* at ¶ 6.

1    of $46,421.00 expected to accrue for the months of August 2024 through March 2025 while rent

2    payments were reduced.[5]

3    　　　　To induce Bates Johnson to enter into the Seventh Lease Amendment, Debtor agreed to

4    repay these unpaid and accruing unpaid rents, totaling $132,561.50, as follows:

5    　　　　　　　　beginning April 1, 2025, and on or before the first day of each of the
　　　　　　　　thirty-four consecutive calendar months thereafter, [Debtor] shall pay to
6    　　　　　　　　[Bates Johnson] the sum of three thousand six hundred eighty-two dollars
　　　　　　　　($3,682.00). [Debtor] shall pay to [Bates Johnson] the thirty-sixth payment
7    　　　　　　　　of three thousand six hundred ninety-one dollars and fifty cents
　　　　　　　　($3,691.50) on or before March 1, 2028.[6]
8

9    　　　　To date, Debtor has not repaid any of the unpaid rent existing at the time of execution of

10    the Seventh Lease Amendment or accrued thereafter.[7]

11    **II.**

12    **ARGUMENT**

13    　　　　Bates Johnson does not oppose the fundamental substantive relief sought by Debtor herein

14    (i.e., court approval to sell the subject assets) but simply files this limited opposition to clarify

15    that any purchaser or overbidder who seeks assignment of the lease by and between Bates

16    Johnson and Debtor (the "Lease") must explicitly comply with the provisions of sections

17    365(b)(1) and (f)(2).  Specifically, any purchaser or overbidder who seeks assignment of the

18    Lease must, in conjunction with Debtor, cure all defaults thereunder **and** provide adequate

19    assurance of future performance.  Any such adequate assurance must necessarily include a

20    demonstration of the ability to pay the additional monthly payments commencing on April 1,

21    2025, as provided for in the Seventh Lease Amendment and described above.

22    　　　　Bates Johnson will provide all necessary parties with an updated payoff figure for the

23    purpose of curing Debtor's defaults under the Lease and accompanying payment instructions in

24    anticipation of the closing date of the sale resulting from the Motion.

25

26

27    ---

5    　　*Id.* at ¶ 7.

6    　　*Id.* at ¶ 8, Ex. 2.

28    7    　　*Id.* at ¶ 9.

LIMITED OPPOSITION
TO SALE MOTION

## II.

## CONCLUSION

For the reasons set forth above, Bates Johnson respectfully requests the Court grant the Motion subject to the clarifications contained herein, and for such other and further relief as the Court deems just and proper.

Dated: March 5, 2025                          RAMSAUR LAW P.C.


                                              By: /s/ Brett H. Ramsaur
                                                  Brett H. Ramsaur

                                              Attorneys for Creditor Bates Johnson
                                              Building, Ltd.

- 4 -

LIMITED OPPOSITION
TO SALE MOTION

### DECLARATION OF DALE T. FALASCO

I, Dale T. Falasco, declare as follows:

1.    I am the Trustee of the Dale T. Falasco Living Trust dated March 23, 1995 (the "Trust"), which is one of the General Partners of Bates Johnson Building, Ltd. ("Bates Johnson"), creditor of debtor Caduceus Physicians Medical Group ("Debtor"). I am over the age of 18 years and qualified to make the within declaration. I make this declaration in support of Bates Johnson's limited opposition to that certain *Motion for Order: Authorizing Sale of Certain Tangible and Intangible Assets ("Purchase Assets"), Used in Connection with Debtors' Medical Practices; (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; (D) for Determination of Good Faith Purchaser Under 11 U.S.C. §363(M); (E) for Waiver of 14-day Stay; and (F) Amending Bid Procedures* (the "Motion") filed concurrently herewith. The facts stated herein are based upon my personal knowledge and if called upon to testify, I could and would competently testify thereto.

2.    As a General Partner for Bates Johnson, it is part of the Trust's responsibility to maintain and monitor contracts pertaining to Bates Johnson's assets, which includes the real property located at 19742 MacArthur Blvd., Irvine, California 92612 (the "Property").

3.    I am familiar with Bates Johnson's file for the lease of a portion of the Property to Debtor. I have reviewed the subject documents between Bates Johnson and Debtor. Except as otherwise stated, all information in this declaration is based on my personal knowledge, or from the business records of Bates Johnson, which are made at or near the time that the records are created and/or executed and are maintained in the regular course of its business, and which are currently in my custody.

4.    On or about February 11, 2009, Bates Johnson and Debtor entered into that certain *Office Lease* (the "Lease"), pursuant to which Bates Johnson agreed to lease a portion of the Property to Debtor in exchange for monthly rent payments. A true and correct copy of the Lease is attached hereto as **Exhibit 1**.

5.    The Lease has been amended and extended several times over the ensuing years, with the most recent iteration, the *Seventh Lease Amendment* (the "Seventh Lease Amendment"),

1  being entered into by and between Bates Johnson and Debtor on or about July 30, 2024. A true

2  and correct copy of the Seventh Lease Amendment is attached hereto as **Exhibit 2**.

3        6.     The Seventh Lease Amendment provides for reduced monthly rent payments for

4  the months of August 2024 through March 2025.

5        7.     In the Seventh Lease Amendment, Debtor acknowledged the existence of unpaid

6  rent at the time of signing in the amount of $86,140.50, along with additional unpaid rent in the

7  amount of $46,421.00 expected to accrue for the months of August 2024 through March 2025

8  while rent payments were reduced.

9        8.     To induce Bates Johnson to enter into the Seventh Lease Amendment, Debtor

10  agreed to repay these unpaid and accruing unpaid rents, totaling $132,561.50, as follows:

11            beginning April 1, 2025, and on or before the first day of each of the
thirty-four consecutive calendar months thereafter, [Debtor] shall pay to

12  [Bates Johnson] the sum of three thousand six hundred eighty-two dollars
($3,682.00). [Debtor] shall pay to [Bates Johnson] the thirty-sixth payment

13  of three thousand six hundred ninety-one dollars and fifty cents
($3,691.50) on or before March 1, 2028.

14

15  Exhibit 2.

16        9.     To date, Debtor has not repaid any of the unpaid rent existing at the time of

17  execution of the Seventh Lease Amendment or accrued thereafter.

18

19       I declare under penalty of perjury under the laws of the United States that the foregoing is

20  true and correct. Executed this 5th day of March, 2025, at Irvine, California.

21

22

23                                    Dale T. Falasco

24

25

26

27

28

# Exhibit 1

# OFFICE LEASE

**19742 MacArthur Blvd., Suite 100
Irvine, California**
(Premises)

Between

**BATES JOHNSON BUILDING, LTD.,
a California limited partnership**
(Lessor)

~ and ~

**CADUCEUS MEDICAL GROUP, INC.,
a California professional corporation**
(Lessee)

OFFICE LEASE
INDEX

CADUCEUS MEDICAL GROUP, INC.
(19742 MacArthur Blvd., Suite 100)

| PARAGRAPH | | PAGE |
|---|---|---|
| 1. | PREMISES | 1 |
| 2. | TERM | 1 |
| 3. | RENT | 1 |
| 4. | USE, NUISANCE OR HAZARD | 3 |
| 5. | ALTERATIONS AND IMPROVEMENTS | 4 |
| 6. | LESSOR'S REPAIRS | 4 |
| 7. | LESSEE'S REPAIRS | 5 |
| 8. | LIENS | 5 |
| 9. | REMOVAL | 5 |
| 10. | CHANGES OR ALTERATIONS BY LESSOR | 6 |
| 11. | ASSIGNMENT AND SUBLETTING | 6 |
| 12. | INDEMNIFICATION | 6 |
| 13. | SIGNS | 7 |
| 14. | COMMON AREA AND PARKING | 7 |
| 15. | SERVICES | 8 |
| 16. | TAXES PAYABLE BY LESSOR AND LESSEEE | 9 |
| 17. | RULES AND REGULATIONS | 9 |
| 18. | HOLDING OVER | 9 |
| 19. | INSPECTIONS | 10 |
| 20. | DEFAULT | 10 |
| 21. | BANKRUPTCY | 11 |
| 22. | LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS | 11 |
| 23. | DESTRUCTION OR DAMAGE | 11 |
| 24. | EMINENT DOMAIN | 12 |
| 25. | INTEREST | 12 |
| 26. | INSURANCE | 12 |
| 27. | ASSIGNMENT OR TRANSFER OF LESSOR'S INTEREST | 12 |
| 28. | INCORPORATION OF PRIOR AGREEMENTS/AMENDMENTS | 13 |
| 29. | ATTORNEYS' FEES | 13 |
| 30. | NO MERGER | 13 |
| 31. | WAIVER | 13 |
| 32. | NOTICES | 13 |
| 33. | COMPLIANCE WITH LEGAL REQUIREMENTS | 13 |
| 34. | NON-AGENCY | 13 |
| 35. | LESSOR'S LIABILITY | 13 |
| 36. | MODIFICATION FOR LENDER | 14 |
| 37. | NO LIGHT AND AIR EASEMENT | 14 |
| 38. | QUIET ENJOYMENT | 14 |
| 39. | SECURITY DEPOSIT | 14 |
| 40. | FORCE MAJEURE | 14 |
| 41. | EXHIBITS | 14 |
| 42. | SUBORDINATION | 14 |
| 43. | STATEMENT OF LESSEE | 15 |
| 44. | RECORDING | 15 |
| 45. | BROKER'S COMMISSIONS | 15 |
| 46. | AUTHORITY | 15 |
| 47. | MISCELLANEOUS | 15 |
| 48. | ADDITIONAL LEASE PROVISIONS | 16 |

EXHIBIT A-1:   Drawing of the Premises (not to scale)
EXHIBIT A-2:   Legal Description
EXHIBIT B:     Rental Terms
EXHIBIT C:     Lessor and Lessee Work
EXHIBIT D:     Guaranty of Lease
EXHIBIT E:     Rules and Regulations
EXHIBIT F:     Option to Extend

THIS LEASE AGREEMENT (herein called the "Lease"), dated <u>February 11, 2009</u>, is made and entered into by and between <u>BATES JOHNSON BUILDING, LTD., a California limited partnership,</u> (herein called the "Lessor"), and <u>CADUCEUS MEDICAL GROUP, INC., a California professional corporation,</u> (herein called the "Lessee").

In consideration of the mutual covenants and agreements set forth herein, Lessor and Lessee agree as follows:

1.      PREMISES.

Lessor hereby leases to Lessee, and Lessee hereby hires from Lessor, for the term, at the rent and on the terms, conditions and covenants hereinafter set forth, to each and all of which Lessor and Lessee hereby agree, those certain premises (herein called the "Premises" approximated as shown on Exhibit A-1 attached hereto and being situated on the floor(s) and in the suite(s) of that certain office building indicated on Exhibit B attached hereto, said building and all appurtenances and other improvements being situated on a tract of land in the city of <u>Irvine</u>, County of <u>Orange</u>, California which is more fully described in Exhibit A-2 attached hereto (the land, or Lessor's leasehold interest in the land, if any, the office building and all appurtenances and improvements thereto, including parking areas and all other public areas ("Common Area"), as hereinafter defines, are collectively herein called the "Building").

2.      TERM.

Subject to the terms, conditions and covenants set forth herein, this Lease shall be in force for the term stated in Item 2A of Exhibit B attached hereto, such term commencing and ending on the respective dates specified in Items 2B and 2C of Exhibit B. If Lessor, for any reason whatsoever, cannot deliver possession of the Premises for Lessee's occupancy ("Beneficial Occupancy") on the date specified in Item 2B of Exhibit B, this Lease shall not be void or voidable, nor shall Lessor be liable to Lessee for any loss or damage resulting therefrom, but Lessee shall not be obligated to pay Rental (as hereinafter defined) until the Commencement Date (as hereinafter defined). Any delay in delivery of possession shall operate to extend the term hereof the number of days equal to such delay beyond the date set forth in Item 2B of Exhibit B for the commencement of the term, or, if Lessor cannot deliver possession on such date, then the date Lessor notifies Lessee that the Premises are available for Lessee's possession, shall be the "Commencement Date." If Lessee has been granted an Option to Extend the term hereof, such Option to Extend is noted in Item 7 of Exhibit "B" hereto and set forth in Exhibit "F" attached hereto and made a part hereof.

3.      BASIC MONTHLY RENTAL AND ADJUSTMENTS THERETO.

(a)     Basic

(i)     Lessee agrees to pay to Lessor as basic monthly rental the amount set forth in Item 3 of Exhibit B attached hereto, which amount shall be increased at the times and in the amounts provided in Paragraph 3(a)(ii)(the sum of such amounts is herein called "Rental"). Each Rental payment shall be paid monthly beginning on the Commencement Date and thereafter on or before the first day of each and every successive calendar month during the term hereof, in advance, and without deduction, abatement (except as specifically provided to the contrary herein), set-off, prior notice or demand of any kind. Any Rental payment which is not paid within three (3) days after the due date, shall be delinquent, and shall remain delinquent until paid in full.

In addition to all other provisions of this Lease including, but not by way of limitation, Lessee's remedies under Paragraph 20 regarding default and the provisions for interest on Lessee's past due obligations set forth in Paragraph 25, in the event that Lessee shall fail to pay Rental plus the additional rent due under Paragraph 3(b) hereof within ten (10) days of the due date in any two (2) consecutive months or in any four (4) months during the term hereof, Lessor shall have the option to require (i) that Rental plus such additional rent shall no longer be paid monthly in advance but that it be paid for three (3) months in advance and/or (ii) that the Lessee increase the security deposit required under Paragraph 39 by one hundred percent (100%), which additional security deposit shall be held and applied by Lessor as provided in Paragraph 39.

LESSEE HEREBY ACKNOWLEDGES THAT LATE PAYMENT BY LESSEE TO LESSOR OF RENTAL, OR OTHER SUMS DUE HEREUNDER, WILL CAUSE LESSOR TO INCUR COSTS NOT CONTEMPLATED BY THIS LEASE, THE EXACT AMOUNT OF WHICH WILL BE EXTREMELY DIFFICULT TO ASCERTAIN. SUCH COSTS INCLUDE, BUT ARE NOT LIMITED TO, PROCESSING AND ACCOUNTING CHARGES AND LATE CHARGES WHICH MAY BE IMPOSED ON LESSOR BY THE TERMS OF ANY MORTGAGE OR TRUST DEED COVERING THE PREMISES. ACCORDINGLY, IF ANY INSTALLMENT OF RENTAL, AND/OR ANY OTHER SUM DUE FROM LESSEE TO LESSOR HEREUNDER SHALL NOT BE RECEIVED BY LESSOR OR LESSOR'S DESIGNATED AGENT WITHIN THREE (3) DAYS AFTER SUCH AMOUNT SHALL BE DUE, LESSEE SHALL PAY TO THE LESSOR A LATE CHARGE EQUAL TO TEN PERCENT (10%) OF SUCH OVERDUE AMOUNT. THE PARTIES HEREBY AGREE THAT SUCH LATE CHARGE REPRESENTS A FAIR AND REASONABLE ESTIMATE OF THE COSTS LESSOR WILL INCUR BY REASON OF LATE PAYMENT BY LESSEE. ACCEPTANCE OF SUCH LATE CHARGE BY LESSOR SHALL IN NO WAY CONSTITUTEA WAIVER OF LESSEE'S DEFAULT WITH RESPECT TO SUCH OVERDUE AMOUNT, NOR PREVENT LESSOR FROM EXERCISING ANY OF THE OTHER RIGHTS AND REMEDIES GRANTED HEREUNDER OR OTHERWISE AVAILABLE TO LESSOR.

(ii)      The Rental payable under Paragraph 3(a)(i) above shall be subject to adjustment ~~at the commencement of the second year of the term hereof and each successive lease year or partial lease year thereafter ("the Adjustment Date")~~ as follows: **As provided in Exhibit "B" attached hereto and by this reference made a part hereof.**

~~The base for computing the adjustment in Rental is the Consumer Price Index for All Urban Consumers (all items) for the Los Angeles-Long Beach-Anaheim Metropolitan Area (1982-1984 = 100), published by the United States Department of Labor, Bureau of Labor Statistics ("Index"), which is published for the third month preceding the month in which the Commencement Date occurs ("Beginning Index"). If the Index published for the third month preceding the month in which the Adjustment Date occurs ("Extension Index") has increased over the Beginning Index, the Rental for the following year (until the next Rental adjustment) shall be the product determined by multiplying the Rental set forth in Item 3 of Exhibit B by a fraction, the numerator of which is the Extension Index and the denominator of which is the Beginning Index. In no case shall the Rental be less than the total of the amount set forth in Item 3 of Exhibit B as adjusted by the most recent adjustment thereof pursuant to this Paragraph 3(a)(ii).~~

~~If the Index is discontinued or revised during the term, Lessor shall adopt a substitute index or shall use such other government index or computation which reasonably reflects and monitors consumer prices in the geographic area in which the Premises are situated.~~

(iii)      Lessee agrees that it will deposit with Lessor one (1) full month's Rental upon execution hereof, said Rental to be applied toward the first Rental payment due hereunder.

(iv)      In the event the term of this Lease commences on a day other than the first day of a calendar month, the first Rental payment shall be the Rental for one (1) full calendar month plus the prorated Rental for the calendar month in which the term of this Lease commences. Rental and all other sums payable by Lessee to Lessor under this Lease shall be paid to Lessor in lawful money of the United States of America at the office of the Building, or to such other person or at such other place as Lessor may from time to time designate in writing. In the event that the term of this Lease ends on a day other than the last day of a calendar month, Rental and all other sums payable by Lessee to Lessor for such month shall be prorated. All payment requiring proration under this Lease shall be prorated on the basis of a thirty (30) day month.

(v)      In addition to the foregoing Rental, Lessee agrees to pay to Lessor, within fifteen (15) days after Lessor renders a statement therefore to Lessee, all charges for any services, goods or materials which are furnished by Lessor to Lessee, at Lessee's request and at Lessor's election, which are not required to be furnished by Lessor under this Lease. All such charges for services and goods furnished by Lessor as aforesaid, plus all sums, liabilities, obligations and other amounts which Lessee is required to pay or discharge pursuant to the provisions of this Lease (in addition to the Rental set forth in this Paragraph 3) or as a result of Lessor's performance of Lessee's obligations as provided for in this Lease, together with any interest, penalty or other sum which may be added for late payment thereof, shall constitute additional rent hereunder; and in the event of any failure on the part of Lessee to pay or discharge any of the foregoing, Lessor shall have all rights, powers and remedies provided herein, or by law, at equity or otherwise in the case of nonpayment of Rental.

(b)      Adjustment for Operating Expenses

(i)      In addition to the Rental specified in Paragraph 3(a) hereof, Lessee agrees to pay to Lessor, as additional rent hereunder, Lessee's proportional share of Lessor's estimation of the Operating Expenses (as hereinafter defined) as follows: at the beginning of each lease year or partial lease year throughout the term hereof, Lessor shall estimate the Operating Expenses for the next year and shall divide such estimate by the Rentable Area of the Building (as set forth in Item 5A of Exhibit "B" hereto) in order to obtain the estimated Operating Expenses per square foot for such year. If such estimated Operating Expenses per square foot for such year exceeds the Base Operating Expenses per square foot set forth in Item 4 of Exhibit "B" hereto (such excess shall be defined as the "Excess Over Base Operating Expenses Per Square Foot") Lessee shall pay to Lessor as additional rent, in equal monthly installments as set forth below, an amount equal to the product of the Excess Over Base Operating Expenses Per Square Foot multiplied by the Rentable Area of the Premises (as set forth in Item 5B of Exhibit "B" hereto). The estimated increase in Operating Expenses per square foot shall be prorated for the first and last years, if such years are partial lease years. Lessee's proportionate share of such estimated increase in Operating Expenses shall be paid in equal monthly installments, in advance, on or before the first day of each and every calendar month during the period covered by the estimate as, and on the basis that, Rental is payable hereunder. Within ninety (90) days following the end of each lease year or partial lease year, Lessor shall furnish Lessee with a statement covering the lease year or partial lease year just expired, prepared by a certified public accountant or authorized representative of Lessor, showing the total actual Operating Expenses for such period, and Lessee's share thereof, and payments of the estimated increase in Operating Expenses made by Lessee during such period. If Lessee's payments during such period are less than Lessee's actual share of the Operating Expenses, then Lessee shall pay Lessor the deficiency within ten (10) days after receipt of such statement without the necessity of additional demand or notice therefor. Lessee's obligation for such payments shall survive the expiration or earlier termination of this Lease. If Lessee's payments exceed Lessee's actual share, Lessee shall be entitled to offset such excess payments against payments next thereafter to come due Lessor under this Paragraph 3; provided, that upon the expiration or earlier termination of this Lease, Lessor shall refund to Lessee such excess payments so long as Lessee is not in default hereunder.

(ii)    The term "Operating Expenses," as used herein, shall mean all costs and expenses incurred by Lessor with respect to the management, operation and maintenance of the Building, and Common Areas (hereinafter defined), and appurtenances thereto, all accrued and based on the calendar year, determined by generally accepted accounting principles consistently applied, which are incurred in connection with the management, operation and maintenance of the Building, including by way of illustration, but not limitation: (aa) real estate and personal property taxes (more fully described below), (bb) all general or special assessments and governmental charges, (cc) utility charges, (dd) sewer charges, (ee) costs of heating and air conditioning, (ff) costs of repair, restoration, repainting, restriping, and maintenance, (gg) costs of security, janitorial and cleaning services, (hh) maintenance and service contracts, (ii) depreciation or amortization of capital improvements that produce a reduction in operating costs, (jj) all labor, supplies, materials and tools used in the management and operation of the Building, (kk) management fees, wages and salaries of employees of Lessor directly engaged in the management and operation of the Building (including employee benefits and payroll taxes and similar governmental charges), (ll) depreciation or rental of personal property used in maintenance, (mm) all insurance, including, without limitation, fire and extended coverage, public liability and property damage, plate glass, boiler, worker's compensation insurance, and war risk and earthquake insurance, and such other insurance to the extent customarily carried by owners of office buildings such as the Building within Orange and Los Angeles Counties, (nn) accountant's and auditor's fees for public accounting normally provided for the operation and maintenance of the Building, (oo) such reasonable legal fees, costs and disbursements as would normally be incurred in the connection with the operation of the Building, (pp) all ground rent paid under any ground lease on which the Building or the Premises are located and (qq) all other items and charges directly related to the operation and maintenance of the Building.  Operating Expenses shall not include broker's commissions, interest or principal payments on mortgages, depreciation (except as otherwise herein specified), repairs and restorations paid for by the proceeds of any insurance policy, income or franchise taxes (other than that portion, if any, of income or franchise taxes which may hereafter be assessed and paid in lieu of, or substitute in whole or in part for, real estate and personal property taxes), construction of improvements of a capital nature or any specific costs billed to specific tenants.  As used in this subparagraph (iii) real estate and personal property taxes shall include: (aa) all real estate, ad valorem or personal property taxes levied with respect to the Building and the improvements, fixtures and equipment and any other property, real or personal, located in and about the Building and used in connection with the operation thereof:  (bb) or any other tax, general or special assessment, or other charge of any description imposed upon or in respect to the Building, including, without limitation, a tax upon any rent therefrom, or any occupancy or use thereof; or (cc) any water and sewer charges, excises, levies, license and permit fees, transfer taxes, and all other similar charges, if any, which are levied, assessed, or imposed upon, or become due and payable in connection with, or liens upon, the Building, or facilities used in connection therewith, and rentals or receipts therefrom; and (dd) all taxes of whatsoever nature that are imposed in substitution for or in lieu of any of the taxes, assessments or other charges included in this definition; provided, however, such taxes shall not include any taxes or assessments paid by Lessee or by other tenants of the Building pursuant to Paragraph 16 of this Lease.

(iv)    The term "Rentable Area" as used herein shall mean that, on each floor of the Building, the Rentable Area attributable to each lessee shall be the entire area includded within the Premises covered by such lessee's lease, being the area bounded by the exterior surface of any exterior glass walls (or the exterior surface of the permanent exterior wall where there is no glass) bounding such leased premises, the exterior of all walls separating such the premises from any public corridors or other public areas on such floor, and the centerline of all walls separating such premises from other areas leased or to be leased to other lessees on such floor. In addition, each lessee's Rentable Area of the Premises shall include lessee's pro rata share of all Common Area inside the Building, including but not limited to, hallways, restrooms, stairwells, telephone, mechanical and janitorial closets, and entrance lobbies. The rentable area for the entire Building shall be deemed to be the number of square feet set forth in Item 5A on Exhibit B hereto.  The Rentable Area for the Premises shall be deemed to be the number of square feet set forth in Item 5B on Exhibit B hereto.

(v)    The adjustment provided for in this Paragraph 3(b) shall in no way diminish the Rental reserved under Paragraph 3(a) hereof, it being understood and agreed that the Rental for the Premises shall never be less than the highest adjusted Rental theretofore paid by Lessee thereunder, nor shall the additional rent due under this Paragraph 3(b) ever be less than the highest such additional rent theretofore paid by Lessee hereunder.

4.    USE, NUISANCE OR HAZARD.

The Premises shall be continuously occupied and used by Lessee for general office purposes and no other.  Lessee shall not do or permit to be done in or about the Premises, nor bring or keep or permit to be brought or kept therein, anything which is prohibited by or will in any way conflict with the provisions of this Lease or any law, statute, ordinance or governmental rule or regulation now in force or hereinafter enacted or promulgated, or which is prohibited or in conflict with the certificate of occupancy for the Building of which the Premises is a part, or which is prohibited by any covenants, conditions or restrictions or other documents of record affecting the use of the Premises or the Building, or which is prohibited by any standard form of fire insurance policy or will in any way increase the existing rate of or affect any fire or other insurance upon the Building or any of its contents, or cause a cancellation of any insurance policy covering the Building or any part thereof or any of its contents.  Lessee shall not do or permit anything to be done in or about the Premises which will in any way obstruct or interfere with the rights of other tenants of the Building, or injure or annoy them or use or allow the Premises to be used for any improper, immoral, unlawful or objectionable purpose.  In the event Lessee fails to comply with the provisions of this Paragraph 4 relating to insurance and Lessor should therefore be charged an additional

3

insurance premium, Lessee, immediately upon demand, shall reimburse Lessor for such additional premium. Lessee shall not cause, maintain or permit any nuisance in, on or about the Premises or Building or commit or suffer to be committed any waste in, on or about the Premises or Building. Lessor has the right, but not the obligation, to enter the Premises, as provided in Paragraph 19 hereof, to abate any unauthorized use of the Premises or nuisance or waste therein. All Lessor's costs arising from such abatement including, but without limitation, Lessor's overhead and reasonable attorneys' fees, shall be immediately due and payable by Lessee upon Lessor's demand. Lessee's payment of any sums pursuant to the provisions of this Paragraph 4 shall neither constitute a cure of its breach of this Paragraph 4, nor in any way affect Lessor's remedies at law, in equity and under this Lease arising out of Lessee's breach of its obligations and undertakings under this Paragraph 4.

### 5. ALTERATIONS AND IMPROVEMENTS.

(a)     Lessee, at its sole cost and expense, shall have the right to make alterations, additions, or improvements to the interior of the Premises, if such alterations, additions or improvements, in Lessor's sole opinion, are normal for office use, do not adversely affect the utility of the Premises for future tenants, do not alter the exterior appearance of the Building, are not of a structural nature, or are not otherwise prohibited herein; provided, however, no such alterations, additions or improvements to the Premises shall be made without Lessor's prior written consent and its prior written approval of the plans and specifications therefor. Lessor may, without limitation, require removal at the end of the term or earlier termination hereof of such alterations, additions, improvements or fixtures as a condition to its consent and approval. Upon completion of any alterations, additions or improvements, Lessee agrees to cause a Notice of Completion to be recorded in the Office of the Recorder of the County in which the Premises is located in accordance with Section 3093 of the California Civil Code. All work must be done in a good and workmanlike manner and shall be diligently prosecuted to completion. In making such alterations, additions, or improvements, Lessee shall conduct its work in such a manner as to maintain harmonious labor relations and as not to interfere with other tenants in the Building or the operation of the Building. Lessee warrants that in constructing such alterations, additions and improvements it will comply with all applicable building codes and regulations and obtain all necessary permits in connection therewith. Lessee shall, prior to the commencement of the work, submit to the Lessor copies of all necessary permits. Additionally, Lessee shall give Lessor no less than twenty (20) days prior notice in writing before commencing construction of any kind on the Premises so that Lessor may post and record notices of nonresponsibility.

(b)     Unless Lessor requires their removal as a condition to its consent as provided in Paragraph 5(a), all alterations, additions, improvements and fixtures, whether temporary or permanent in character, made in or upon the Premises, either by Lessor or Lessee, shall be Lessor's property and at the expiration of the term hereof or earlier termination of this Lease, and shall remain upon and be surrendered with the Premises without compensation to Lessee. Notwithstanding the foregoing, personal property of Lessee, such as Lessee's signs, furnishings, equipment, trade fixtures and supplies, which can be removed without material damage to the Premises, shall remain the property of Lessee subject, however, to the provisions of Paragraphs 9 (relating to removal) and 20 (relating to Lessee's default) hereof.

### 6. LESSOR'S REPAIRS.

(a)     Subject to the provisions of Paragraph 3(b) hereof regarding Operating Expenses, Lessor shall cause the maintenance and repair of the Common Area (hereinafter defined) of the Building such as lobbies, stairs, corridors, common restrooms, roof, elevators, escalators, landscaping and parking areas, and structural elements, and provide painting of Building standard partitions and doors which face towards the public areas, when Lessor in its reasonable discretion deems it necessary for the continued comfortable use and occupation of the Premises and for the operation of the Building.

Notwithstanding anything to the contrary herein, Lessor shall not be responsible for repair or replacement of damage or wear and tear to same which is the result of the negligence or willful act or omission of Lessee or Lessee's agents, employees, contractors, subcontractors, subtenants or invitees to the Building or the Premises, such damage or wear and tear being the sole responsibility of Lessee. Lessee shall complete and pay for repairs or replacements due to such damage or wear and tear within thirty (30) days after demand therefor by Lessor. If Lessee fails to make such repairs or replacements as above provided, then Lessor may, but shall not be obligated to, make such repairs or replacements and such action by Lessor shall not cure or otherwise excuse Lessee's default under this Paragraph 6. All Lessor's costs incurred in connection with making such repairs including, but without limitation, Lessor's overhead and reasonable attorney's fees, shall be immediately due and payable by Lessee upon Lessor's demand for payment.

(b)     Except as otherwise provided in Paragraph 23 relating to destruction or Paragraph 24 relating to a taking by power of eminent domain, there shall be no allowance, abatement or offset of Rental or other charges payable hereunder, or liability to Lessee for diminution of rental value or interference with Lessee's business and no claim by Lessee for eviction from the Premises by reason of inconvenience, annoyance or injury to Lessee arising from any repairs, alterations, replacements or improvements made to the Premises, the Building, the public areas or any portion thereof by Lessor, its agents, employees or contractors, or by Lessor's mortgagee or by a beneficiary under a deed of trust covering the Premises. To the extent Lessor may be responsible for repairs under this Lease, Lessor shall not be liable to Lessee for failure to make repairs to the Premises, the Building, the public areas or any portion thereof, unless Lessor has received from Lessee written notice of the need for such repairs



4

and has failed to commence and diligently proceed to complete such repairs within a reasonably practicable time thereafter. In no event shall Lessee be entitled to make such repairs itself and deduct or offset the cost thereof against the Rental or other charges payable hereunder. Lessee hereby waives all rights to make repairs at the expense of Lessor as provided by any law, statute, or ordinance now or hereafter in effect, including, but without limitation, the provisions of Sections 1941 and 1942 of the California Civil Code.

(c)    Lessor has no obligation, and has made no promise, to alter, remodel, improve, repair, decorate or paint the Premises or any part thereof except as may be specified in the "Lessor and Lessee Work", Exhibit C attached hereto, and this Paragraph 6.

7.    LESSEE'S REPAIRS.

By entry hereunder Lessee accepts the Premises in its present condition as being in good and sanitary order, condition and repair. Subject to the provisions and in accordance with the procedures set forth in Paragraph 5 hereof, Lessee, at all times during the term hereof and at Lessee's sole cost and expense, shall make all repairs to the Premises not required hereunder to be made by Lessor and shall do all decorating, remodeling, alterations or painting required by Lessee during the term hereof and shall keep the Premises in good and sanitary order, condition and repair with ordinary wear and tear excepted. All of Lessee's repairs shall be of a quality and class equal to the original work. Subject to the provisions of Paragraph 5(b) hereof, Lessee shall at the expiration of the term hereof, by lapse of time or otherwise, peacefully surrender to Lessor the Premises and all alterations, additions and improvements thereto in the same condition as when received, ordinary wear and tear, and damage by fire and casualty for which Lessee does not have an obligation to insure, excepted. No representations respecting the condition of the Premises or the Building have been made by Lessor to Lessee except as specifically set forth herein.

8.    LIENS.

(a)    Lessee shall keep the Premises and the Building free from any mechanics', materialmen's, contractors' or other liens arising out of, or any claims for damages growing out of, any work performed, materials furnished or obligations incurred by Lessee or Lessee's agents, representatives, invitees, licensees, or others claiming under Lessee. Lessee shall pay or cause to be paid all of said liens and claims before any action is brought to enforce same against Lessor or the Premises, the Building or public areas or within fifteen (15) days after receiving notice from Lessor to remove said liens or claims. Lessee agrees to indemnify, defend and hold Lessor harmless from all liability arising out of any and all such liens and claims and all costs and expenses in connection therewith as provided in Paragraph 12 hereof. Lessee further agrees upon written request by Lessor to post or cause to be posted, at its sole cost and expense, a completion and lien indemnity bond, satisfactory to Lessor, prior to commencement of any construction or work upon the Premises, and, further, obligating Lessee such commencement to post a surety or other bond, satisfactory to Lessor, naming Lessor as principal in amounts necessary to protect Lessor and the Premises from any such liens or claims asserted. If Lessee shall desire to contest any claim of lien, it shall furnish Lessor with a bond in the statutory amount as may be requested by Lessor to prevent foreclosure during the pendancy of the contest. If a final judgment establishing the validity or existence of a lien for any amount is entered, Lessee shall promptly pay the same. If Lessee defaults in paying any charge for which such a lien claim and suit to foreclose the lien have been filed, or does not bond the same immediately after the filing thereof, Lessor may (but shall not be required to) pay said claim and any costs. The amount so paid, together with attorneys' fees and costs incurred in connection therewith, shall be immediately due and owing from Lessee to Lessor. Should any claim of lien be filed against the Premises or the Building or any action affecting the title of such property be commenced, Lessee, upon receiving notice of such lien or action, shall forthwith give Lessor notice thereof.

(b)    In addition to and cumulative of any statutory lien in favor of Lessor, Lessee hereby grants to Lessor a lien on all personal property of Lessee, such as Lessee's signs, furnishings, equipment, trade fixtures and supplies, placed in, on or about the Premises to secure the performance by Lessee of all of its obligations under this Lease.

9.    REMOVAL.

At the end of the term or earlier termination hereof, Lessee shall, at its sole expense, remove or cause to be removed from the Premises all signs, furnishings, equipment, trade fixtures, supplies and other personal property installed or placed therein, and all debris and rubbish in or about the Premises. Lessee shall repair all damage to the Premises, including, but without limitation, patching and filling of holes and structural damage resulting from such removal. If requested by Lessor, Lessee shall execute, acknowledge and deliver to Lessor an instrument in writing releasing and quitclaiming to Lessor all right, title and interest of Lessee in and to said Premises by reason of this Lease or otherwise. If Lessee fails to remove any of its signs, furnishings, equipment, trade fixtures, supplies or other personal property immediately upon the expiration or earlier termination of this Lease, then Lessor may, at its option: (i) treat Lessee as a holdover in which event the provisions of Paragraph 18 hereof shall apply, or (ii) elect to retain or dispose of in any lawful manner any or all of such items. Lessee hereby waives all claims against Lessor for any damage resulting from Lessor's storage, retention or disposition of such items. Lessee shall by liable to Lessor for Lessor's costs of storing, removing, and disposing of any such items and such sums shall be immediately due and payable by Lessee as they accrue.

10.    CHANGES OR ALTERATIONS BY LESSOR.

Lessor reserves the right at any times, and from time to time, without the same constituting an actual or constructive eviction, and without incurring any liability to Lessee therefor, or otherwise affecting Lessee's obligations under this Lease, to make such changes, alterations, additions, improvements, repairs or replacements in or to the Building (including the Premises if required to do so by any law or regulation) and the fixtures and equipment thereof, as well as in or to the street entrances thereto, or after reasonable notice, to change the name, number and designation by which the Building is commonly known, as Lessor may deem necessary or desirable, and to change the arrangement or location of any of the public areas, including, but without limitation, entrances or passageways, doors and corridors and parking areas and to reduce or enlarge the public areas and to construct additional improvements and buildings; provided, however, that such changes or alterations shall not unreasonably obstruct Lessee's access to the Premises. Nothing contained in this Paragraph 10 shall be deemed to relieve Lessee of any duty, obligation or liability of Lessee with respect to making any repair, replacement or improvement or complying with any law, order or requirement of any government or other authority and nothing contained in this Paragraph 10 shall be deemed or construed to impose upon Lessor any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the Building, including the public areas, or any part thereof other than as specifically provided in this Lease.

11.    ASSIGNMENT AND SUBLETTING.

(a)    Lessee shall not transfer, assign, mortgage or hypothecate this Lease, or any right or interest hereunder, or sublet the Premises or any part thereof, without the prior written consent of Lessor. Except as provided in Paragraph 20(e) hereof, such consent may be granted or denied in Lessor's sole and absolute discretion. No transfer or assignment, whether voluntary or involuntary, by operation of law, or otherwise, and no subletting, shall be valid or effective without such prior written consent. Additionally, in the event of any bankruptcy or related action, the provisions of Paragraph 20 shall control. Should Lessor consent to any such transfer, assignment or subletting, such consent shall not constitute a waiver of any of the provisions of this Paragraph 11 and the same shall apply to each successive transfer, assignment or subletting hereunder, if any. Notwithstanding any assignment, subletting or other transfer by Lessee or consent thereto by Lessor, Lessee shall remain fully liable on this Lease and shall not be released from performing any of the terms, conditions and covenants hereof without an express written release being given by Lessor. If this Lease is transferred or assigned or if the Premises or any portion thereof are sublet or occupied by any person other than Lessee, Lessor may collect Rental and other charges due hereunder from such transferee, assignee, sublessee or other party and apply the amount to the Rental and other charges reserved hereunder, but such collection shall not constitute consent or waiver of the necessity of consent to such transfer, assignment or subletting, nor shall such collection constitute the recognition of such transferee, assignee, sublessee or other party as the Lessee hereunder, or a release of Lessee from the further performance of all the terms, conditions and covenants hereof.

(b)    Any transfer of this Lease by merger, consolidation, transfer of assets or liquidation shall constitute an assignment for the purposes of this Lease. If the Lessee hereunder is a corporation, an unincorporated association, or a partnership, the transfer, assignment or hypothecation of any stock or interest in such corporation, association or partnership shall be deemed an assignment within the meaning and provisions of this Paragraph 11.

(c)    If the Lessor consents to an assignment or transfer by Lessee of all or a portion of Lessee's interest under this Lease, Lessee shall pay, or cause to be paid, a transfer fee of $500.00; provided, however, that such transfer fee shall not be payable upon Lessor's consent to a transfer or assignment of Lessee's interest hereunder as security for a loan.

(d)    If Lessee proposes to assign this Lease, it shall notify Lessor in writing of the terms of such proposed assignment and Lessor may, at its option, upon notice to Lessee within thirty (30) days of such proposal by Lessee, elect to recapture said Premises and terminate this Lease. This Lease shall terminate as of the 30th day after Lessor gives Lessee notice of its election to recapture unless Lessee notifies Lessor that Lessee is revoking the proposed assignment or subletting within five (5) days from the date Lessor notifies Lessee of its intention to recapture the Premises, which notice of revocation shall cause this Lease to remain in effect. If Lessee proposes to sublease all or part of said Premises it shall notify Lessor in writing of the terms of such proposed sublease, and Lessor may, at its option exercised within thirty (30) days of such proposal by Lessee, elect to recapture such portion of the said Premises as Lessee proposes to sublease. As of the 30th. day after Lessor gives Lessee notice of its election to recapture, this Lease shall terminate as to the portion of the Premises recaptured unless Lessee notifies Lessor that Lessee is revoking the proposed assignment or subletting within five (5) days from the date Lessor notifies Lessee of its intention to recapture the Premises, which notice of revocation shall cause this Lease to remain in effect; and in the event only a portion of the Premises is recaptured, the Rental and other charges payable under this Lease shall be proportionately reduced.

12.    INDEMNIFICATION AND NON-LIABILITY OF LESSOR.

(a)    Lessee agrees to indemnify, defend and hold Lessor harmless, and Lessor's agents, partners, officers, employees and invitees, from all claims, actions, losses, costs, damages, liabilities or expenses, whatsoever, including reasonable attorneys' and accountants' fees, resulting from any and all injuries to or death of any person or damage to any property, arising from or out of the following:  (i) any occurrence, whether real or claimed, in, upon or at the Premises; (ii) the

occupancy or use by Lessee, or its agents, partners, officers, employees, customers, invitees or any parties contracting with Lessee (collectively called "Agents" in this Paragraph 12) of the Premises, the Building, or any part thereof; (iii) any repairs or alternations which Lessee, or its Agents, may make upon the Premises, or the building; (iv) any breach of any provision of this Lease or commission of any other Act of Default by Lessee; or (v) caused, directly or indirectly, by any act, omission or neglect of Lessee, or its Agents. In case Lessor shall without fault on its part be made a party to any litigation or administrative proceeding commenced by or against Lessee, Lessee shall defend and hold Lessor harmless from any judgment or judicial or administrative determination arising therefrom and shall pay all costs and expenses, including reasonable attorneys' and investigators' fees, incurred or paid by Lessor in connection with such litigation. Lessor shall have the right to approve of the counsel engaged by Lessee in its defense of any claim or action under this Paragraph 12. Notwithstanding the foregoing, Lessee shall not be obligated to indemnify Lessor against the negligence of Lessor or its Agents.

(b)     Except for the negligence of Lessor or its Agents, Lessor shall not be liable to Lessee and Lessee hereby waives all claims against Lessor for any death of or injury to persons or damage to or loss of property arising out of any occurrence in or about the Premises, for any cause whatsoever, the Building or the public areas. Such non-liability of Lessor shall include, but shall not be limited to the following: (i) injury, death, damage or losses based upon Lessor's furnishing of Building utilities, security or any other services required or permitted to be furnished by Lessor hereunder; (ii) injury, death, damage or losses arising from a theft, whether by robbery, burglary or otherwise, regardless of whether Lessor is or is not providing security services for the Building; (iii) injury, death, damage or losses arising from fire, explosion, falling plaster, steam, gas, electric, heating or air conditioning equipment, water or rain which may leak from any part of the Building or from the pipes, appliances or plumbing works therein or from the roof, street or sub-surface or from any other place or resulting from dampness or any other cause whatsoever; (iv) injury, death, damage or losses arising out of any act, omission or neglect of any other tenant of the Building; (v) any damage to or loss of property entrusted to Lessor or its Agents; or (vi) any latent defect in the Premises or the Building. Lessee shall give prompt notice to Lessor in case of fire or accidents in, upon or about the Premises or the Building, or of defects therein or in the fixtures or equipment attached thereto, or used in connection therewith. Lessee, as a material part of the consideration to Lessor, hereby assumes all risks of death of or injury to persons or damage to or loss of property in, upon or about the Premises or the Building, from any cause whatsoever, except that which is caused by Lessor's negligence or the failure of Lessor to observe any of the terms and conditions of this Lease where such failure has persisted for an unreasonable period of time after written notice of such failure has been given to Lessor by Lessee.

13.     SIGNS.

Lessee may only place or permit to be placed in, upon, about or outside the Premises or any part of the Building, any sign(s) with the prior written consent of Lessor which consent Landlord may withhold in its sole discretion. All signs shall be uniform and shall comply fully with Lessor's sign program, which may specify the exact location, size, type and content of permissible signs, and shall be procured at Lessee's sole expense and shall be installed at Lessee's sole expense in locations and in a manner approved by Lessor. Lessee shall be solely responsible for the repair and maintenance of its signs. Lessor may maintain a Building directory in the main lobby of the Building or at another appropriate location designated by Lessor.

14.     COMMON AREA AND PARKING.

(a)     The public area of the Building (herein called the "Common Area") includes, without limitation, all driveways, landscaped areas, parking areas, loading docks, walkways and all other areas made available by Lessor for the general non-exclusive use of the lessees in the Building and their customers, employees and invitees. Subject to reasonable rules and regulations which Lessor shall have the right to establish, modify and enforce from time to time, and which Lessee agrees to observe. Lessee and its employees, customers and invitees may use the Common Area along with other authorized persons during the term of this Lease. Lessor may alter the size, location or character of the Common Area, and any other portion of the Building, in its discretion, including without limitation construction of additional improvements thereon, removing, altering and replacing existing improvements thereon and changing the location and number of driveways, entrances, exits, landscaped areas, and all other facilities thereof. Lessor may also hire personnel to keep the Common Area, the Building and the facilities serving the same in good condition. Lessor also has the right to change the name, number and designation by which the Building is commonly known. All Common Area which Lessee and its employees, representatives, customers and invitees may be permitted to use and occupy is to be used and occupied under a revocable license. If the size, location or character of the Common Area or the Building, or the name of the Building, is changed as provided above, Lessor shall be subject to no liability, Lessee shall not be entitled to any compensation or diminution or abatement of rent or other charges, and such change shall not be deemed a constructive or actual eviction.

(b)     Lessor shall have the right to establish and enforce and, from time to time, to amend reasonable rules and regulations as may be deemed necessary or advisable by Lessor for the proper and efficient operation and maintenance of the Common Area and the Building. These rules and regulations may include, without limitation, hours during which the Common Area and the Building shall be open for use and the use of the Common Area. Lessor shall have the sole and exclusive control of the automobile parking areas, the parking spaces thereon, driveways, entrances and exits and sidewalks and pedestrian passageways and other Common Area, and may at any time and from time to time during the term hereof exclude and restrain any person from use or occupancy thereof, excepting

only bona fide customers, patrons and service suppliers of Lessee and other tenants of Lessee who make use of the Common Area in accordance with the rules and regulations in Exhibit "E" hereto and other rules and regulations established by Lessor. Lessor shall have the exclusive right to, but not the obligation to, apportion and allocate said parking spaces and areas as Lessor shall, in its sole discretion, deem advisable. The Common Area shall be used only by and for Lessee and Lessee's sublessees, and their agents, employees, licensees, invitees and representatives and only for the period of time and in the manner reasonably necessary to conduct the business of such persons or to accomplish the business reasons for which such persons are in the Building, the Premises or Common Area. Such areas are not to be used for recreation, entertainment, storage, or for any purpose other than as expressly stated above. Lessor may further, if in its opinion the same be advisable, establish a system or systems of parking validation or other type operation, including a system of charges against non-validated parking checks of users, and Lessee agrees to conform to and abide by the rules and regulations pertaining to such parking systems. The rights of Lessee in and to the Common Area shall at all times be subject to the rights of Lessor and the other tenants of Lessor to use the same in common with Lessee. Notwithstanding the foregoing, nothing herein shall be deemed to create any liability or obligation upon Lessor for any injury to or death of persons or damage to or loss of property in the Common Area or the Building as a whole.

15.    SERVICES.

(a)    Subject to the provisions of Paragraph 3(b) hereto regarding Operating Expenses, Lessor shall cause the Premises to be furnished with (i) electricity for building standard overhead fluorescent lighting and the normal operation of general office machines such as computers, typewriters, dictating equipment, desk model adding machines and the like, which use 110 volt electric power, (ii) heating and air conditioning during the hours of 7:00 AM to 6:00 PM (exclusive of Saturdays, Sundays and holidays) (the heating and air conditioning systems achieve maximum efficiency when the drapes or other internal window coverings are closed), (iii) lighting replacement for building standard lights, (iv) public toilet room supplies, (v) window washing with reasonable frequency, (vi) water for lavatory and drinking purposes and (vii) janitorial service at the frequency shown in Item 8 of Exhibit "B" hereto. Lessor shall attempt, to the extent it is feasible in Lessor's reasonable judgment, to furnish heating and air conditioning service on days and at times other than those referred to in Section (ii) above; provided, Lessee requests such service a reasonable time in advance and agrees in writing to bear all costs in connection therewith.

(b)    Lessor shall not be liable for any damages directly or indirectly resulting from, nor shall any Rental or other sums due hereunder be abated by reason of: (i) the installation, use or interruption of use of any equipment in connection with the furnishing of any of the foregoing services, or (ii) failure to furnish or delay in furnishing any such services when such failure or delay is caused by accident or any condition beyond the reasonable control of Lessor or by the making of necessary repairs or improvements to the Premises or to the Building. The temporary failure to furnish any of such services shall not be construed as an eviction of Lessee or relieve Lessee from the duty of observing and performing any of the provisions of this Lease. The prolonged failure to furnish any of such services ("prolonged" as used herein meaning more than three (3) business days) shall not relieve Lessee from the duty of observing and performing any of its obligations under this Lease unless such failure substantially handicaps, impedes or impairs the normal use of the Premises by Lessee for the purposes authorized herein and unless within a reasonable time after Lessee has notified Lessor in writing of such failure setting forth therein in reasonable detail a description of the services not so furnished, Lessor fails to commence curing such failure or thereafter fails to continue the curing thereof with appropriate diligence and speed under the circumstances until cured. Subject to Paragraph 15(d), if the failure of services as described above was caused by the negligent or willful act of Lessor, and if such failure substantially impairs the normal use of the Premises as provided above and if Lessor fails to commence to cure such failure after written notice thereof as provided above, then the Rental and other charges payable hereunder shall abate for such time during which Lessor has failed to commence repair after the date of notice; provided, that the foregoing shall not be construed as giving Lessee any right to terminate this Lease. Without affecting any remedies Lessor may have under this Lease or otherwise, Lessor shall not be required to furnish and Lessee shall not be entitled to receive any services provided for in this Paragraph 15 during any period when Lessee is in default under any provisions of this Lease.

(c)    If Lessee uses in the Premises heat-generating machines, equipment, fixtures or other devices of any nature whatsoever which affect the temperature otherwise maintained by the air conditioning system, Lessor shall, in its sole discretion, have the right to install supplementary air conditioning units in the Premises, and the cost thereof, including the cost of installation and the cost of operation and maintenance thereof, shall be payable by Lessee to Lessor upon demand by Lessor. If Lessee installs or uses any electric machine requiring current other than 110 volts, Lessee shall at its expense, at the request of Lessor, install a separate meter to determine the amount of electricity or other power consumed by such device or machine and Lessee shall pay to Lessor the cost of all electricity or other power consumed by such device or machine as shown by such meter. In any event, if Lessee's equipment in any way increases demands for electrical power, water or gas usually furnished for use in premises of like size that are used as general office space within a three (3) mile radius of the Building and Lessor does not elect to install separate metering devices, Lessee shall pay Lessor upon demand for the cost as reasonably determined by Lessor of any such excess.

(d)    All services and utilities provided by Lessor hereunder are, unless otherwise provided to the contrary herein, based upon a normal working day, consisting of not more than ten (10) hours, Monday through ~~Friday~~ Sunday.  ~~If, in Lessor's absolute discretion, Lessee regularly uses any such services or utilities in excess of ten (10) hours a day, or on days other than Monday~~

8

~~through Friday, Lessee shall pay to Lessor, each month, as additional rent hereunder, the prorated sum (based on 365 days a year) of all costs, fees and other charges incurred by Lessor in providing such extra services or utilities during such times, upon Lessor's written demand therefor setting forth said costs, fees, and other charges. Such additional rent shall be in addition to any other Rental required hereunder~~.

(e)        In the event any municipal, state, federal or other regulatory body (whether judicial, executive or legislative) imposes mandatory controls on Lessor or the Building (including the public areas) relating to the use or conservation of energy or water, gas, light or electricity or the reduction of automobile use or automobile or other emissions, Lessor may comply with such mandatory controls to the extent it can control the use of energy or light, gas, water or electricity in the Building (including the Common Area) or the reduction of automobile use or automobile or other emissions. No such compliance shall in any event constitute a partial or complete eviction of Lessee hereunder, nor shall it entitle Lessee to any abatement or mitigation of Rental or other charges, nor shall Lessor in any way be liable for damages or injury caused thereby to Lessee's property, employees, customers or suppliers.

16.        TAXES PAYABLE BY LESSOR AND LESSEE.

(a)        Lessor shall pay all real estate, personal property and ad valorem taxes and assessments levied against the Building and Lessor's equipment therein.

(b)        Lessee shall be liable for and shall pay before delinquency the following: (i) taxes, levies and assessments levied against or measured by the cost or value of Lessee's equipment, fixtures and other personal property located in the Premises or by the cost or value of any leasehold improvements made in or to the Premises by Lessee or paid for by Lessee, regardless of whether title to such improvements shall be in Lessor or Lessee; (ii) taxes, levies and assessments levied upon or measured by the Rental or any other sum payable hereunder or on Lessor's business of leasing the Premises, excepting only net income taxes and that portion, if any, of income and franchise taxes which may hereafter be assessed in lieu of, or substituted in whole or in part for, real estate and personal property taxes; (iii) taxes, levies and assessments levied against or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Lessee of the Premises; or (iv) taxes, levies and assessments levied against or upon this transaction or any document to which Lessee is a party creating or transferring an interest in the Premises. If any of the above taxes, levies and assessments are levied against Lessor or Lessor's property, including the Building, or if the assessed value of the Building is increased by the inclusion of a value placed upon the property described in (i) above, and if Lessor pays such taxes, levies and assessments or the portion of such taxes, levies and assessments resulting from such increase in the assessment, such amounts shall be immediately due and payable by Lessee to Lessor upon Lessor's demand therefor. In the event that it shall not be lawful for Lessee to so reimburse Lessor, the Rental, as adjusted, payable to Lessor under this Lease shall be revised to net Lessor the same net Rental after imposition of any such tax upon Lessor as would have been payable to Lessor prior to the imposition of any such tax.

17.        RULES AND REGULATIONS.

Lessee shall faithfully observe and comply with the Rules and Regulations, including, but not by way of limitation, Exhibit "E" hereto and all reasonable modifications of and additions thereto from time to time put into effect by Lessor. Lessor shall not be responsible to Lessee for the nonperformance of any of said Rules and Regulations by any other tenant, occupant or user of the Building or of the Common Area.

18.        HOLDING OVER.

(a)        If Lessee does not surrender possession of the Premises at the end of the term or upon the sooner termination of this Lease, Lessee shall be a tenant-at-sufferance of Lessor and the Rental and other payments due during the period of such holdover shall be two times the amount in effect immediately prior to the end of the term or termination of this Lease prorated on a daily basis during such holdover period.

(b)        If Lessee fails to surrender the Premises upon the expiration, or earlier termination of this Lease, in addition to any other liabilities to Lessor accruing therefrom, Lessee shall indemnify Lessor as provided in Paragraph 12 hereof for any loss or liability resulting from such failure including, but without limitation, any claims made by any succeeding tenant founded upon such failure.

(c)        Acceptance by Lessor of rent after the expiration or earlier termination shall not constitute consent to a holdover hereunder or result in a renewal. The foregoing provisions of this Paragraph 18 are in addition to and do not affect Lessor's right of entry or any other rights of Lessor hereunder including, without limitation, rights under Paragraph 20 hereof, or as otherwise provided by law.

19.        INSPECTIONS AND ACCESS.

Lessor reserves and shall at any and all times have the right to enter the Premises to (a) inspect the same, (b) exhibit the same to prospective purchasers, lenders or tenants, (c) determine whether Lessee is complying with all its obligations hereunder, (d) supply and service to be provided by Lessor to Lessee hereunder, (e) post notices of nonresponsibility, (f) make repairs that Lessor is obligated or elects to perform under the provisions hereof or to abate any waste to the Premises or

9

nuisance therein, (g) make repairs to any adjoining space or utility services or make repairs, alterations or additions to any other portion of the Building, (h) to cure defaults to Lessee hereunder that Lessor elects to cure, including, without limitation, the abatement of any unauthorized use of the Premises or any nuisance or waste therein, and (i) to remove from the Premises any improvements thereto or property placed therein in violation of this Lease, all without being deemed guilty of an eviction of Lessee and without abatement of Rental; provided, however, all such work shall be done as promptly as reasonably practicable and so as to cause as little interference to the conduct of Lessee's business as reasonably practicable. Lessee hereby waives any claim for damages for any injury or inconvenience to or interference with Lessee's business or property, for any loss of occupancy or quiet enjoyment of the Premises, and for any other loss occasioned thereby. For each of the foregoing purposes, Lessor shall at all times have and retain a key with which to unlock all of the doors in, upon and about the Premises, excluding Lessee's vaults and safes and other locked security storage areas, and Lessor shall have the right to use any and all means which Lessor may deem proper to open said door in an emergency in order to obtain entry to the Premises. Any entry to the Premises obtained by Lessor by any of the above described means, or otherwise, shall not under any circumstances be construed or deemed to be a forcible or unlawful entry into, or a detainer of, the Premises, or an eviction of Lessee from the Premises or any portion thereof, and any damages caused on account thereof shall be paid by Lessee. It is understood and agreed that no provision of this Lease shall be construed as obligating Lessor to perform any repairs, alterations or decorations except as otherwise expressly agreed herein to be performed by Lessor.

     20.    DEFAULT AND REMEDIES.

    (a)    Each of the following shall be deemed an "Act of Default" by Lessee and a material breach of the Lease: (i) Lessee shall fail to pay the Rental or any other sum payable hereunder for a period of three (3) days after written notice of such failure is given by Lessor; (ii) Lessee shall fail to observe, keep or perform any of the other terms, conditions and covenants of this Lease or in the Rules and Regulations attached hereto as Exhibit "E" that Lessee is obligated to observe or perform for a period of thirty (30) days after written notice by Lessor; (iii) Lessee shall vacate or abandon the Premises or use the Premises in violation of Paragraph 4 hereof; (iv) Lessee shall become bankrupt or insolvent, or make a transfer in fraud of creditors, or make an assignment for the benefit of creditors or take or have taken against Lessee any proceeding of any kind under any provision of the Federal Bankruptcy code or under any other insolvency, bankruptcy, reorganization or similar act, in which case the provisions of Paragraph 21 hereof shall control.

    (b)    In the event the Act of Default specified in the notice provided for in clause (ii) above is of such a type that it cannot be cured or corrected within said thirty (30) day period, then Lessee shall not be in default hereunder if it shall commence the correction of such default so specified with the thirty (30) day period and diligently prosecute the same to completion. The notices specified in clauses (i) and (ii) above shall also constitute any notice required by Section 1161, et seq., of the California code of Civil Procedure, and Lessee hereby waives the requisites of said Section 1161 et seq., Lessee acknowledges and agrees that Lessor need not give further notice to Lessee prior to institution of unlawful detainer proceedings.

    (c)    If Lessee commits an Act of Default hereunder, Lessor, at any time thereafter and without waiving any other rights available to Lessor, at law or in equity, may: (i) If Lessor does not terminate Lessee's right to possession, even though Lessee has breached this Lease and/or vacated or abandoned the Premises, enforce all of Lessor's rights and remedies under this Lease, including the right to Rental as it becomes due under this Lease; or (ii) declare the term hereof ended, re-enter the Premises, as permitted by law, and remove all persons therefrom. In the event Lessor elects to declare the term hereof ended and re-enter the Premises, Lessor shall be entitled to recover as damages all of the following:

    (aa)    The worth at the time of the award of any unpaid rent or other charges which had been earned at the time of termination;

    (bb)    The worth at the time of the award of the amount by which the unpaid rent and other charges which would have been earned after termination until the time of the award exceeds the amount of the loss of such rental or other charges that Lessee proves could have been reasonably avoided;

    (cc)    The worth at the time of the award of the amount by which the unpaid rent and other charges for the balance of the term after the time of the award exceeds the amount of the loss of such rental and other charges that Lessee proves could have been reasonably avoided;

    (dd)    Any other amount necessary to compensate Lessor for the detriment proximately caused by Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom.

    (ee)    At Lessor's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by applicable California law.

    For purposes of the preceding provision, the worth at the time of the award for all Rental and other charges shall be based on the Rental and other charges in effect immediately prior to the Act of Default plus any future adjustments to the Rental and other charges as provided in Paragraph 3. In the event of default, all of Lessee's fixtures, furniture, equipment,

improvements, additions, alterations and other personal property shall remain on the Premises, and during the period of such default Lessor shall have the right to take exclusive possession of the same and to use the same free of such default or at its option to require Lessee to remove the same forthwith or declare title to the property to be vested in Lessor and store or dispose of the property as provided in Paragraph 5.

As used in subparagraph (aa) and (bb), above, the "worth at the time of the award" shall be computed by allowing interest at the maximum lawful rate. As used in subparagraph (cc) above, the "worth at the time of the award" shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award, plus one percent (1%). The amount recoverable by Lessor pursuant to subparagraph (dd) above shall include, but shall not be limited to, any costs or expenses incurred by Lessor in maintaining or preserving the Premises after such default, preparing said Premises for reletting to a new tenant, leasing commissions, reasonable attorneys' fees, accomplishing any repairs or alterations to the Premises for the purpose of such reletting, rectifying any damage thereto occasioned by the act or omission of Lessee and any other cost necessary or appropriate to relet the Premises.

(d)     If Lessor shall elect to re-enter the Premises, Lessor shall not be liable to Lessee for damages by reason of such re-entry.

(e)     The remedies granted to Lessor in the event of an Act of Default by Lessee are nonexclusive of any other legal remedies or rights available in law or equity to Lessor. No act of Lessor shall be deemed to act terminating this Lease or declaring the Lease term ended unless a written notice is served upon Lessee by Lessor expressly setting forth therein that Lessor elects to terminate this Lease or to declare the term ended. In the event Lessee commits an Act of Default and Lessor continues this Lease in effect and for as long as Lessor does not terminate this Lease, Lessee shall have the right to assign or sublet its interest in this Lease so long as Lessee first obtains Lessor's prior written consent, which consent shall not be unreasonably withheld; however, Lessee shall not be released from any obligation hereunder by reason of any such assignment or subletting.

21.     BANKRUPTCY.

In the event Lessee shall become bankrupt or insolvent, or make a transfer in fraud of creditors, or make an assignment for the benefit of creditors, or take or have taken against Lessee any proceeding of any kind under any provision of the Federal Bankruptcy Code or under any other insolvency, bankruptcy, reorganization or similar act or a receiver is appointed for a substantial portion of Lessee's assets, this Lease shall immediately terminate and be of no further force or effect whatsoever, without the necessity for any further action by Lessor, except that Lessee shall not be relieved of obligations which have accrued prior to the date of such termination. Upon such termination the provisions herein relating to the expiration or earlier termination of this Lease shall control and Lessee shall immediately surrender the Premises in the condition required by the provisions of this Lease. Additionally, Lessor shall be entitled to all relief, including recovery of damages from Lessee, which may from time to time be permitted, or recoverable, under the Federal Bankruptcy Code or any other applicable laws.

22.     LESSOR'S PERFORMANCE OF LESSEE'S OBLIGATIONS.

If Lessee fails to perform any one or more of its obligations hereunder, Lessor shall have the right, but not the obligation, to perform such Lessee's obligations. Upon receipt of a demand therefor from Lessor, Lessee shall immediately reimburse Lessor for the cost to Lessor of performing such obligations, including Lessor's overhead and attorneys' fees.

23.     DESTRUCTION OR DAMAGE.

In the event the Premises, or access to them, are wholly or partially destroyed by fire or other casualty covered by the form of fire and extended coverage insurance from time to time maintained by Lessor, Lessor shall diligently rebuild, repair or restore the Premises and access thereto to substantially the same condition as when the same were furnished to Lessee, excluding any improvements installed by Lessee, or by Lessor at Lessee's expense or pursuant to any improvement allowance given by Lessor to Lessee at the time of such installation, and this Lease shall continue in full force and effect. If the repairs cannot be made within four (4) months (or such longer time as any holder of a deed of trust on the Building may require before permitting such termination), Lessor and Lessee shall have the right to terminate this Lease. In the event, however, that the Building is so damaged or destroyed to the extent of more than one-third (1/3) of its replacement cost, or to any substantial extent by a casualty not so covered, Lessor may elect to terminate this Lease in lieu of so restoring the Premises. If the Premises, or portions thereof, are rendered totally untenantable, rent shall abate during the period of untenantability. Lessee agrees that the provisions of this Lease control in the event of damage or destruction and Lessee hereby waives the provisions of Sections 1932(2) and 1933(4) of the California Civil Code or any successor statutes relating to the termination of a lease upon destruction.

24.     EMINENT DOMAIN.

In case the whole of the Premises, or such part thereof as shall substantially interfere with Lessee's use and occupancy thereof, shall be taken by any lawful power or authority by exercise of the right of eminent domain, or sold to prevent such taking, either Lessee or Lessor may

terminate this Lease effective as of the date possession is required to be surrendered to said authority. Except as provided herein, Lessee shall not, because of such taking, assert any claim against Lessor or the taking authority for any compensation because of such taking, and Lessor shall be entitled to receive the entire amount of any award without deduction for any estate or interest of Lessee. In the event the amount of property or the type of estate taken shall not substantially interfere with Lessee's use of the Premises, Lessor shall also be entitled to the entire amount of the award without deduction for any estate or interest of Lessee. In such even, Lessor shall promptly proceed to restore the Premises to substantially (taking into account the effect of the taking) their condition prior to such partial taking, and a proportionate allowance shall be made to Lessee for the rent corresponding to the time during which, and to the part of the Premises of which, Lessee shall be so deprived on account of such taking and restoration. Nothing contained in this Paragraph 24 shall be deemed to give Lessor any interest in, or prevent Lessee from seeking any award against the taking authority for, the taking of personal property for fixtures belonging to Lessee or for relocation or business interruption expenses recoverable from the taking authority.

25.    INTEREST ON LESSEE'S OBLIGATIONS.

Lessee agrees that any payment due from Lessee to Lessor which is not paid when due shall bear interest from the due date to the date of payment at the maximum lawful rate; however, such payment of interest shall not be construed as a waiver by Lessor of Lessee's obligations hereunder regarding timely payment of sums due nor shall such payment of interest cure or excuse any breach or default hereunder.

26.    INSURANCE.

(a)    Lessee shall maintain, at its sole cost and expense, insurance coverage necessary for the protection against loss or damage due to fire or other casualty to Lessee's goods, furniture, equipment, trade fixtures, special tenant improvements or other personal property placed in, on or about the Premises. Lessee shall furnish Lessor with copies of policies or certificates of all such insurance concurrently in effect from time to time during the term or any extensions hereof.

(b)    Lessee shall take out and keep in force during the term of this Lease, at Lessee's expense, public liability insurance covering the Premises with a combined single limit coverage of at least $1,000,000.00 with companies and policies reasonably satisfactory to Lessor. If Lessor requests, the policies shall be presented to Lessor for written approval. The policies shall designate specifically that Lessor is an additional named insured thereunder and provide for written notice to Lessor, at lest ten (10) days prior thereto, of any cancellation of such policy. Lessee shall furnish Lessor with copies of policies or certificates of all such insurance required hereby in effect from time to time during the term or any extensions hereof. All policies required to be carried by Lessee under this Paragraph 26 shall be primary policies and not contributing with any policies which Lessor may also carry and shall insure Lessee's indemnity under Paragraph 12. Lessee's insurance obligations as provided in this Paragraph 26 may be brought within the coverage of a blanket policy of policies of insurance carried and maintained by Lessee; however, Lessor must be named as an additional named insured thereunder, and the coverage afforded Lessor shall not be reduced or diminished by reason of the use of a blanket policy. If Lessor determines, in Lessor's reasonable opinion, that the amount of liability insurance requested hereunder is not adequate, Lessee shall increase such insurance coverage as requested by Lessor.

(c)    Lessee agrees that if Lessee does not take out any insurance required by this Paragraph 26 or keep the same in full force and effect, Lessor may, but shall not be required to, take out the necessary insurance and pay the premiums therefor and Lessee shall repay such amount which shall be deemed to be additional Rental and payable as such in the next Rental payment due.

(d)    Lessee and Lessor hereby waive as against the other any and all claims and demands of whatsoever nature for injury, death, damages or loss to any person or property in, upon or about the Premises or the Building to the extent that such injury, death, damages or losses are insured against by any insurance policy in force at the time of loss and to the extent this waiver of liability is permitted by any such policies of insurance or by endorsement thereon without additional cost. Lessee, upon Lessor's request, shall provide Lessor with a certificate of insurance or other document evidencing such waiver of subrogation by Lessee's insurer.

27.    ASSIGNMENT OR TRANSFER OF LESSOR'S INTEREST.

In the event of any assignment or transfer of Lessor's interest in the Building, Lessor shall be and is hereby entirely freed and relieved of all liability under any and all of its covenants and obligations contained in or derived from this Lease, arising out of any act, occurrence or omission occurring after the consummation of said assignment or transfer. The assignee or transferee shall be deemed, without any further agreement between the parties or their successors-in-interest, or between the parties and any such assignee or transferee, to have assumed and agreed to carry out any and all of the covenants and obligations of Lessor under this Lease. Lessee agrees to atorn to such assignee or transferee.

28.    INCORPORATION OF PRIOR AGREEMENTS/AMENDMENTS.

This Lease and the Exhibits attached hereto contain all understandings and agreements of the parties with respect to any matter mentioned herein. No prior agreement or

understanding, written or oral, pertaining to any such matters shall be effective. This Lease may only be modified by a writing signed by the party to be charged.

### 29. ATTORNEYS' FEES.

In the event that any legal action or similar proceeding shall be instituted by either of the parties hereto against the other arising out of this Lease, the prevailing party shall be entitled to recover reasonable attorneys fees' incurred in such action and such amount shall be included in any judgment rendered in any such action.

### 30. NO MERGER.

The voluntary or other surrender of this Lease by Lessee, or a mutual cancellation thereof, shall not work a merger, and shall, at the option of Lessor, terminate all or any existing subleases or subtenancies, or may, at the option of Lessor, operate as an assignment to it of Lessee's interest in any or all such subleases or subtenancies.

### 31. WAIVER.

The waiver by Lessor of any term, condition or covenant contained herein shall not be deemed to be a waiver of any subsequent breach of the same or any other term, condition or covenant contained herein, nor shall any custom or practice which may grow up between the parties in the administration of this Lease be construed to waive or to lessen the right of Lessor to insist upon the performance by Lessee in strict accordance with all of the provisions of this Lease. The subsequent acceptance of rent hereunder by Lessor shall not be deemed to be a waiver of any preceding or subsequent breach by Lessee of any terms, conditions or covenants of this Lease, other than the failure of Lessee to pay the particular rent so accepted, regardless of Lessor's knowledge of a preceding breach at the time of acceptance of such rent.

### 32. NOTICES.

ALL NOTICES AND DEMANDS WHICH MAY OR ARE REQUIRED TO BE GIVEN BY EITHER PARTY TO THE OTHER HEREUNDER SHALL BE GIVEN EXCLUSIVELY IN THE FOLLOWING MANNER:  IN WRITING, DEPOSITED IN THE UNITED STATES MAIL, CERTIFIED OR REGISTERED, POSTAGE PREPAID, and addressed to Lessee and Lessor at their respective addresses set forth below their signatures heron, or to such other place as Lessee or Lessor may from time to time designate by notice to the other as provided herein. ALL SUCH NOTICES NOT DELIVERED IN THIS MANNER SHALL BE VOID AND OF NO FORCE AND EFFECT. ALL SUCH NOTICES SHALL BE DEEMED FULLY GIVEN FORTY-EIGHT (48) HOURS AFTER THE SAME HAVE BEEN DEPOSITED IN THE MAIL AS PROVIDED HEREIN.

### 33. COMPLIANCE WITH LEGAL REQUIREMENTS.

Lessee shall at its sole cost and expense promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force with the requirements of any board of fire underwriters or other similar body now or hereafter constituted, with any directive or occupancy certificate issued pursuant to any law by any public officer or officers insofar as any thereof relate to or affect the condition, use or occupancy of the Premises, excluding requirements of structural changes not related to or affected by Lessee's improvements or acts.

### 34. NON-AGENCY.

It is not the intention of Lessor and Lessee to create hereby a relationship of master-servant, principal-agent, partnership or joint venture and under no circumstance shall Lessee herein be considered the agent or partner of Lessor, it being the sole purpose and intent of the parties hereto to create a relationship of landlord and tenant.

### 35. LESSOR'S LIABILITY.

Any provision in this Lease to the contrary notwithstanding, Lessee hereby agrees that no personal or corporate liability of any kind or character whatsoever now attaches or at any time hereafter under any condition shall attach to Lessor for payment of any amounts payable or to become payable under this Lease or for the performance of any obligation under this Lease.  In the event of any actual or alleged failure, breach or default hereunder by Lessor, the sole and exclusive remedy of Lessee shall be to proceed against the interest of Lessor in and to the Building.

### 36. MODIFICATION FOR LENDER.

If, in connection with obtaining any financing or refinancing for the Building, a lender shall request reasonable modifications in this Lease as a condition to such financing or refinancing, Lessee, without any additional consideration therefor, agrees to promptly execute such modifications or consents thereto, provided that such modifications do not materially increase the obligations of Lessee hereunder or materially and adversely affect the leasehold interest hereby created.

37.    NO LIGHT AND AIR EASEMENT.

Any diminution or shutting off of light or air by any structure which may be erected on land which is part of or adjacent to the Building shall in no way affect this Lease, abate rent or otherwise impose any liability on Lessor.

38.    QUIET ENJOYMENT.

Provided Lessee has performed all of the terms, conditions and covenants of this Lease, including the payment of Rental and all other sums due hereunder, Lessee shall peaceably and quietly hold and enjoy the Premises against Lessor and all persons claiming by, through or under Lessor, for the term herein described subject to the provisions and conditions of this Lease. Lessee's right to use the Premises or public areas as herein provided shall be subject to restrictions or other limitations or prohibitions resulting from any laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force, and no such event shall in any manner affect this Lease, abate rent, relieve Lessee of any liabilities or obligations under this Lease or give rise to any claim whatsoever against Lessor.

39.    SECURITY DEPOSIT.

Lessee shall deposit with Lessor upon execution hereof that certain sum specified in Item 6 of Exhibit B hereto as security for Lessee's faithful performance of Lessee's obligations hereunder. If Lessee fails to pay rent or other charges due hereunder, or otherwise defaults with respect to any provision of this Lease, Lessor may use, apply or retain all or any portion of said deposit for the payment of any rent or other charge in default, or for the payment of any other sum to which Lessor may become obligated by reason of Lessee's default, or to compensate Lessor for any loss or damage which Lessor may suffer thereby. If Lessor so uses or applies all or any portion of said deposit, Lessee shall within five (5) days after written demand therefor, deposit cash with Lessor in an amount sufficient to restore said deposit to the full amount hereinabove stated and Lessee's failure to do so shall be a material breach of this Lease. Lessor shall not be required to keep said deposit separate from its general accounts. If Lessee performs all of Lessee's obligations hereunder, said deposit, or so much thereof as has not therefor been applied by Lessor, shall be returned, without payment of interest or other increment for its use, to Lessee (or, at Lessor's option, to the last assignee, if any, of Lessee's interest hereunder) at the expiration of the term hereof and after Lessee has vacated the Premises.

40.    FORCE MAJEURE.

Subject to the provisions set forth elsewhere herein, neither party hereto shall be chargeable with, liable for, or responsible to the other for any delay in the performance of any act required hereunder when such delay is caused by fire, earthquake, explosion, flood, hurricane, the elements, acts of God or the public enemy, action or interference of governmental authorities or agents, war, invasion, insurrection, rebellion, riots, strikes or lockouts or any other cause of like nature not the fault of such party and any delay due to said causes or any of them shall not be deemed a breach of this Lease, in the performance of this Lease, it being specifically agreed that any time limit provision contained in this Lease shall be extended for the same period of time lost by causes hereinabove set forth. The provisions of this Paragraph 40 shall not, however, operate to excuse Lessee from prompt payment of Rental or other charges payable hereunder.

41.    EXHIBITS.

The exhibits and other attachments enumerated in Item 9 of Exhibit B hereto are attached to this Lease and by this reference made a part hereof.

42.    SUBORDINATION.

This Lease, at Lessor's option, shall be subordinate to any ground lease, mortgage, deed of trust, or any other hypothecation for security now or hereafter placed upon the Building or any part thereof, and to any and all advances made on the security thereof and to all renewals, modifications, consolidations, replacements and extensions thereof. If any mortgagee, trustee or ground lessor shall elect to have this Lease prior to the lien of its mortgage or deed of trust or to its ground lease, and shall give written notice thereof to Lessee, this Lease shall be deemed prior to such mortgage, deed of trust, or ground lease, whether this Lease is dated prior or subsequent to the date of said mortgage, deed of trust or ground lease or the date of recording thereof. Lessee agrees to execute any documents required to effectuate such subordination or to make this Lease prior to the lien of any mortgage, deed of trust or ground lease, as the case may be, and in the event Lessee fails to execute such documents within ten (10) days after written demand therefor, Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact and in Lessee's name to execute and deliver such documents; such power, being coupled with an interest, is irrevocable.

43.    STATEMENT OF LESSEE.

(a)    Lessee shall, at any time and from time to time, upon not less than ten (10) days prior written notice by Lessor, execute, acknowledge and deliver to Lessor a statement in writing certifying that this lease is unmodified and in full force and effect (or, if there has been any modification thereof, that the same is in full force and effect as modified and identifying the modification or

modifications) and that Lessor is not in default, except as specified in such statement, in regard to any of its covenants or obligations under this Lease, and further setting forth the dates to which all sums payable as Rental hereunder have been paid in advance, if any, and such other statements relating to the Premises as Lessor's lender, lienor, encumbrancer or purchaser may require.

(b)       If Lessee fails to execute and deliver to Lessor the statement required by this Paragraph 43 within said ten (10) day period, Lessee hereby irrevocably appoints Lessor the attorney-in-fact of Lessee to execute and deliver such statements; such power, being coupled with an interest, is irrevocable.

44.      RECORDING.

This Lease shall not be recorded, but if Lessor so requests, Lessee agrees to execute, acknowledge and deliver a memorandum of this Lease in recordable form which Lessor thereafter may file for record.

45.      BROKER'S COMMISSIONS.

Lessee represents and warrants that it has taken no act nor permitted any act to be taken pursuant to which any claim might be incurred for brokerage commissions or finder's fees in connection with the execution of this Lease.  Lessee agrees to indemnify Lessor as provided in Paragraph 12 hereof with respect to any such claim for brokerage commissions or finder's fees.

46.      AUTHORITY.

(a)       If Lessee is a corporation, Lessee and each individual executing this Lease on behalf of Lessee, does hereby represent and warrant that Lessee is duly organized, validly existing and in good standing under the laws of the State of California and has all requisite power and authority to own, lease, hold and operate its properties and conducts its business in the State of California in the manner contemplated hereunder.

(b)       If Lessee is a corporation, each individual executing this Lease on behalf of Lessee represents and warrants that he is duly authorized to execute and deliver this Lease on behalf of the corporation, in accordance with a duly adopted resolution of the Board of Directors of the corporation or in accordance with the Bylaws of the corporation, and that this Lease is binding upon said corporation in accordance with its terms.

(c)       If Lessee is a partnership or an individual or individuals, each individual signing this Lease represents that he is duly authorized to execute and deliver this Lease on behalf of such partnership or individual(s) and that this Lease is binding on such partnership or individuals in accordance with its terms.

47.      MISCELLANEOUS.

(a)       The words "Lessor" and "Lessee" as used herein shall include the plural as well as the singular.  Words used in masculine gender include the feminine and neuter.

(b)       If there be more than one Lessee, the obligations hereunder imposed upon Lessee shall be joint and several.  All references to Lessee herein shall include, as applicable, Lessee's sublessees and their employees, agents, customers, licensees and invitees.  All references herein to Landlord, if any, shall mean and refer to Lessor, and all references herein to Tenant, if any, shall mean and refer to Lessee.

(c)       The paragraph or other headings of this Lease are not a part of this Lease and shall have no effect upon the construction or interpretation of any part hereof.

(d)       Time is of the essence of this Lease and each and all of its provisions in which time is a factor.

(e)       Submission of this instrument for examination or signature by Lessee does not constitute a reservation of or option for lease, and it is not effective as a lease or otherwise until execution and delivery by both Lessor and Lessee.

(f)       The terms, conditions and covenants herein contained shall, subject to the provisions on assignment and subletting, apply to and bind the spouses, heirs, successors, legal representatives, permitted assigns and subtenants of the parties hereto.

(g)       Lessee shall not, without the written consent of Lessor, use the name of the Building for any purpose other than as the address of the business to be conducted by Lessee in the Premises.

(h)       This Lease shall be governed by and construed pursuant to the laws of the State of California.

(i)       The invalidity of any provision of this Lease as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

48.    ADDITIONAL LEASE PROVISIONS:

Notwithstanding anything to the contrary contained within the Lease, the following provisions shall apply:

(a)    Use of Premises.  General medical practice.  Lessee is specifically prohibited from offering, or permitting to be offered, chiropractic care or chiropractic-related services. Lessor and Lessee agree that physical therapy and massage therapy, not involving spinal manipulation, and provided by licensed practitioners, shall not be considered "chiropractic-related services". The parties agree no use other than as identified above is permitted.

(b)    Odor, Sound and Vibration Control.  Lessee shall not permit Lessee's use of the Premises to create odor, sound or vibration noticeable in adjacent suites.  In such event, Lessee shall eliminate those activities generating such odor, sound or vibration, or, at Lessee's expense, install such improvements as may be necessary to reduce the odor, sound or vibration to a level acceptable to Lessor and adjacent lessees.

(c)    Hazardous Materials.  Lessee represents and warrants that any handling, transportation, storage, treatment or usage by Lessee, its officers, agents or employees of hazardous materials, whether biological, chemical or otherwise, that may occur in, on or under the Building during the primary term or any extension term shall be in compliance with all applicable federal, state and local laws, regulations and ordinances.  Lessee agrees to indemnify, defend and hold Lessor and their officers, partners, directors, shareholders, employees and agents harmless from any claims, judgments, damages, fines, penalties, costs, liabilities (including sums paid in settlement of claims) or loss including reasonable attorney's fees, consultant's fees, and expert fees which arise during or after the primary term or any extension term, as a result of the presence of hazardous materials in, on or under the Building caused by the acts of Lessee, its officers, employees, contractors or agents.  Without limiting the generality of the foregoing, this indemnification shall survive the expiration of this Lease and does specifically cover costs incurred in connection with any investigation of site conditions or any cleanup, remedial, removal or restoration work required by any federal, state or local governmental agency or political subdivisions because of a breach of Lessee's covenants contained in this paragraph.

(d)    Interior/Window Lessee Signage.  Building standard entry door and directory signage, per Lessor's sign criteria, shall be provided by Lessee, at Lessee's expense.  No window signage shall be permitted.

(e)    Exterior Lessee Signage.  Lessor, subject to any approvals required by the Centerpointe Owner's Association, of which the Building is a part, and/or the city of Irvine, shall permit Lessee to place an exterior sign identifying Lessee's business on the two story stucco wall panel comprising the Jamboree side of the Building (the space formerly occupied by "Priority Staffing").  If more than one lessee identification sign (Sign) is permitted by Lessor on said wall panel, Lessee's Sign shall be located above any other Sign on said wall panel.  Lessee shall pay all costs of design, permitting, construction, installation and on-going maintenance of Lessee's exterior lessee identification sign.  Exact sign location, material, type of construction and method of installation shall be as approved by Lessor.

(f)    Maintenance of Premises.  Lessee shall, at Lessee's expense, maintain, repair or replace, as necessary, the following:

(i).  All water, gas and sewer drain lines from the point of departure from common service to and through-out the Premises.  In the case of water lines, the Lessee's responsibility includes the testing, maintenance, repair and as-necessary replacement of any required back-flow device.  In the case of sewer drain lines, Lessee shall be responsible for the cleaning and repair of sewer lines through-out the Premises and continue to the point the sewer line connects with a common sewer line that serves more than one lessee.

(ii).  All light fixtures located inside the Premises including ballasts, bulbs and fixture covers or light diffusers.

(iii).  All toilet and sink repairs, clogged traps and broken or discolored fixtures.

(g)    Janitorial Service.  Lessee shall, at Lessee's expense, provide all janitorial and housekeeping services for the Premises.  Common (public) hallway, lobby and common (public) restroom janitorial services shall be provided by Lessor pursuant to Paragraph 15 of the Lease, at a frequency and during times as determined by Lessor.

(h)    Building Access.  Subject to: i) Lessee not being in default of the Lease; and ii) the provisions contained in Paragraph 4 "Use, Nuisance or Hazard", Paragraph 38 "Quiet Enjoyment" and Paragraph 40 "Force Majeure" of the Lease, other than in the event of an emergency in, or about, the Building, which may affect the health or safety of Building lessees or others, or require the protection of property located in, on, or about the Building, insofar as it is within Lessor's control, Lessee shall be permitted unrestricted access to the Premises by Lessor.  Pursuant to Paragraph 40 of the Lease, nothing in this paragraph shall operate to excuse Lessee from prompt payment of Rental or other charges payable by Lessee to Lessor under the Lease.

(i)    After Hours Lighting/H.V.A.C.  Lessor and Lessee acknowledge Lessee may operate Lessee's business at times other than that established by Lessor for the provision of Premises lighting and heating, ventilating and air conditioning (H.V.A.C.) services (After Hours Services).

Lessor and Lessee agree that, as provided in Paragraph 15(d), if, in Lessor's absolute discretion, Lessee's use of such After Hours Services results in a significant expense to Lessor, Lessee shall pay to Lessor, each month, as additional rental hereunder, such additional amount as to fully compensate Lessor for the provision of such After Hours Services, upon Lessor's written demand therefor setting forth said costs, fees, and other charges. As provided above, such additional rental shall be in addition to any other Rental required under this Lease.

(j) Early Termination of Lease. In the event Lessor decides to demolish the Building as part of a redevelopment of Lessor's land, of which the Building is a part, Lessor reserves and is hereby granted the right, at any time after December 31, 2014, in the exercise of Lessor's sole and absolute discretion, without any obligation to Lessee, financial or otherwise, and notwithstanding any option which may be granted Lessee, or the exercise by Lessee thereof, upon not less than six (6) months prior written notice to Lessee (Notice of Early Lease Termination), to cancel and terminate this Lease by giving written notice to Lessee. Said Notice of Early Lease Termination may be delivered either personally by Lessor to Lessee or as provided in Paragraph 32 of the Lease.

(k) Lessee's Due Diligence. Lessee acknowledges that neither Lessor, Newport West Properties or Dale T. Falasco have been involved in any way in Lessee's decision to lease space within the Building, other than discussing the terms contained in this Lease. Lessee further acknowledges that no commitments or oral or written agreements have been made regarding the Premises not specifically contained within this Lease. Lessee has performed Lessee's own investigation concerning its decision to enter into a lease on the Premises and has not relied on any comments or statements, expressed or implied, from the parties indicated in this paragraph.

(l) Parking. Vehicular parking in Centerpointe Business Park, of which the Building is a part, is regulated by the Centerpointe Owner's Association. At the time of Lease execution all vehicular parking in Centerpointe Business Park is without charge and in-common. In the event the Centerpointe Owner's Association hereinafter institutes hourly or daily parking charges, Lessor shall agree to cover such charges for Lessee's employees, patients and invitees during Lessee's hours of operation, provided Lessee's employees, patients and invitees abide by all regulations regarding vehicular parking established by the Centerpointe Owner's Association, as they now exist or may hereafter be promulgated.

(m) Sublet to Independent Contractors. Lessor shall agree not to unreasonably withhold Lessor's permission for Lessee to sublet a portion of the Premises to independent contractors engaged in the practice of general medicine, as permitted as an allowed use as described in Paragraph 48(a) of this Lease. Notwithstanding the foregoing, Lessee agrees all sublessees shall have obtained the appropriate licenses required for the practice of their profession, that such licenses shall be maintained in a current status that permits the on-going practice of their profession, and that all governmental regulations governing the services provided by sublessees shall be fully adhered to at all times. Lessee further agrees all subleases shall be in writing, in a form previously approved by Lessor, and shall contain language clearly identifying the superiority of this Lease.

(n) No Use Exclusive. Lessee acknowledges Lessor has not granted Lessee the exclusive right to be the only lessee in the Building to offer some or all of the uses permitted Lessee as described in Paragraph 48(a) of this Lease, and that other lessees in the Building may now, or in the future, engage in the practice of general medicine or provide general medical services.

(o) Lessee Water Usage. Lessee understands water service is provided by common meter. In the event Lessor determines that Lessee is using a disproportionate amount of water, whether caused by Lessee's failure to prevent wastage through proper fixture maintenance or otherwise, Lessor shall determine a reasonable charge for the cost of such disproportionate water consumption by Lessee and Lessee shall pay the same to Lessor within ten (10) days of being assessed.

(p) Lessee Usage of Electricity. Lessee understands electric service is provided by common meter. In the event Lessor determines that Lessee is using a disproportionate amount of electricity, whether caused by Lessee's operation of medical equipment or otherwise, Lessor shall determine a reasonable charge for the cost of such disproportionate consumption of electricity by Lessee and Lessee shall pay the same to Lessor within ten (10) days of being assessed.

(q) Monetary Default Possession. In addition to and notwithstanding any other remedies available to Lessor at law or under the Lease, in the event Lessee is in monetary default of the Lease, has been served with a Three Day Notice To Pay Or Quit, and continues to remain in monetary default beyond the three day cure period provided in said notice, Lessor shall, without further notice to Lessee, have the right to: i) terminate Lessee's right to enter the Premises; and ii) immediately take possession of and secure the Premises (Default Possession), including re-keying all locks and changing and/or disabling all security alarms. Lessee acknowledges Lessor has a security interest in taking the foregoing action and gives Lessor the right to do so to protect and preserve the Premises and Lessor's interest in any improvements made or installed by Lessor or Lessee to or upon the Premises and the Building within which the same are located, and which, when made or installed, as provided in the Lease, shall be deemed to have attached to the freehold and to have become the property of Lessor. In the event Lessor enforces Lessor's foregoing right of Default Possession, Lessee shall not make any claim of whatever nature or description in any legal proceeding, including a claim for monetary damages. Further, Lessee agrees to indemnify, defend and hold harmless Lessor against and from any damage, loss, liability, expense, claim, demand, action, suit, proceeding, judgment or execution (including, without limitation, reasonable attorneys' fees, consulting fees and court costs) resulting from Lessor's Default

Possession by any party claiming by, through or on behalf of Lessee. This indemnity shall survive the expiration or earlier termination of the Lease.

(r)    Broker Representation.  The parties acknowledge that Medical Realty Advisors, representing the Lessee solely, and Newport West Properties, representing the Lessor solely, are the only brokers or individuals involved in this transaction to whom a commission is owed. The parties agree Lessor shall pay a commission on the primary term of the Lease only, and not on any extensions thereof, with the commission calculated pursuant to Newport West Properties' standard Schedule of Lease Commissions. Said commission shall be paid one-half to Medical Realty Advisors and one-half to Newport West Properties upon occupancy of the Premises and commencement of business by Lessee.

(s)    Right of Assignment.  Lessor shall reasonably consent to assignment of the Lease, provided the Lease is assigned to a doctor (or medical group) engaged in the practice of general medicine that is: i) licensed as required by the state of California, with such license(s) maintained in good standing; ii) respected by his professional peers; iii) experienced in owning or managing a similar business; and iv) financially capable of making all payments due under the Lease.  If Lessor withholds his consent, both Lessor and Lessee agree to refer the matter to a mutually approved third party for the determination, pursuant to the standards of the American Arbitration Association.  In the event Lessor's withholding of consent is found to be unreasonable by the aforementioned mutually approved third party, Lessee's sole remedy shall be to have the proposed assignment declared valid as if Lessor's consent had been given.  All other provisions of the Lease regarding assignment shall continue to remain in full force and effect.

(t)    Lessor's Improvement Allowance.  Lessor shall provide Lessee a tenant improvement allowance which shall not exceed thirty nine thousand dollars ($39,000.00). Said allowance shall be paid to Lessee upon occurrence of all of the following: i) Lessee's occupancy of the Premises and commencement of business; ii) receipt of copies of paid invoices for work incurred and materials purchased in the physical improvement of the Premises; and iii) receipt of labor and material lien releases from all contractors and material providers showing all such expenses paid in full.  In the event Lessee's expenditure does not exceed $39,000.00, Lessor shall pay such lesser amount.

(u)    Lessor and Lessee Compliance With Laws.  In furtherance of Lessor's obligations under the Lease, Lessor, at Lessor's expense, hereby confirms Lessor shall maintain and operate the public areas of the Building, of which the Premises is a part, in compliance with all applicable governmental rules, laws, and ordinances, including the Americans with Disabilities Act.  In furtherance of Lessee's obligations under the Lease, including Paragraph 4 and Paragraph 33, Lessee, at Lessee's expense, hereby confirms Lessee shall be responsible to maintain and operate the Premises in compliance with all applicable governmental rules, laws, and ordinances, including the Americans with Disabilities Act.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

"LESSOR":                                              "LESSEE":

BATES JOHNSON BUILDING, LTD.,          CADUCEUS MEDICAL GROUP, INC.,
a California limited partnership                  a California professional corporation

By: _____          By: _____
     Dale T. Falasco, General Partner              Gregg De Nicola, M.D., President

Address:  19742 Mac Arthur Blvd.          Address:  19742 Mac Arthur Blvd.
              Suite 240                                        Suite 100
              Irvine, CA 92612                              Irvine, CA 92612

EXHIBIT "A-1"
DRAWING OF PREMISES
(19742 MacArthur Blvd., Suite 100)
(not to scale)



EXHIBIT "A-2"
LEGAL DESCRIPTION
19742 MAC ARTHUR BOULEVARD
IRVINE, CALIFORNIA
(19742 MacArthur Blvd., Suite 100)

All that certain land situated in the State of California, County of Orange, City of Irvine, described as
follows:

That portion of Block 50 of Irvine's Subdivision as shown on a Map recorded in Book 1, page 88 of
Miscellaneous Record Maps, records of Orange County, California, described as follows:

Parcel 2 shown on a Map filed in Book 107, pages 10 and 11 of Parcel Maps, in the Office of the county
Recorder of said Orange County.

EXHIBIT "B"
RENTAL TERMS
(19742 MacArthur Blvd., Suite 100)

LESSEE: <u>CADUCEUS MEDICAL GROUP, INC., a California professional corporation</u>

1.   Premises:

       A.   Floor: <u>First.</u>

       B.   Location: <u>Suite 100.</u>

2.   Term:

       A.   Period of Term: <u>Sixty three and one half (63 1/2) months.</u>

       B.   Commencing on: <u>February 15, 2009.</u>

       C.   Ending on <u>May 31, 2014.</u>

3.   Rental:

Rental shall be paid according to the following schedule:

Monthly Rental shall be abated from Lease Commencement up to and including June 14, 2009.
$8,924.00 per mo. for the period June 15, 2009 up to and including December 31, 2009.
$9,281.00 per mo. for the period January 1, 2010 up to and including December 31, 2010.
$9,652.00 per mo. for the period January 1, 2011 up to and including December 31, 2011.
$10,038.00 per mo. for the period January 1, 2012 up to and including December 31, 2012.
$10,440.00 per mo. for the period January 1, 2013 up to and including December 31, 2013.
$10,857.00 per mo. for the period January 1, 2014 up to and including May 31, 2014.

4.   Adjustment to Rental (Paragraph 3(b) of the Lease):

Lessor and Lessee agree that any Adjustment to Rental resulting from Lessee's proportionate share of any increase in Operating Expenses shall be determined by comparing then-current Operating Expenses Per Square Foot against Base Operating Expenses Per Square Foot, which are defined as Operating Expenses Per Square Foot incurred during the <u>2009</u> Calendar Year, as provided in Paragraph 3(b) of the Lease.

5.   Rentable Area:

       A.   Rentable Area of Building: <u>24,000</u> square feet.

       B.   Rentable Area of Premises: <u>3,245</u> square feet.

6.   Security Deposit: <u>$10,000.00.</u> Security Deposit and Monthly Rental for the period June 15, 2009, up to and including July 14, 2009, shall be paid to Lessor by Lessee upon Lease execution by Lessee.

7.   Options: <u>Right to earn an option to extend the term of the Lease for one five (5) year period.</u>

8.   Janitorial Service: <u>to be furnished as provided in Paragraph 48(g) of the Lease.</u>

9.   Exhibits:

The following exhibits are attached to this Lease and incorporated therein:

(X)   Exhibit A-1, Drawing of Premises (not to scale)
(X)   Exhibit A-2, Legal Description
(X)   Exhibit B, Rental Terms
(X)   Exhibit C, Lessor and Lessee Work
( )   Exhibit D, Guaranty of Lease
(X)   Exhibit E, Rules and Regulations
(X)   Exhibit F, Right to Extend Lease Term

Lessor's Initials _____      Lessee's Initials _____

**EXHIBIT "C"**
**LESSOR AND LESSEE WORK**
(19742 MacArthur Blvd., Suite 100)

<u>Lessor's Improvements:</u>

Lessor shall reimburse Lessee for labor and materials paid by Lessee for physical improvements made by Lessee to the Premises, up to a maximum of thirty nine thousand dollars ($39,000.00), subject to the conditions provided in Paragraph 48(t) of the Lease.

<u>Lessee's Improvements:</u>

Other than the foregoing reimbursement provided by Lessor, Lessee hereby accepts the Premises in an "as-is" condition and understands and agrees:

1. Lessee shall provide, at Lessee's expense, any improvements Lessee finds necessary or desirable for the proper conduct of Lessee's business, pursuant to the provisions of the Lease, including all partitions, suite entry doors, plumbing, electrical, lighting, air conditioning distribution (including ducting, registers and grills), water lines, painting and floor coverings.

2. Lessee, subject to the provisions of Paragraph 48(e) of the Lease, shall pay all costs of design, permitting, construction, installation and on-going maintenance of Lessee's exterior lessee identification sign. Exact sign location, material, type of construction and method of installation shall be as approved by Lessor.

3. Lessee, at Lessee's expense, shall be responsible for all moving expenses, including, but not limited to, purchasing, relocating and/or installing Lessee's furniture, fixtures, telephones, and all telephone, computer, fax, modem lines, and any other office or communication equipment necessary for the conduct of Lessee's business.

EXHIBIT "E"
OFFICE BUILDING
RULES AND REGULATIONS
(19742 MacArthur Blvd., Suite 100)

1.  The sidewalks, halls, passages, exits, entrances, elevators, shopping malls, escalators and stairways of the Building shall not be obstructed by Lessee, or used by it for any purpose other than for ingress and egress from the Premises. The hallways, passages, exits, entrances, elevators, escalators and stairways are not for the use of the general public and Lessor shall in all cases retain the right to control and prevent access thereto of all persons whose presence, in the sole discretion of Lessor, shall be adverse to the safety, character, reputation or interests of the Building, or any person in possession or use of any portion thereof, or any interest therein provided, however, that nothing herein contained shall be construed to prevent such access to persons with whom Lessee normally deals in the ordinary course of its business, unless such persons are engaged in illegal activities. Neither Lessee nor any of its employees, agents, or invitees shall go upon the roof of the Building.

2.  The Premises shall not be used for the storage of merchandise or for lodging and no cooking shall be done or permitted by Lessee on the Premises, except that the preparation of coffee, tea, hot chocolate and similar items for Lessee and its employees shall be permitted.

3.  Lessee shall not employ any person or persons other than the janitor of Lessor for the purpose of cleaning the Premises, unless otherwise agreed to by Lessor in writing. Except with the prior written consent of Lessor, no person or persons, other than those approved by Lessor, shall be permitted to enter the Building for the purpose of cleaning. Lessee shall not cause any unnecessary labor by reason of its carelessness or indifference in the preservation of good order and cleanliness. Lessor shall in no way be responsible to Lessee for any loss of property in the Building, however occurring, or for any damage done to the furniture or other effects of Lessee by ~~the janitor or~~ any ~~other~~ agent or employee of Lessor or any other person. ~~Janitor service shall include ordinary dusting and cleaning by the janitor assigned to such work, but shall not include shampooing of carpets or rugs or moving of furniture or other special services.~~

4.  No animals, birds, motorcycles, or bicycles shall be allowed in the offices, halls, corridors, elevators or elsewhere in the Building.

5.  Lessor will furnish Lessee with two keys to the Premises entry door lock and two keys to the Building lobby entry door lock free of charge. ~~Lessor may make a reasonable charge for~~ Lessee shall promptly reimburse Lessor for the cost charged by Lessor's locksmith (such charge not to exceed commercially reasonable rates) for any additional Building lobby entry door keys requested by Lessee. ~~Lessee shall not have any keys made.~~ Lessee shall be permitted, at Lessee's expense, to make such additional keys as Lessee deems necessary, however Lessee shall not alter any lock or install a new or additional lock or any bolt on any door of the Premises without the prior written consent of Lessor. If Lessor shall give its consent, Lessee shall, in each case, furnish Lessor with a key for each such lock and shall insure such lock is also keyed to the Building master key. Lessee shall, upon the termination of its tenancy, deliver to Lessor all keys to doors in the Building.

6.  No safes, electronic equipment or other objects larger or heavier than the freight elevators of the building are limited to carry shall be brought into or installed on the premises without Lessor's prior written consent. The moving of such equipment shall occur only between such hours as may be designated by, and only upon previous notice to Lessor. No freight, furniture or bulky matter of any description shall be received into the Building or carried into the elevators except during hours, and in a manner, in writing first approved by Lessor. Lessor shall have the right to prescribe the weight, size and position of all safes and other heavy equipment brought into the Building. Safes or other heavy objects shall, if considered necessary by Lessor, stand on wood strips of such thickness as is necessary, in the sole discretion of Lessor, to properly distribute the weight. Lessor will not be responsible for loss of or damage done to the Building by moving or maintaining such safe and any damage done to the Building or other property shall be repaired at the expense of the Lessee.

7.  Lessee shall not use or keep in, on or about the Building any kerosene, gasoline or inflammable or combustible fluid or material or use any method of heating or air conditioning other than that supplied by Lessor. Lessee shall not use, keep, or permit to be used or kept, any foul or noxious gas or substance in or about the Building, or permit or suffer the Building to be occupied or used in a manner offensive or objectionable to Lessor by reason of any noise, odors or vibrations or interfere in any way with any other person having business on or about the Building.

8.  ~~Lessor reserves the right, between the hours of 6:00 p.m. and 7:00 a.m. and at all hours on Saturdays, Sundays and legal holidays, to exclude from the Building all persons who do not present a pass signed by Lessor. Lessor will furnish passes to persons for whom Lessee reasonably requests a pass in writing. Lessee shall be responsible for all persons for whom it requests passes and shall be liable to Lessor for all acts of such persons. Lessor shall in no case be liable for damages for any error with regard to the admission to or exclusion from the Building of any person.~~ In the case of invasion, mob, riot, public excitement, or other circumstances rendering such action advisable in Lessor's sole



discretion, Lessor reserves the right to prevent access to the Building during the continuance thereof by such actions as Lessor may deem appropriate, including closing and locking doors.

9. No curtains, draperies, blinds, shutters, shades, screens or other coverings, hanging or decorations shall be attached to, hung or placed in or used in connection with any window of the Building, other than Lessor's standard drapes and blinds, without the prior written consent of Lessor. In any event, with the prior written consent of Lessor, such items shall be installed in the interior of Lessor's standard window covering and shall in no way be visible from the exterior of the Building.

10. Lessee shall not obtain for use in the Premises ice, drinking water, food, beverage, towel or other similar services, or accept barbering or other personal services in the Premises, except for persons authorized by Lessor, and at hours and under regulations fixed by Lessor.

11. Lessee shall see that the doors of the Premises are closed and securely locked and must observe strict care and caution that all water faucets, water apparatus and utilities are shut off before Lessee or Lessee's employees leave the Premises, so as to prevent waste or damage. In the event Lessee's Premises comprises more than one suite within the Building, whether such suites are adjacent or otherwise, Lessee shall keep the door or doors to the public, or common area, corridors closed at all times except for ingress and egress.

12. The toilet room, urinals, washbowls and other apparatus shall not be used for any purpose other than that for which they were constructed and no foreign substance of any kind whatsoever shall be thrown therein.

13. Except with the prior written consent of Lessor, **which consent shall not be unreasonably withheld**, Lessee shall not sell, or permit the sale of newspapers, magazines, periodicals, theater tickets or any other goods or merchandise in, on or about the Premises, nor shall Lessee carry on, or permit or allow any employee or other person to carry on, the business of stenography, typewriting or any similar business in or from the Premises for the service or accommodation of others.

14. Lessee shall not install any radio or television antenna, loudspeaker or other device on the roof or exterior walls of the Building.

15. There shall not be used in any space, or in the public halls of the Building, any hand trucks except those equipped with rubber tires and side guards. No other vehicles of any kind shall be brought by Lessee, its employees, agents or invitees into the Building or kept in or about the Premises.

16. Lessee shall store all its trash and garbage within the Premises. No material shall be placed in the trash boxes or receptacles if such material is of such nature that it may not be disposed of in the ordinary and customary manner of removing and disposing of trash and garbage in the City in which the Building is located without being in violation of any law or ordinance governing such disposal. All garbage and refuse disposal shall be made only through entryways and elevators provided for such purposes and at such times as Lessor shall from time to time designate.

17. Canvassing, soliciting and peddling in the Building are prohibited.

18. These Rules and Regulations are in addition to, and shall not be construed in any way to modify, alter or amend in whole or in part, the terms and conditions of the Lease.

19. Lessor reserves the right to make such other rules and regulations as in its sole discretion may from time to time be needed for the safety, care or cleanliness of the Building or for the preservation of good order therein.

END OF EXHIBIT "E"

EXHIBIT "F"
RIGHT TO EARN AN OPTION TO EXTEND LEASE TERM
(19742 MacArthur Blvd., Suite 100)

Subject to the conditions hereinafter set forth and subject to Lessee not being in default hereunder, Lessee will have the right to earn an option to extend the term of this Lease for sixty months (60) months (the "Extended Term"). The Extended Term of sixty months (60) months will commence on June 1, 2014, and continue through and include May 31, 2019. The Extended Term covered by this option will be subject to all of the same terms, conditions and agreements stipulated herein, except as hereinafter expressly provided.

If on or before twelve (12) months prior to the expiration of the term, Lessee's obligations under the Lease have been performed in a manner that has not caused Lessee to remain in default beyond the cure period provided in the Lease for any notice of default delivered by Lessor, such performance will constitute the conditions necessary for Lessee to have earned an option to extend this Lease.

**ACCORDINGLY, TO EXERCISE THE OPTION FOR THE EXTENDED TERM, LESSEE MUST GIVE LESSOR WRITTEN NOTICE THEREOF NO LATER THAN MAY 31, 2013. IN THE EVENT LESSOR DOES NOT RECEIVE SAID NOTICE PRIOR TO SAID DATE OR IN THE EVENT LESSEE IS IN DEFAULT UNDER THE TERMS OF THIS LEASE AS OF THE DATE SAID NOTICE IS GIVEN, LESSEE'S OPTION TO EXTEND THE LEASE WILL BE AND BECOME NULL AND VOID.**

In the event of Lessee's default after it sends its extension notice and prior to the expiration of the term, Lessor will have the right to cancel the option to extend.

Monthly Rental during the Extended Term shall be paid according to the following schedule:

$10,857.00 per mo. for the period June 1, 2014 up to and including December 31, 2014.
$11,291.00 per mo. for the period January 1, 2015 up to and including December 31, 2015.
$11,743.00 per mo. for the period January 1, 2016 up to and including December 31, 2016.
$12,213.00 per mo. for the period January 1, 2017 up to and including December 31, 2017.
$12,701.00 per mo. for the period January 1, 2018 up to and including December 31, 2018.
$13,209.00 per mo. for the period January 1, 2019 up to and including May 31, 2019.

If Lessee exercises its option for the Extended Term, as provided above, the Lease will automatically be extended until May 31, 2019, and it will not be necessary for the parties to execute any further instrument in order to evidence said extension, unless requested by either party; provided, however, if Lessee fails to exercise the option in the time and manner hereinabove provided, this Lease will automatically terminate on May 31, 2014.

Notwithstanding the foregoing, in the event Lessor decides to demolish the Building as part of a redevelopment of Lessor's land, of which the Building is a part, Lessor has reserved the right, at any time after December 31, 2014, in the exercise of Lessor's sole and absolute discretion, to cancel and terminate the Lease, as provided in Paragraph 48(j) of the Lease.

"LESSOR":

BATES JOHNSON BUILDING, LTD.,
a California limited partnership

By: _Dale T. Falasco_

Dale T. Falasco, General Partner

"LESSEE":

CADUCEUS MEDICAL GROUP, INC.,
a California professional corporation

By: _Gregg De Nicola_

Gregg De Nicola, M.D., President

# Exhibit 2

## SEVENTH LEASE AMENDMENT
### (19742 MacArthur Blvd. - Suite 100 and Suite 105)

This Seventh Lease Amendment ("Amendment") is made and entered into this 30th day of July, 2024, by and between BATES JOHNSON BUILDING, LTD., a California limited partnership, as "Lessor" and CADUCEUS MEDICAL GROUP, INC., a California professional corporation, as "Lessee".

This Amendment is made with respect to the following facts and circumstances:

A.   Lessor and Lessee entered into a Lease Agreement dated February 11, 2009, a First Lease Amendment, dated October 15, 2013, a Second Lease Amendment, dated July 6, 2016, a Third Lease Amendment, dated March 6, 2019, a Fourth Lease Amendment, dated September 26, 2019, a Fifth Lease Amendment, dated August 31, 2020, and a Sixth Lease Amendment, dated November 27, 2023 (hereinafter collectively, the Lease), for a Lease term extending up to and including December 31, 2026.

B.   The Lease is for certain premises identified as Suites 100 and 105, located at 19742 MacArthur Blvd., Irvine, California. The parties acknowledge Suite 100 is 3,245 rentable square feet and Suite 105 is 895 rentable square feet.

C.   Lessor and Lessee acknowledge that Lessee maintains a security deposit with Lessor in the amount of ten thousand dollars ($10,000.00), under terms as provided in the Lease.

D.   Lessee has requested, and Lessor has consented, to make certain changes to the terms of the Lease to facilitate Lessee's payment of Accrued and Unpaid Rent owed to Lessor by Lessee.

To accomplish the foregoing, Lessor and Lessee agree the Lease shall be changed to reflect the following:

1. Lease Term. Lessor and Lessee agree the term of the Lease shall be extended by sixty months, to and including December 31, 2031.

2. Rental. Lessor and Lessee agree that Lessee's monthly Rental for the Premises is $15,358.00, and that said monthly Rental shall be increased January 1, 2025, and the first day of each January thereafter, according to the following schedule:

$15,818.00 per month for the period January 1, 2025, up to an including December 31, 2025.
$16,293.00 per month for the period January 1, 2026, up to an including December 31, 2026.
$16,782.00 per month for the period January 1, 2027, up to an including December 31, 2027.
$17,286.00 per month for the period January 1, 2028, up to an including December 31, 2028.
$17,804.00 per month for the period January 1, 2029, up to an including December 31, 2029.
$18,338.00 per month for the period January 1, 2030, up to an including December 31, 2030.
$18,888.00 per month for the period January 1, 2031, up to an including December 31, 2031.

Notwithstanding the foregoing, Lessor and Lessee agree:

a. For the four calendar months of August, September, October and November, 2024, on or before the first day of each calendar month, Lessee shall pay Lessor the sum of $7,679.00 as partial payment for that month's monthly Rental for the Premises, and shall accrue the sum of $7,679.00 each calendar month for later payment to Lessor by Lessee as provided below.

b. On or before the first day of December, 2024, Lessee shall pay Lessor the sum of $11,518.00 as partial payment of the December, 2024 monthly Rental for the Premises, and shall accrue the sum of $3,840.00 for later payment to Lessor by Lessee as provided below.

c. For the three calendar months of January, February and March, 2025, on or before the first day of each calendar month, Lessee shall pay Lessor the sum of $11,863.00 as partial payment for that month's monthly Rental for the Premises, and shall accrue the sum of $3,955.00 each calendar month for later payment to Lessor by Lessee as provided below.

5. Accrued and Unpaid Rent. Lessee acknowledges and affirms that as of the date of this Amendment there is past due and unpaid monthly Rental due Lessor by Lessee (Unpaid Rent) in the amount of eighty-six thousand one hundred forty dollars and fifty cents ($86,140.50). Lesse further acknowledges and affirms: i) Lessee has no offsets or claims against Lessee's obligation to pay to Lessor the Unpaid Rent in full; and

Lessor: _____     Page 1 of 2     Lessee: _____

ii) Lessor retains the right to assess a late charge and interest for each month Lessee's Rental due Lessor was not paid in full, as provided in Paragraph 3(a) of the Lease Agreement and all other provisions of the Lease Agreement and all Amendments thereto (collectively, the Lease) including, but not by way of limitation, Lessee's remedies under Paragraph 20 of the Lease Agreement regarding default and the provisions for interest on Lessee's past due obligations as set forth in Paragraph 25 of the Lease Agreement. In addition to Unpaid Rent, Lessee shall have accrued the sum of forty-six thousand four hundred twenty-one dollars ($46,421.00) in unpaid monthly Rental during the period August 1, 2024 to March 31, 2025 (Accrued Rental). The parties agree the total for the Accrued Rental and the Unpaid Rent (Accrued and Unpaid Rent) is one hundred thirty-two thousand five hundred sixty-one dollars and fifty cents ($132,561.50).

6. Payment of Accrued and Unpaid Rent. As a material consideration for Lessor to enter into this Amendment, in addition to monthly Rental and all other payments due Lessor by Lessee under the Lease, as payment of the Accrued and Unpaid Rent due Lessor by Lessee, beginning April 1, 2025, and on or before the first day of each of the thirty-four consecutive calendar months thereafter, Lessee shall pay to Lessor the sum of three thousand six hundred eighty-two dollars ($3,682.00). Lessee shall pay to Lessor the thirty-sixth payment of three thousand six hundred ninety-one dollars and fifty cents ($3,691.50) on or before March 1, 2028. Upon receipt by Lessor of all Accrued and Unpaid Rent payments as scheduled herein, Lessor shall waive all late fees and interest due under the Lease on the Accrued and Unpaid Rent.

7. Disclosure - Landlord and Lessor-Related Parties. Lessee acknowledges that James W. Johnson and Dale T. Falasco are California licensed real estate brokers and also trustees of their respective trusts, with those trusts being the general partners in Bates Johnson Building, Ltd., and that neither those individuals, their respective trusts, or Newport West Properties, a California-licensed real estate brokerage firm, (collectively, "Lessor-Related Parties") or Bates Johnson Building, Ltd., have ever i) represented, advised or acted in any agent or fiduciary capacity, or otherwise, on behalf of Lessee regarding the terms and conditions contained in the Lease or any amendments thereto (collectively, Lease Documents; ii) been involved in any way in Lessee's business transactions; or iii) made commitments to any party, expressed or implied, that are not reflected in the Lease Documents.

8. Corporate Authority. Lessee, and each individual executing this Amendment on behalf of Lessee, does hereby represent and warrant that Caduceus Medical Group, Inc., is a professional corporation, it is duly organized, validly existing, and in good standing under the laws of the State of California, and has all requisite power and authority to own, lease, hold and operate its properties and conducts its business in the State of California in the manner contemplated hereunder. Further, the individual executing this Amendment on behalf of Caduceus Medical Group, Inc., represents and warrants that he is duly authorized to execute and deliver this Amendment on behalf of Caduceus Medical Group, Inc., in accordance with a duly adopted resolution of the Board of Directors of Caduceus Medical Group, Inc., or in accordance with the Bylaws of Caduceus Medical Group, Inc., and that this Amendment is binding upon Caduceus Medical Group, Inc., in accordance with its terms.

All other terms and conditions of the Lease will remain in full force and effect. The Lease, as amended herein, represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. To the extent that there is a conflict between this Amendment and the Lease, the provisions of this Amendment will prevail. There are no unwritten oral agreements or disagreements between the parties. Lessee acknowledges that submission of this Amendment for review and signing by Lessee does not constitute an offer to amend said Lease by Lessor. Lessor's contractual obligations to Lessee under this Amendment will commence only upon signing of this Amendment as of the date first shown above.

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

LESSOR:
BATES JOHNSON BUILDING, LTD.,
a California limited partnership

By: _____
Dale T. Falasco, Trustee
Dale T. Falasco Living Trust, 3/23/95,
General Partner

LESSEE:
CADUCEUS MEDICAL GROUP, INC.,
a California professional corporation

By: _____
Gregg De Nicola, M.D., Chief Executive Officer

Page 2 of 2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Ramsaur Law Office, 950 Pacific Ave, Ste 1030, Tacoma, WA 98402

A true and correct copy of the foregoing document entitled (*specify*): **CREDITOR BATES JOHNSON BUILDING, LTD.'S LIMITED OPPOSITION TO DEBTOR'S MOTION FOR ORDER: AUTHORIZING SALE OF CERTAIN TANGIBLE AND INTANGIBLE ASSETS ("PURCHASED ASSETS"), USED IN CONNECTION WITH DEBTORS' MEDICAL PRACTICES; (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); (E) FOR WAIVER OF 14-DAY STAY; AND (F) AMENDING BID PROCEDURES**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 3/5/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Samuel Mushegh Boyamian   samuel@marguliesfaithlaw.com,
  Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com**
- **Christopher Crowell    ccrowell@hrhlaw.com**
- **Aaron E. De Leest    adeleest@marshackhays.com,
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com**
- **Jeremy Faith    Jeremy@MarguliesFaithlaw.com,
  Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com**
- **M Douglas Flahaut    df@echoparklegal.com**
- **Matthew Grimshaw    mgrimshaw@marshackhays.com,
  mgrimshaw@ecf.courtdrive.com;alinares@ecf.courtdrive.com**
- **Elana R. Levine    llevine@alderlaw.com**
- **Marc A Lieberman    marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com**
- **Queenie K Ng    queenie.k.ng@usdoj.gov**
- **Aram Ordubegian    ordubegian.aram@arentfox.com**
- **Jeremy H Rothstein    jrothstein@gblawllp.com, msingleman@gblawllp.com;mbowes@gblawllp.com**
- **United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov**
- **Ronghua Sophia Wang    sophia.wang@afslaw.com, yvonne.li@afslaw.com**
- **Pamela Kohlman Webster    pwebster@buchalter.com, smartin@buchalter.com**
- **Reilly D Wilkinson    rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com**
- **David Wood    dwood@marshackhays.com,
  dwood@ecf.courtdrive.com;lbuchananmh@ecf.courtdrive.com;splneda@ecf.courtdrive.com;alinares@ecf.courtdrive.com**

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 3/5/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Capata**
5000 Birch St
Newport Beach, CA 92660

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**Howard B Grobstein**
Grobstein Teeple LLP
6300 Canoga Avenue, Suite 1500W
Woodland Hills, CA 91367

**Grobstein Teeple LLP**
Grobstein Teeple LLP
6300 Canoga Avenue Suite 1500W
Woodland Hills, CA 91367

**Marshack Hays Wood LLP**
870 Roosevelt
Irvine, CA 92620

**Stanley Otake**
225 North Deerwood Street
Orange, CA 92869

**Stretto**
410 Exchange
Suite 100
Irvine, CA 92602

**Stretto Inc**
410 Exchange Ste 100
Irvine, CA 92602

**Lucy L. Thomson**
1455 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

THE REQUIREMENT OF LBR 5005-2(d) TO PROVIDE JUDGES COPIES IS SUSPENDED AT THIS TIME.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 3/5/2025 | Kianna Ahlstrom | *Kianna Ahlstrom* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**