Christopher D. Crowell (SBN 253103)
HEMAR, ROUSSO & HEALD, LLP
15910 Ventura Boulevard, 12th Floor
Encino, California 91436
Telephone: (818) 501-3800
Facsimile: (818) 501-2985
E-mail: ccrowell@hrhlaw.com

Attorneys for Secured Creditor
BMO BANK NATIONAL ASSOCIATION

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation,<br><br>Debtor.<br><br>In re<br><br>CADUCEUS MEDICAL SERVICES, LLC,<br><br>Debtor.<br><br>[x] Affects Both Debtors. | Lead Case No. 8:24-bk-11945-TA<br><br>Chapter 11<br><br>Jointly Administered with<br>Case No. 8:24-bk-11946-TA<br><br>BMO BANK NATIONAL ASSOCIATION'S LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING SALE OF CERTAIN TANGIBLE AND INTANGIBLE ASSETS ("PURCHASED ASSETS") USED IN CONNECTION WITH DEBTORS' MEDICAL PRACTICES AND GRANTING RELATED RELIEF; SUPPORTING DECLARATIONS OF KANDACE BROWN AND CHRISTOPHER D. CROWELL<br><br>Hearing<br>Date:   March 18, 2025<br>Time:   11:00 a.m.<br>Place:  Courtroom 5B<br>        411 West Fourth Street<br>        Santa Ana, CA 92701 |

Secured creditor BMO Bank National Association formerly known as BMO Harris Bank National Association ("Bank") submits this Limited Opposition to Debtors' Motion for Order: Authorizing Sale of Certain Tangible and Intangible Assets ("Purchased Assets") Used in Connection with Debtors' Medical Practices (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; (D) for Determination of Good Faith Purchaser Under 11 U.S.C. § 363(m); (E) for Waiver of 14-Day Stay; and (F) Amending Bid Procedures filed February 26, 2025 (Dkt. 248) ("Sale Motion"). The Bank, which holds the senior lien on the Purchased Assets, generally supports Debtors' sale efforts but raises the following issues.

Assets to Be Sold

Debtors should clarify whether the Purchased Assets includes accounts receivable ("A/R") as there are inconsistent statements in the moving papers concerning that issue. Specifically, the Asset Purchase Agreement with the stalking horse bidder Regal Medical Group, Inc. ("Regal"), provides for the purchase of certain A/R but the Sale Motion at one point excludes A/R as does the blank form of Asset Purchase Agreement filed with the Sale Motion.

The Sale Motion first states that the Purchased Assets exclude the "specifically Excluded Assets listed in Exhibit A to the proposed APA" and further states that

> the Purchased Assets shall not include assets of the Debtors which that [sic] are not primarily used in connection with the operation of the Clinic and those assets identified in Exhibit A to the proposed APA, which include but are not limited to (1) the Debtors' cash, including its accounts receivable; and (2) the Debtors' anticipated refundable employee retention tax credit ('ERTC') (collectively, the 'Excluded Assets').

[Sale Motion at 7:26-28 and 8:22-27.]

The Sale Motion then states:

**Assets to be sold:** The Debtors shall offer for sale the Purchased Assets, provided that [sic] the Debtors determine that the aggregate consideration offered by any bid, or combination of bids, for the Purchased Assets, satisfies the requirements set forth herein, potential bidders may bid on all or any number of combination of the Purchased Assets, however, expressly excluded is the Debtors' cash and their interest in the ERTC.

[Sale Motion at 12:17-21.]

Exhibit A to the Proposed Stalking Horse APA, which is attached as Exhibit 4 to the Grobstein Declaration, states that the Excluded Assets consists of:

1. All accounts receivable owing or to be owed to CMG and arising from medical or healthcare products or services furnished or performed by CMB or any employee, agent, or contractor of CMG prior to the Closing Date, including, without limitation, all charges, payments, copayments, deductibles, and other obligations for the payment of money.

2. Any and all accounts receivable owing or to be owed to Seller and arising from Seller's claim on any tax return or other tax-related document of a 'employee retention credit' within the meaning of Section 2301 of the Coronavirus Aid, Relief and Economic Security Act of 2020 (Pub. L. 116-136 (2020)), as enacted March 27, 2020 and amended from time to time.

3. The actual cash balances of Seller, including, without limitation, all deposits in transit but not yet credited, as of the Closing Date.

[Dkt. 248, PDF p. 143 of 188.]

1  The Stalking Horse APA with Regal, which is attached as Exhibit 5 to the Grobstein

2  Declaration ("Regal APA"), states that Purchased Assets includes:

> all accounts receivable owing or to be owed to CMG and arising from medical or healthcare products or services furnished or performed by CMG or any employee, agent, or contractor of CMG prior to the Closing Date, including, without limitation, all charges, payments, copayments, deductibles, and other obligations for the payment of money, excluding any accounts receivable owing, to be owing or to be owed to CMG and arising from medical healthcare products or services furnished to Persons enrolled in Governmental Healthcare Programs.

[Dkt. 248, PDF p. 149 of 188.]

## Purchase Price

There is also an inconsistency between the Sale Motion and the Regal APA regarding the Purchase Price insofar as cure costs are concerned.

The Sale Motion defines the Purchase Price as $1,500,000 "plus the cure costs as described in Section 6" of the asset purchase agreement. [Sale Motion at 12:10-12.] The Sale Motion then states:

> The consideration proposed by a Bid may include cash or other consideration acceptable to the Debtors in an amount of no less than the sum of (i) the Purchase Price plus (ii) $50,000; provided that the Bid must include sufficient cash to pay all contracts the Bid seeks to assume and assign through the sale process.

[Sale Motion at 15:20-24.] However, Section 6 of the Regal APA states in relevant part:

> On or before the Closing Date, Buyer shall pay directly to the applicable counter-party all cure costs associated with an Assigned Contract that is assumed and assigned pursuant to this Agreement, up to a maximum total of **One Hundred Fifty Thousand Dollars ($150,000)**, and Seller shall pay all cure costs associated with an Assigned Contract that is assumed and assigned pursuant to this Agreement in the excess of such maximum amount to be paid by Buyer.

[Dkt. 248, PDF p. 151 of 188 (emphasis in original).] Limiting Regal's liability for cure costs to $150,000, with Debtors to pay all cure costs associated with an Assigned Contract in excess of this amount, creates the potential for an uneven playing field between Regal and any competing bidders. If Debtors intend to extend this concession to any competing bidders, Debtor should so state. The Court should also require Debtors to provide evidence that it has the financial wherewithal to pay cure costs exceeding $150,000. Debtors should also confirm that no such cure costs will be paid from cash collateral in which the Bank has an interest (including without limitation any proceeds from the sale of the Purchased Assets) unless and until the Bank's secured claims are paid in full.

### Expense Reimbursement/Breakup Fee

The Sale Motion asks the Court to approve payment to Regal of an expense reimbursement of up to $50,000 and a $100,000 breakup fee if Regal is not the successful bidder at the auction. [Sale Motion at 27:20-28:10.]

The Regal APA states that it may be terminated at any time prior to the Closing Date

> [b]y Buyer in the event that the Bankruptcy Court were not to enter an order which (i) approves for the benefit of Buyer the right to receive reimbursement of an amount equal to the reasonable and documented out-of-pocket costs and expenses (including fees and expenses of counsel) incurred by Buyer in connection with the negotiation, diligence, execution, performance and enforcement of this Agreement, which amount shall not exceed Fifty Thousand Dollars ($50,000.00) (the 'Expense Reimbursement') [and] (ii) approves a break-up fee in an amount equal [sic] One Hundred Thousand Dollars ($100,000.00) (the 'Breakup Fee') provided that the Expense Reimbursement and Breakup Fee shall only be payable from proceeds of a competing transaction authorized and approved by order of the Bankruptcy Court at the time of closing thereon[.]

[Dkt. 248, PDF p. 163 of 188.]

Courts are split on the proper standard to use in determining whether to allow breakup fees. Compare In re O'Brien Environmental Energy, Inc., 181 F.3d 527, 533 (3rd Cir. 1999) (under 11 U.S.C. § 503, breakup fee may be awarded only if stalking horse bidder's "participation in the bidding process was necessary to accord the estate an actual benefit") with In re Asarco, L.L.C., 650 F.3d 593, 601 (5th Cir. 2011) (applying "business judgment" standard to evaluate appropriateness of breakup fee). There is no evidence in the record justifying the Expense Reimbursement or the Breakup Fee under either standard. While the Bank (as noted) is generally supportive of Debtors' sale efforts, the Breakup Fee seems excessive in the context of this case and the Bank reserves the right to offer further opposition to the Breakup Fee at the hearing on the Sale Motion. The Bank also requests that Debtor and Regal confirm that neither the Expense Reimbursement nor the Breakup Fee will be paid from any sale proceeds unless the Bank is first paid the full amounts owed on its secured claims.

### Payments to Seller and to Bank

The Regal APA states that the "Purchase Price shall be delivered by Buyer to Seller (or its designee) on the Closing Date by wire transfer to such account(s) as may be designated by Seller." [Dkt. 248, PDF p. 151 of 188.] The Sale Motion requests an order stating that Debtors are "authorized to pay, pursuant to demands submitted to escrow, all outstanding property taxes, liens, homeowners'

association demands, and encumbrances to the extent stated herein." [Sale Motion at 14:9-12.] Any order approving the sale should (1) instead require the seller to pay the Purchase Price into an escrow account, with the Bank's liens to attach to the Purchase Price with the same priority, validity, and extent as the Bank's liens attached to the Purchased Assets; and (2) direct, rather than merely authorize, Debtors to pay the Bank's secured claims in full directly from escrow.

Dated: March 10, 2025

HEMAR, ROUSSO & HEALD, LLP

By: /s/ Christopher D. Crowell
Christopher D. Crowell
Attorneys for Secured Creditor
BMO BANK NATIONAL ASSOCIATION

## DECLARATION OF KANDACE BROWN

I, Kandace Brown, declare:

1. I am employed by BMO Bank National Association formerly known as BMO Harris Bank National Association ("Bank") as a Relationship Manager. I am responsible for the day-to-day administration of the Bank's loans at issue in this bankruptcy case. I have personal knowledge of the matters stated in this declaration or I have gained such knowledge from my review of the Bank's business records, which are made at or about the time of the events recorded and are maintained in the ordinary course of the Bank's business. This declaration incorporates by reference, as if set forth in full herein, the Bank's Proof of Claim filed in this case on August 28, 2024, and docketed on the claims docket as Claim 5 ("Proof of Claim").

2. The Bank is owed money under four loans at issue in this case, which the Proof of Claim refers to as the 2002 Loan, the 2016 Loan, the 2017 Loan, and the 2018 Loan respectively.

3. Payoff amounts for the loans, good through March 31, 2025, but excluding legal fees and costs, are as follows:

| | |
|---|---|
| 2002 Loan Principal | $90,000.00 |
| 2002 Loan Interest | $17,790.62 |
| 2016 Loan Principal | $528,607.63 |
| 2016 Loan Interest | $102,034.24 |
| 2017 Loan Principal | $256,998.90 |
| 2017 Loan Interest | $22,354.68 |
| 2017 Loan Late Fees | $290.90 |
| 2018 Loan Principal | $163,789.01 |
| 2018 Loan Interest | $16,033.44 |
| 2018 Loan Late Fees | $305.43 |
| TOTAL | $1,198,204.85 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on March 10, 2025, at Chicago, Illinois.

*Kandace Brown*
Kandace Brown

HEMAR, ROUSSO & HEALD, LLP
15910 VENTURA BOULEVARD, 12TH FLOOR
ENCINO, CA  91436
(818) 501-3800

2

## DECLARATION OF CHRISTOPHER D. CROWELL

I, Christopher D. Crowell, declare:

1. I am an attorney licensed to practice law before this Court, I am a Partner at Hemar, Rousso & Heald, LLP ("HRH"), attorneys of record in these bankruptcy cases for secured creditor BMO Bank National Association formerly known as BMO Harris Bank National Association ("Bank"), and I am the HRH attorney responsible for representing the Bank in these bankruptcy cases. I have personal knowledge of the matters stated in this declaration or I have gained such knowledge from my review of HRH's billing records relating to HRH's representation of the Bank in these bankruptcy cases and in the related civil action pending before the Orange County Superior Court as Case Number 30-2023-01320664-CU-BC-NJC ("Civil Action").

2. HRH requires its attorneys to create billing records at or near the time they render the corresponding services in the regular course of HRH's business. HRH attorneys create billing records (which include the date services are rendered, the attorney rendering the services, a narrative describing the services, the time spent rendering the services, and the value of the services at the attorney's hourly rate) using HRH's billing software, which is specifically designed for this purpose. The billing records are then reviewed before the corresponding invoice is generated. HRH's accounting staff also input data into HRH's electronic records reflecting any payment received on any particular file, in the regular course of HRH's business at or near the time the payment is received. Records of payments received are thereafter checked and reconciled for accuracy and are reflected in the next succeeding invoice. I am informed and believe that these practices were followed with respect to the billing for this matter.

3. HRH's billing records reflect that as of March 7, 2025, HRH had incurred $53,196.35 in attorney fees and costs representing the Bank in these bankruptcy cases and the Civil Action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on March 10, 2025, at Los Angeles, California.

            /s/ Christopher D. Crowell
            Christopher D. Crowell

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15910 Ventura Boulevard, 12th Floor, Encino, CA 91436.

A true and correct copy of the foregoing document entitled (*specify*): BMO BANK NATIONAL ASSOCIATION'S LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING SALE OF CERTAIN TANGIBLE AND INTANGIBLE ASSETS ("PURCHASED ASSETS") USED IN CONNECTION WITH DEBTORS' MEDICAL PRACTICES AND GRANTING RELATED RELIEF; SUPPORTING DECLARATIONS OF KANDACE BROWN AND C. CROWELL will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 03/11/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel David Wood (dwood@marshackhays.com), Aaron DeLeest (adeleest@marshackhays.com),
Matthew Grimshaw (mgrimshaw@marshackhays.com)
United States Trustee (ustpregion16.sa.ecf@usdoj.gov)

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 03/11/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Theodor Albert, U.S. Bankruptcy Court, 411 West Fourth Street, Suite 5085, Santa Ana, CA 92701.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 03/11/2025 | Sanaz Adnani | /s/ Sanaz Adnani |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                           F 9013-3.1.PROOF.SERVICE