MATTHEW W. GRIMSHAW, #210424
grimshaw@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
AARON E. DE LEEST, #216832
shasselberger@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for Debtors,
CADUCEUS PHYSICIANS MEDICAL GROUP,
a Professional Medical Corporation, dba
CADUCEUS MEDICAL GROUP and
CADUCEUS MEDICAL SERVICES, LLC

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP,<br><br>Debtor.<br><br>☒   ALL DEBTORS<br><br>☐   Caduceus Physicians Medical Group, dba Caduceus Medical Group, ONLY<br><br>☐   Caduceus Medical Services, LLC, ONLY | Case No. 8:24-bk-11945-SC<br><br>Chapter 11<br><br>(Jointly Administered with 8:24-bk-11946-SC)<br><br>DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION |

/ / /

/ / /

i

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. DEFINITIONS; RULES OF INTERPRETATION; AND COMPUTATION OF TIME .............. 2

    A.    Definitions ........................................................................................... 2

    B.    Rules of Interpretation ........................................................................ 2

    C.    Time Periods ....................................................................................... 3

III. EFFECTIVE DATE CONDITIONS ................................................................................... 3

    A.    Conditions to the Effectiveness of the Plan ....................................... 3

    B.    Effect of Failure of Conditions to the Effectiveness of the Plan ................................. 4

    C.    Effect of Entry of Order Denying Confirmation of the Plan ...................................... 5

IV. CLASSIFICATION OF CLAIMS AND INTERESTS.......................................................... 5

    A.    General Overview................................................................................ 5

    B.    Unclassified Claims ............................................................................ 5

    C.    Classified Claims and Interests........................................................... 5

V. ALLOWANCE AND TREATMENT OF UNCLASSIFIED CLAIMS....................................... 6

    A.    Administrative Expense Claims ......................................................... 6

        1.    U.S. Trustee Fees ...................................................................... 6

        2.    Professional Fee Claims ........................................................... 6

        3.    Other Administrative Expense Claims ...................................... 9

    B.    Priority Tax Claims............................................................................. 10

VI. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............................................ 11

    A.    Class 1 (General Unsecured Claims).................................................. 11

    B.    Class 2 (Interests of CPMG)............................................................... 12

    C.    Class 3 (Interests of CMG)................................................................. 12

VII. CONFIRMABILITY OF PLAN AND CRAMDOWN ....................................................... 13

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................................. 13

    A.    Rejection of Executory Contracts and Unexpired Leases ......................................... 13

i

# TABLE OF CONTENTS
### (Continued)

Page

B.    Claims Based on Rejection of Executory Contracts and Unexpired Leases .............13

C.    Contracts and Leases Entered Into After the Petition Date ......................................13

IX. DISPUTED CLAIMS AND INTERESTS; SETOFF AND RECOUPMENT..........................14

A.    Objections to Claims...............................................................................................14

B.    No Distributions with Respect to Disputed Claims..................................................14

C.    Extension of the Claims Objection Deadline.............................................................14

D.    Authority to Compromise Disputed Claims ............................................................14

E.    Setoff and Recoupment............................................................................................14

X. MEANS OF IMPLEMENTATION...............................................................................................15

A.    From the Confirmation Date to the Effective Date ...................................................15

B.    Sale of Estates Property ...........................................................................................15

C.    Preservation of Causes of Action .............................................................................15

D.    Management of the Debtors......................................................................................16

E.    The Liquidating Trust ..............................................................................................16

      1.    Establishment of the Liquidating Trust .........................................................16

      2.    Appointment of the Liquidating Trustee .......................................................16

      3.    Beneficiaries of the Liquidating Trust...........................................................17

      4.    Transfer of Property to the Liquidating Trust.................................................17

      5.    Liquidating Trust's Distribution of Cash.......................................................18

      6.    Powers and Duties of the Liquidating Trustee ...............................................18

      7.    Liquidating Trustee's Employment of Professionals; Compensation ..........20

      8.    Compliance with Tax Requirements ..............................................................20

      9.    No Recourse Against the Liquidating Trustee................................................21

      10.   Termination and Dissolution of the Liquidating Trust ...................................22

F.    Undeliverable and Unclaimed Distributions .........................................................22

G.    Dissolution of the Debtors........................................................................................22

# TABLE OF CONTENTS
### (Continued)

**Page**

1. Cancellation of Interests ..................................................22

2. Termination of Services of the Debtors' Director and CRO ........................22

3. Dissolution of the Debtors ..................................................23

XI. EFFECTS OF CONFIRMATION ..................................................23

    A. Binding Effect of the Plan ..................................................23

    B. Vesting of Assets ..................................................23

    C. No Discharge ..................................................24

    D. Continuation of Automatic Stay; Creditor Action Restrained ........................24

    E. No Liability for Solicitation or Participation ..................................................25

XII. RETENTION OF JURISDICTION ..................................................25

XIII. MISCELLANEOUS PROVISIONS ..................................................27

    A. Exculpation ..................................................27

    B. Exemption from Transfer Taxes ..................................................27

    C. Expedited Tax Determination ..................................................28

    D. Securities Laws ..................................................28

        1. Exemption from Registration Issues ..................................................28

        2. Exchange Act Reporting Obligations and Registration under Investment Company Act ..................................................28

    E. Payment of Statutory Fees ..................................................29

    F. Amendment, Modification or Withdrawal of the Plan ........................29

    G. Governing Law ..................................................29

    H. Waiver of FRBP 7062 ..................................................29

    I. Exhibits and Schedules ..................................................29

    J. Conflict ..................................................30

    K. Successors and Assigns ..................................................30

    L. Saturday, Sunday or Legal Holiday ..................................................30

## <u>TABLE OF CONTENTS</u>
### (Continued)

**Page**

M.    Post-Effective Date Effect of Evidences of Claims or Interests ................................30

N.    Severability of Plan Provisions ............................................................................30

O.    No Admissions or Waiver of Objections ...............................................................31

P.    Survival of Settlements .......................................................................................31

Q.    Post-Confirmation Status Reports ........................................................................31

R.    Effect of Post-Confirmation Conversion to Chapter 7 ...........................................31

S.    Final Decree .......................................................................................................32

# I.

## **INTRODUCTION**

On August 1, 2024 ("Petition Date"), Caduceus Physicians Medical Group, a Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS"), each filed a voluntary Chapter 11 petitions for relief under the Bankruptcy Code.

This document is the Chapter 11 Plan (the "Plan") proposed by CPMG and CMS. The two plan proponents, whose bankruptcy cases are being jointly administered, are collectively referred to herein as "Debtors."

This document is the Chapter 11 Plan ("Plan") proposed by the Debtors. This Plan proposes to transfer all assets of the Debtors' bankruptcy estates ("Estates") into a liquidating trust ("Liquidating Trust"), which will be governed by the terms of the "Liquidating Trust Agreement" attached as Exhibit 1 hereto. All creditors who hold Allowed General Unsecured Claims against the Estates will become beneficiaries of the Liquidating Trust (collectively the "Beneficiaries"). A "Liquidating Trustee" will hold all of the Estates' assets, may pursue claims and causes of action the Estates have or may have against third parties, and, after paying costs of administration, will distribute all of the Liquidating Trust's assets to the Beneficiaries.

If the Plan is approved, the Liquidating Trustee will be Howard B. Grobstein, Debtors' current Chief Restructuring Officer. It is anticipated that the Liquidating Trustee will retain Debtors' counsel, Marshack Hays Wood, LLP, as his counsel to assist in fulfilling his duties as the Liquidating Trustee, as well as other professionals if it is appropriate to do so. The Debtors believe Mr. Grobstein's retention of Marshack Hays Wood, LLP will promote the efficient administration of the remaining assets of the Estates for the benefit of creditors.

***All Holders of Claims and Interests are encouraged to read this Plan and the accompanying Disclosure Statement in their entirety before voting to accept or reject this Plan***.

If confirmed, this Plan will bind all persons it provides for, whether or not they accept this Plan, object to confirmation, file a proof of claim or interest, or have their claims or interests allowed.

1 ***Your rights may be affected.  Read these papers carefully and discuss them with your***

2 ***attorney.  If you do not have an attorney, you may wish to consult one.***

3                                                    **II.**

4                          **DEFINITIONS; RULES OF INTERPRETATION;**

5                             **AND COMPUTATION OF TIME**

6 **A.**      **Definitions**

7          In this document, capitalized terms have the meanings ascribed to them in the foregoing

8 Introduction and in Exhibit A.

9 **B.**      **Rules of Interpretation**

10          For purposes of this Plan:

11          1.      the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

12          2.      in the appropriate context, each term, whether stated in the singular or the plural,

13 shall include both the singular and the plural, and pronouns stated in the masculine, feminine or

14 neuter gender shall include the masculine, feminine and the neuter gender;

15          3.      any reference herein to the word "including" or any word of similar import shall be

16 read to mean "including without limitation";

17          4.      unless otherwise specified, all references to "Sections" or "Exhibits" are references

18 to the Plan's sections or exhibits;

19          5.      unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the

20 Plan in its entirety rather than a particular portion of the Plan;

21          6.      captions and headings to Sections are inserted for the convenience of reference only

22 and are not intended to be a part of or to affect the interpretation of the Plan;

23          7.      any reference herein to a contract, agreement, lease, plan, policy, document or

24 instrument being in a particular form or on particular terms and conditions means that the same

25 shall be substantially in that form or substantially on those terms and conditions;

26          8.      any reference herein to a contract, agreement, lease, plan, policy, document or

27 instrument or schedule or exhibit thereto, whether or not filed, shall mean the same as amended,

28

1  restated, modified or supplemented from time to time in accordance with the terms hereof or

2  thereof;

3      9.    any reference to an Entity as a Holder of a Claim or Interest includes that Entity's

4  successors and permitted assigns;

5      10.    unless otherwise specified, anything required to be done by the Debtors or the

6  Liquidating Trustee, as applicable, on the Effective Date may be done on the Effective Date or as

7  soon as reasonably practicable thereafter; and

8      11.    any term that is used but not defined herein has the meaning attributed to that term,

9  if any, in the Bankruptcy Code or the FRBP.

10  **C.**    **Time Periods**

11      In computing any period of time prescribed or allowed by the Plan, unless otherwise

12  expressly provided, the provisions of FRBP 9006(a) shall apply.  If any payment, distribution, act

13  or deadline under the Plan is required to be made or performed or occurs on a day that is not a

14  Business Day, then the making of such payment or distribution, the performance of such act or the

15  occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall

16  be deemed to have been completed or to have occurred as of the required date.

17                                                  **III.**

18                              **EFFECTIVE DATE CONDITIONS**

19  **A.**    **Conditions to the Effectiveness of the Plan**

20      The following events must occur and be satisfied on or before the Effective Date for the

21  Plan to be effective on the Effective Date:

22      1.    Entry on the Docket of a Confirmation Order.  The Conformation Order shall

23  include provisions which, among other things:

24          (a)    confirms and approves the Plan;

25          (b)    authorizes and approves the Liquidating Trust Agreement and all other

26  documents, instruments and agreements to be executed and delivered in connection with the

27  confirmation and effectiveness of the Plan;

28          (c)    appoints or approves the appointment of the Liquidating Trustee; and

                                                  3

(d)     orders that the transfers contemplated under the Plan (i) are or will be legal, valid and effective transfers of property for fair and reasonable consideration, (ii) vest or will vest in the transferee good title to such property free and clear of all Liens, Claims and other interests of any kind and in accordance with section 1123(a)(5) and (b)(5) of the Bankruptcy Code, except those expressly provided for under the Plan, (iii) do not and will not constitute fraudulent conveyances or transfers or unlawful distributions under any applicable law, and (iv) do not and will not, except as expressly contemplated by the Liquidating Trust Agreement, subject the Liquidating Trust, the Liquidating Trustee, the Estates, the Debtors, or any of their current or future officers, directors, employees, owners, partners, beneficiaries, members, professionals, agents or representatives or any of the property transferred to any liability by reason of such transfer under any applicable law, including any laws relating to fiduciary duty or successor or transferee liability.

2.     Any stay of enforcement of the Confirmation Order has expired or is otherwise no longer in effect.

3.     Execution and delivery of the Liquidating Trust Agreement and all documents, instruments and agreements to be executed in connection therewith.

The second and third conditions set forth above may be waived in whole or in part by the Debtors.  The first condition regarding entry of the Conformation Order and provisions required to be included therein may not be waived.

**B.**     **<u>Effect of Failure of Conditions to the Effectiveness of the Plan</u>**

If the Effective Date does not occur, upon notification submitted by the Debtors to the Court: (a) the Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtors, the Estates, and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' and the Estates' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors, the Estates, or any other person, or to prejudice in any manner the rights of the Debtors, the Estates, or any person in any further proceedings involving the Debtors or the Estates.

**C.      Effect of Entry of Order Denying Confirmation of the Plan**

If an order denying confirmation of the Plan is entered, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtors and the Estates; (b) prejudice in any manner the rights of the Holder of any Claim against, or Interest in, the Debtors and the Estates; (c) prejudice in any manner any right, remedy or claim of the Debtors or the Estates, or (d) be deemed an admission against interest by the Debtors or the Estates.

**IV.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**A.      General Overview**

As required by the Bankruptcy Code, the Plan classifies Claims and Interests according to their right to priority of payment as provided in the Bankruptcy Code.  Except for certain types of Claims that do not get put into classes, the Plan classifies Claims for all purposes, including voting, confirmation and distributions under the Plan.  A Claim is classified in a particular Class only to the extent that it falls within the class description.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to a specific treatment provided for them in the Bankruptcy Code.  Unclassified Claims consist of (1) Administrative Expense Claims and (2) Priority Tax Claims.

**C.      Classified Claims and Interests**

All other Claims and Interests are separated into the following voting classes:

• Class 1 consists of General Unsecured Claims.  This Class is Impaired.  Each Holder of an Allowed Class 1 Claim, and each Holder of an Allowed Class 1 Claim that has been temporarily allowed for voting purposes by order under FRBP 3018(a), is entitled to vote to accept or reject the Plan.

- Class 2 consists of Interests of CPMG.  This Class is Impaired.  The Holder of an Allowed Class 2 Interest is not entitled to vote to accept or reject the Plan because Class 2is deemed to have voted to reject the Plan since Class 2 will not receive or retain any property under the Plan.

- Class 3 consists of Interests of CMS.  This Class is Impaired.  The Holder of an Allowed Class 3 Interest is not entitled to vote to accept or reject the Plan because Class 3 is deemed to have voted to reject the Plan since Class 3 will not receive or retain any property under the Plan.

**V.**

**ALLOWANCE AND TREATMENT OF UNCLASSIFIED CLAIMS**

**A.    Administrative Expense Claims**

    **1.    U.S. Trustee Fees**

*Allowance*:  U.S. Trustee Fees shall be allowed in accordance with 28 U.S.C. § 1930.

*Treatment*:  All fees due and payable pursuant to 28 U.S.C. § 1930 prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable.

    **2.    Professional Fee Claims**

*Identity of Professional Fee Claims*:  Entities known or believed by the Debtors to hold or otherwise assert Professional Fee Claims, and estimates of the fees that costs that will be owed to them as of the Effective Date, are as follows:

/ / /

/ / /

| Description | Estimated Amount Owed[1] | Treatment |
|---|---|---|
| Clerk's Office Fees | $0.00[2] | Paid in full on or before the Effective Date. |
| Office of the United States Trustee Quarterly Fees | $0.00 | Paid in full. |
| Ordinary-Course Administrative Claims | $0.00 | Unless the Debtors object to the ordinary-course administrative claim, the claim will be allowed in accordance with the terms and conditions of the particular transaction giving rise to the ordinary-course administrative claim, and the person holding the ordinary-course administrative claim need not file any request for payment of its claim and will be paid in the ordinary course of business. |
| Non-Ordinary Course Administrative Claim | $0.00 | To the extent that any non-ordinary course administrative claims are allowed, they will be paid in full by the Debtors on the later of the Effective Date or immediately after the Court enters a final order allowing the non-ordinary course administrative claim. |
| Administrative Tax Claim | $0.00 | Unless the Debtors object to an administrative tax claim or otherwise disputes the administrative tax claim in accordance with applicable law, the claim will be allowed in accordance with the terms and conditions of the particular transaction that gave rise to the administrative tax claim, and the person holding the administrative tax claim need not file any request for payment of its claim. Any allowed administrative tax claim will be paid in the ordinary course of business, currently and timely as they are incurred and billed, unless the Debtors object to or otherwise disputes such administrative tax claim in accordance with applicable law. In an event of default, and to the extent such administrative tax claim is also secured, the payment thereof will include all costs, fees, charges and interest, if applicable, as required under 11 |

[1] The estimate of professional fee claims in this chart is only an estimate and may change based upon the legal or financial services required during this Case and upon what the Court ultimately awards to professionals.  The Estate remains liable for all allowed professional fees and costs regardless of the estimates.  These amounts are in addition to what the professionals have been paid on an interim basis.

[2] The Debtors have not commenced any adversary proceedings or filed any motions for which any fee would be due at the conclusion of the case.

| | | U.S.C. §§ 506(b) and 511, and applicable non-bankruptcy law. |
|---|---|---|
| Marshack Hays Wood LLP ("MHW") | $275,000 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. MHW anticipates and understands that it will be paid through the ERC funds. |
| Grobstein Teeple LLP ("CRO") | $350,000 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. CRO anticipates and understands that it will be paid through the ERC funds. |
| ArentFox Schiff LLP ("ArentFox") | $125,000 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. ArentFox anticipates and understands that it will be paid through the ERC funds. |
| Stretto, Inc. Claims Noticing Agent | $75,000 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. Stretto anticipates and understands that it will be paid through the ERC funds. |
| CAPATA Accountant for Debtors | $50,000 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. Accountant anticipates and understands that it will be paid through the ERC funds. |
| Stanley Otake Patient Care Ombudsman ("PCO") | $7,455 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. PCO anticipates and understands that it will be paid through the ERC funds. |
| Lucy L. Thomson Consumer Privacy Ombudsman ("CPO") | $24,900 estimated as of the Effective Date | Paid on the later of (i) the Effective Date or (ii) upon entry of an order approving the professional fee claim, except to the extent that the holder of such claim agrees to other terms. CPO anticipates and understands that it will be paid through the ERC funds. |
| TOTAL | $907,355 | |

*Allowance*:  A Professional Fee Claim will be Allowed only if:  (1) on or before the Administrative Expense Claim Bar Date (i.e., 30 days after the Effective Date), the Holder of the Claim Files with the Court a final fee application or a motion requesting allowance of the Claim; and (2) the Court subsequently enters an order allowing the Claim.

Notice of the hearing on the fee application or motion shall be given in accordance with Local Rule 2016-1(c), on not less than 21 days' notice.  The Liquidating Trustee or any other party in interest may File an objection to the application or motion within the time provided by the Local Rules, or within any other period that the Court establishes.

*Treatment*:  Unless otherwise agreed by the Holder of an Allowed Professional Fee Claim, an Allowed Professional Fee Claim shall be paid in the full Allowed amount of such Claim in Cash on or before 10 Business Days after the date on which the Court enters an order determining such Claim to be an Allowed Professional Fee Claim.

If the Court enters an order allowing a Professional Fee Claim, and an appeal of the order is Filed by the Holder of the Claim or a party that objected to allowance of the Claim, the Liquidating Trustee shall pay the Allowed amount of the Claim on or before 10 Business Days after the date on which the Court enters the order allowing the Claim.  Until the order becomes a Final Order, such payment shall be deemed an interim payment subject to disgorgement or supplement in the event that an appeal is filed and the Professional Fee Claim ultimately is Allowed in a different amount, or Disallowed, by a Final Order of the Court.

**3.    Other Administrative Expense Claims**

*Identity of Other Administrative Expense Claims*:  Entities known or believed by the Debtors to hold or otherwise assert Other Administrative Expense Claims are as follows:

| Claimant | Basis for Claim | Estimate |
|---|---|---|
| Internal Revenue Service | Postpetition taxes | $0 |
| Franchise Tax Board | Postpetition taxes | $0 |

The above list may not be inclusive of all Other Administrative Expense Claims that may be asserted against the Estates.  Any Holder of an Other Administrative Expense Claim must seek allowance of such Claim as set forth below.

*Allowance*:  An Other Administrative Expense Claim shall be Allowed only if:  (1) on or before the Administrative Expense Bar Date (which is 30 days after the Effective Date), the Holder of the Claim Files with the Court a final fee application or a motion requesting allowance of the Claim; and (2) the Court subsequently enters an order allowing the Claim.

The motion shall be Filed and determined pursuant to Local Rule 9013-1(o), upon notice of opportunity to object and request a hearing.  The Liquidating Trustee or any other party in interest may File and serve a response and request a hearing on or before 30 days after the Administrative Expense Bar Date, unless such time period is extended by the Court.  If the response period expires without the filing of any response and request for hearing, the Holder of the Other Administrative Expense Claim may file a declaration and lodge a proposed order pursuant to Local Rule 9013-1(o)(3).  If a timely response and request for hearing is Filed, the Holder of the Claim shall schedule a hearing and give not less than 14 days' notice of the hearing pursuant to Local Rule 9013-1(o)(4).

The Holder of an Other Administrative Expense Claim that does not timely File a motion requesting allowance of the Claim will be forever barred from asserting the Claim against the Debtors, the Estates, the Liquidating Trust, or their respective property.

*Treatment*:  Unless otherwise agreed by the Holder of an Other Administrative Expense Claim, an Allowed Other Administrative Expense Claim shall be paid in the full Allowed amount of such Claim in Cash on or before 10 Business Days after the date any order determining such Claim to be an Allowed Other Administrative Expense Claim becomes a Final Order.

**B.    Priority Tax Claims**

*Identity of Priority Tax Claims*:  Entities known or believed by the Debtors to hold or otherwise assert Priority Tax Claims are as follows:

| Claimant | Claim Amt. |
|---|---|
| Internal Revenue Service | $40,550.01 |

| | |
|---|---|
| Franchise Tax Board | $1,692.72 |
| County of Orange Treasurer-Tax Collector | $9,705.71 |

_Allowance_:  A Priority Tax Claim shall be Allowed only if it satisfies the definitional requirements of an Allowed Claim.

The Liquidating Trustee or any other party in interest may File an objection to a Priority Tax Claim on before the Claims Objection Deadline.  Objections to Priority Tax Claims shall be Filed, served and set for hearing in accordance with FRBP 3007, Local Rule 3007-1, and any and all other rules and procedures applicable to objections to claims brought before the Court.

_Treatment_:  Unless otherwise agreed by the Holder of a Priority Tax Claim, an Allowed Priority Tax Claim shall be paid in the full Allowed amount of such Claim, plus interest at the Legal Rate, not later than five (5) years after the Petition Date, as provided in Section 1129(a)(9)(C).  Notwithstanding the foregoing, if an objection to a Priority Tax Claim is timely Filed, an Allowed Priority Tax Claim shall be paid in the full Allowed amount of such Claim on or before 10 Business Days after the date any order determining such Claim to be an Allowed Priority Tax Claim becomes a Final Order.

## VI.

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

The following is a summary of the classes of Claims and Interests for which treatment is provided under the Plan:

| Class # | Description | Impairment |
|---|---|---|
| 1 | General Unsecured Claims | Impaired |
| 2 | Interests - CPMG | Impaired |
| 3 | Interests - CMS | Impaired |

**A.**   **Class 1 (General Unsecured Claims)**

_Classification_.  Class 1 consists of all General Unsecured Claims, including the unsecured deficiency claims of Despierta LLC, Austin Business Finance LLC dba Backd, LendSpark Corporation, and Rise Health Services, Inc.  Entities known or believed by the Debtors to hold or

otherwise assert Class 1 Claims are identified in Exhibit 2 to the Plan. The scheduled amount of Class 1 Claims asserted against the Estates is $6,423,136.

*Impairment*. Class 1 is impaired under the Plan.

*Voting*. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

*Treatment*. Allowed Class 1 Claims will be transferred to the Liquidating Trust. Unless otherwise agreed by a Holder of a Class 1 Claim, each Holder of a Class 1 Claim shall be paid *pro rata* from funds received by the Liquidating Trust after payment of U.S. Trustee Fees, Professional Fee Claims, Other Administrative Expense Claims, Priority Tax Claims, Class 1 Claims, and the expense of administration of the Liquidating Trust.

**B.**    **Class 2 (Interests of CPMG)**

*Classification*. Class 2 consists of Interests in CPMG. The Holder of an Interest in CPMG is (1) Dr. Michael Hall (who owns 50.0% of the company); (2) Dr. Dennis Ponzio (who owns 41.38% of the company); and (3) Dr. Thomas Parsa (who owns 8.62% of the company). *See* SOFA, Dk. No. 81, pg. 286-287.

*Impairment*. Class 2 is impaired under the Plan.

*Voting*. Holders of Class 2 Interests are not entitled to vote to accept or reject the Plan because they are deemed to have rejected the Plan because Class 2 will not receive or retain any property under the Plan on account of Class 2 Interests in CPMG.

*Treatment*. On the Effective Date, all Interests in CPMG shall be cancelled, annulled, and extinguished and of no further force or effect without any further action by any party.

**C.**    **Class 3 (Interests of CMG)**

*Classification*. Class 3 consists of Interests in CMG. The only Holder of an Interest in CMS is CPMG.

*Impairment*. Class 3 is impaired under the Plan.

*Voting*. Holders of Class 3 Interests are not entitled to vote to accept or reject the Plan because they are deemed to have rejected the Plan because Class 3 will not receive or retain any property under the Plan on account of Class 3 Interests in CMG.

1       *Treatment*. On the Effective Date, all Interests in CMG shall be cancelled, annulled, and

2 extinguished and of no further force or effect without any further action by any party.

3 **VII.**

4 **CONFIRMABILITY OF PLAN AND CRAMDOWN**

5       If Class 1 votes to reject the Plan, the Plan will not be confirmed and the Debtors will *not*

6 request that the Court confirm the Plan under the cramdown provisions of the Bankruptcy Code.

7 **VIII.**

8 **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

9 **A.**     **Rejection of Executory Contracts and Unexpired Leases**

10       All Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective

11 Date, except for Executory Contracts and Unexpired Leases that (a) have been assumed pursuant to

12 the Sale Order or other order of the Court, or (b) are the subject of a motion for such an order

13 pending as of the Confirmation Hearing. Entry of the Confirmation Order by the Court shall

14 constitute an order approving the rejection of Executory Contracts and Unexpired Leases as set

15 forth in the Plan, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code, effective as of

16 the Effective Date.

17 **B.**     **Claims Based on Rejection of Executory Contracts and Unexpired Leases**

18       A proof of claim asserting a Rejection Damages Claim shall be Filed no later than 30 days

19 after the Effective Date. If no objection to the Rejection Damages Claim is Filed on or before the

20 Claims Objection Deadline, the Rejection Damages Claim shall become an Allowed Claim. Each

21 Allowed Rejection Damages Claim shall be classified and treated as a Class 1 Claim.

22       The Holder of a Rejection Damages Claim that does not timely File a proof of claim

23 asserting such a Claim shall be forever barred from asserting such Claim against the Debtors, the

24 Estates, the Liquidating Trust, or their respective property.

25 **C.**     **Contracts and Leases Entered Into After the Petition Date**

26       After the Effective Date, contracts and leases entered into after the Petition Date by the

27 Debtors, including the APA, shall be performed by the Liquidating Trustee only if said contract or

28 lease was previously approved the Court.

13

# IX.

## DISPUTED CLAIMS AND INTERESTS;

## SETOFF AND RECOUPMENT

**A.    Objections to Claims**

Except as provided in Section V.A.2 (regarding Professional Fee Claims), any objection to a Claim shall be Filed and served upon the Holder of such Claim on or before the Claims Objection Deadline.  Any Claim to which an objection remains pending on the Claims Objection Deadline, shall be deemed a Disputed Claim until the Claim is Allowed or disallowed by a Final Order.

**B.    No Distributions with Respect to Disputed Claims**

Notwithstanding any provision of the Plan, distributions will be made by the Liquidating Trustee on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for distribution purposes.

**C.    Extension of the Claims Objection Deadline**

After the Effective Date, the Liquidating Trustee may File a motion with the Court to extend the Claims Objection Deadline.  The filing of such a motion shall automatically extend the Claims Objection Deadline.  If the motion is denied by the Court, the Claims Objection Deadline shall be 30 calendar days after the date of entry of the order denying the motion.  In the event of an appeal, the Claims Objection Deadline shall automatically extend to the later of the then-current Claims Objection Deadline (as previously extended, if applicable) or 30 calendar days after entry of a Final Order affirming or denying the Court's order granting or denying the motion to extend the Claims Objection Deadline.

**D.    Authority to Compromise Disputed Claims**

After the Effective Date, the Liquidating Trustee may settle and compromise a Disputed Claim in the Liquidating Trustee's sole discretion without Court approval.

**E.    Setoff and Recoupment**

The Liquidating Trustee may set off, recoup, or withhold against distributions to be made on account of any Allowed Claim any claims that the Debtors, the Estates, or the Liquidating Trust may have against the Holder of such Allowed Claim.  The Liquidating Trustee will not waive or

release any claim against those entities by failing to effect such a setoff or recoupment, by allowing any Claim against the Debtors or the Estates, or by making a distribution on account of an Allowed Claim.

**X.**

**MEANS OF IMPLEMENTATION**

**A.    From the Confirmation Date to the Effective Date**

Although the Plan will become effective only on the Effective Date, on and after the Confirmation Date until the Effective Date, the Debtors shall take or cause to be taken all actions which are necessary to enable the Plan to become effective on the Effective Date and to implement and perform the Plan on and after the Effective Date.

**B.    Sale of Estates Property**

Pursuant to the Sale Order, the Debtors sold substantially all assets of the Estates to Anchor Medical Group, P.C. ("Anchor Medical") and Anchor Medical Management, Inc. ("Anchor Management" and collectively with Anchor Medical, "Anchor").

**C.    Preservation of Causes of Action**

Except as otherwise provided in the Plan, each Cause of Action held by the Debtors and the Estates shall be preserved and, along with the exclusive right to enforce such Cause of Action, shall vest on the Effective Date exclusively in the Liquidating Trustee, on behalf of the Liquidating Trust.  Unless a Cause of Action is expressly waived, relinquished, released or compromised in the Plan or an order of the Court, the Liquidating Trustee expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), laches or other preclusion doctrine shall apply to such Cause of Action as a consequence of the Confirmation, the Plan, the vesting of such Cause of Action in the Liquidating Trustee on behalf of the Liquidating Trust, any order of the Court or this Case.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against such Entity as any indication that the Liquidating Trustee will not pursue such Cause of Action.

1    Nothing in this Section shall limit the ability of any party in interest to object to any Claim

2  prior to the Claims Objection Deadline unless otherwise ordered by the Court.

3  **D.     Management of the Debtors**

4    No Person will manage the Debtors after the Effective Date because, pursuant to Section

5  X.G.3 of the Plan, the Debtors will be dissolved as of the Effective Date.

6  **E.     The Liquidating Trust**

7    **1.     Establishment of the Liquidating Trust**

8    On the Effective Date, the Liquidating Trust shall be created pursuant to the Liquidating

9  Trust Agreement and the Plan for the benefit of the Holders of Allowed Claims.  The Liquidating

10  Trust shall be known as "The Caduceus Liquidating Trust."

11    The Confirmation Order shall approve the Liquidating Trust Agreement.  If it is not

12  previously signed, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust

13  Agreement on the Effective Date.

14    The functions and procedures applicable to the Liquidating Trust, powers and duties of the

15  Liquidating Trustee, and rights of Holders of beneficial interests in the Liquidating Trust, shall be

16  governed by the provisions of the Liquidating Trust Agreement.  However, if there is any conflict,

17  the terms of the Plan shall govern.

18    **2.     Appointment of the Liquidating Trustee**

19    The Confirmation Order shall appoint Howard B. Grobstein to serve as the Liquidating

20  Trustee and such appointment will become effective on the Effective Date.  The Liquidating

21  Trustee shall act in accordance with the Liquidating Trust Agreement and the Plan for the duration

22  of the Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided in

23  the Liquidating Trust Agreement.

24    The Liquidating Trustee may serve without any bond, but is not prohibited from securing a

25  bond if, in the Liquidating Trustee's discretion, the Liquidating Trustee concludes that doing so is

26  appropriate.

27

28

1      **3.      Beneficiaries of the Liquidating Trust**

2          In accordance with Treasury Regulations Section 301.7701-4(d), the Beneficiaries of the

3  Liquidating Trust are the Holders of Class 1 Claims.

4          On the Effective Date, the Beneficiaries shall receive, on account of their unpaid Claims

5  against the Estates, an allocation of Liquidating Trust Interests as provided for in the Liquidating

6  Trust Agreement, in order to implement the distributions provided for herein, and shall receive on

7  account of their respective Liquidating Trust Interests, distributions from the Liquidating Trust in

8  compliance with the Plan.  These distributions from the Liquidating Trust, which may be less than

9  the full Allowed Claim amounts, are in full and complete satisfaction, discharge, exchange, and

10  release of the Allowed Claim amounts.

11          Liquidating Trust Interests will not be evidenced by any certificate or other instrument or

12  document.  The Claims underlying the Liquidating Trust Interest remain subject to claim objections

13  by the Liquidating Trustee, and the Liquidating Trust Interest remains subject to revocation by the

14  Liquidating Trustee if an underlying Class 1 Claim subsequently becomes a Disallowed Claim.

15          Liquidating Trust Interests are transferable and assignable, as set forth in section 2.2 of the

16  Liquidating Trust Agreement.

17      **4.      Transfer of Property to the Liquidating Trust**

18          On the Effective Date, pursuant to the Plan and sections 1123, 1141 and 1146(a) of the

19  Bankruptcy Code, the Debtors shall transfer, grant, assign, convey, set over, and deliver to the

20  Liquidating Trustee, for the benefit of the Liquidating Trust, all of the Debtors' and the Estates'

21  right, title and interest in and to the Liquidating Trust Assets, free and clear of all Liens, Claims,

22  and other interests of any kind in such property, except as contemplated by the Plan.  To the extent

23  required to implement the transfer of Liquidating Trust Assets from the Debtors and the Estates to

24  the Liquidating Trust and the Liquidating Trustee, all Persons shall cooperate with the Debtors to

25  assist in implementing said transfers.

26          For all United States federal income tax purposes, all parties will treat the transfer of assets

27  to the Liquidating Trust as a transfer of such assets to the holders of beneficial interests in the

28  Liquidating Trust followed by a transfer of such assets by such holders of beneficial interests to the

Liquidating Trust, with the holders of beneficial interests in the Liquidating Trust being treated as the grantors and owners of the Liquidating Trust.  The Liquidating Trust is intended to qualify as a "grantor trust" for United States federal income tax purposes with the holders of beneficial interests in the Liquidating Trust being treated as the grantors and owners of the Liquidating Trust. Accordingly, because a grantor trust is treated as a pass-through entity for United States federal income tax purposes, generally no tax should be imposed on the Liquidating Trust as a result of the transfer of assets thereto or on the income earned or gain recognized by the Liquidating Trust. Instead, the holders of beneficial interests in the Liquidating Trust may be taxed on their allocable share of such net income or gain in each taxable year of the Liquidating Trust (determined in accordance with the Liquidating Trust Agreement), and will be responsible for paying the taxes associated with such allocable net income and gain whether or not they received any distributions from the Liquidating Trust in such taxable year.

**5.       Liquidating Trust's Distribution of Cash**

After the Effective Date, the Liquidating Trustee shall pay all expenses of the Liquidating Trust from property in the Liquidating Trust, establish and maintain reserves in accordance with the Liquidating Trust Agreement and the Plan, and make, at the Trustee's discretion, periodic distributions of Cash to the Holders of Allowed Claims (including Allowed Administrative Expense Claims) from the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan.

**6.       Powers and Duties of the Liquidating Trustee**

Among other things, the Liquidating Trustee shall have the following rights, powers and duties, at all times in accordance with the Liquidating Trust Agreement:

(a)     accept delivery from the Debtors of all assets to be transferred from the Debtors and the Estates to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(b)     hold and distribute, in accordance with the Liquidating Trust Agreement and the Plan, all assets transferred to the Liquidating Trust;

(c)     manage the affairs of the Liquidating Trust;

18

(d)     except as specified in the Plan, determine the frequency and amount of payments in accordance with section 4.1 of the Liquidating Trust Agreement;

(e)     establish and maintain reserves for payment of Liquidating Trust Expenses, Disputed Claims, and unclaimed distributions in accordance with the Plan and the Liquidating Trust Agreement;

(f)     collect and marshal all assets of the Debtors and the Estates, reduce such assets to cash, and make interim and final distributions in accordance with the Plan and the Liquidating Trust Agreement;

(g)     monitor and enforce the implementation of the Plan;

(h)     file all federal, state, and local tax and regulatory forms, returns, reports and other documents required with respect to the Debtors, the Estates and the Liquidating Trust, and pay any taxes shown as due thereon;

(i)     in the Liquidating Trustee's reasonable business judgment, investigate, prosecute and/or settle actions or litigation of the Debtors, the Estates, or the Liquidating Trust, including all Causes of Action, without supervision by the Court and free of any restrictions of the Bankruptcy Code or FRBP, other than any restrictions expressly imposed by the Plan;

(j)     in the Liquidating Trustee's reasonable business judgment, investigate and prosecute objections to Claims, pursuant to the Plan and the Liquidating Trust Agreement;

(k)     preserve and maintain, at the expense of the Liquidating Trust, the Debtors' books and records, provided that the Liquidating Trustee, in the Liquidating Trustee's reasonable business judgment, may destroy any and all books and records of the Debtors if they are no longer of any value to the Liquidating Trust;

(l)     submit all required U.S. Trustee and Court reports, and pay all required U.S. Trustee Fees until the Case is closed;

(m)     take all actions necessary and create any documents necessary to wind up the affairs of the Liquidating Trust and implement the Plan; and

(n)     take all necessary actions and File all appropriate motions to obtain an order closing the Case.

The Liquidating Trustee shall succeed to all of the rights and powers of the Debtors and the Estates with respect to all Liquidating Trust Assets and Causes of Action, and the Liquidating Trustee shall be substituted and shall replace the Debtors and the Estates, as applicable, as the party in interest in any litigation pending as of the Effective Date.

The Liquidating Trustee, on behalf of the Liquidating Trust, shall be authorized to execute any documents that implement or are in aid of this Section, in particular, and the Plan in general.

**7.     Liquidating Trustee's Employment of Professionals; Compensation**

On and after the Effective Date, the Liquidating Trustee may employ and compensate such professionals, agents and representatives as the Liquidating Trustee determines is necessary or appropriate pursuant to the terms of the Liquidating Trust Agreement and the Plan, including professionals, agents and representatives employed by the Estates prior to the Effective Date. Within 30 days after engagement by the Liquidating Trustee of any professional person, the Liquidating Trustee's retention of professionals after the Effective Date shall not be subject to Court approval. For sake of continuity, the Liquidating Trustee may employ Debtors' employed professionals after the Effective Date and without further Court approval.

The Liquidating Trustee and the professionals employed by the Liquidating Trustee may be compensated each month at the rate of 100% of fees incurred plus 100% of out-of-pocket costs expended for the prior month (including for fees and costs incurred prior to entry of the order approving the professional's employment). The Liquidating Trustee and professionals employed by the Liquidating Trustee must file applications for final compensation pursuant to the standards and procedures applicable to final applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, FRBP 2016, Local Rule 2016-1, and any other applicable rules and procedures of the Court.

**8.     Compliance with Tax Requirements**

The Liquidating Trust shall comply with all applicable withholding, payment and reporting requirements imposed on it by governmental units, and all distributions pursuant to the Plan shall

be subject to such withholding, payment and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  All amounts withheld from distributions to the Holder of an Allowed Claim or Holder of a Liquidating Trust Interest and paid over to the applicable governmental unit on account of such Holder shall be treated as part of the distributions to such Holder.

Each Entity holding an Allowed Claim or Liquidating Trust Interest shall provide any information necessary to effect the necessary reporting and withholding of applicable taxes with respect to distributions to be made under the Plan.  The Liquidating Trustee shall be entitled in its sole discretion to withhold any distributions to a Holder of an Allowed Claim or Liquidating Trust Interest that fails to provide tax identification or social security information upon written request.

Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim or Liquidating Trust Interest that is to receive a distribution on account thereof pursuant to the Plan or Liquidating Trust Agreement shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidating Trust in connection with such distribution.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an unclaimed distribution pursuant to Section XI.F of the Plan.

**9.** **No Recourse Against the Liquidating Trustee**

No recourse shall ever be had, directly or indirectly, against the Liquidating Trustee or any of the officers, employees, professionals, agents or representatives of the Liquidating Trust, whether by legal, equitable or other proceedings, pursuant to any law, statute, regulation or otherwise, by virtue of any indebtedness of the Debtors, the Estates, or the Liquidating Trust.  All liabilities of the Liquidating Trust shall be enforceable only against and be satisfied only out of the

Liquidating Trust Assets or shall be evidence only of a right to payment out of the Liquidating Trust Assets, as the case may be.

### 10. Termination and Dissolution of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the determination by the Liquidating Trustee to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and Liquidating Trustee, as set forth in the Liquidating Trust Agreement.

## F. Undeliverable and Unclaimed Distributions

If any distribution is returned as undeliverable, (1) the Liquidating Trustee shall make reasonable efforts to determine the address of such Holder of an Allowed Claim or Holder of a Liquidating Trust Interest and (2) no further distributions to the applicable Holder of an Allowed Claim or Holder of a Liquidating Trust Interest shall be made unless and until the Liquidating Trustee is notified in writing of such Holder of an Allowed Claim or Holder of a Liquidating Trust Interest's then-current address, at which time the undelivered distribution shall be made to such Holder of an Allowed Claim or Holder of a Liquidating Trust Interest without interest or dividends. All distributions that remain unclaimed for 90 days after attempted distribution shall indefeasibly revert to the Liquidating Trust.  Upon such reversion, the Holder of an Allowed Claim or Holder of a Liquidating Trust Interest's entitlement to the distribution shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

## G. Dissolution of the Debtors

### 1. Cancellation of Interests

On the Effective Date, all Interests in the Debtors shall be cancelled, annulled, and extinguished and of no further force or effect without any further action by any party.

### 2. Termination of Services of the Debtors' Director and CRO

On the Effective Date, and without further action by any party, the Debtors shall have no right to operate a business, and the services of the Debtors' directors and officers, including its current Chief Restructuring Officer, automatically are terminated.  Notwithstanding the foregoing, the Liquidating Trustee shall have, and retain, authority as set forth in the Plan and the Liquidating

Trust Agreement to dispose of the Liquidating Trust Assets and otherwise implement the Plan in accordance with its terms.

### 3.    Dissolution of the Debtors

On the Effective Date, the Debtors shall be deemed liquidated and dissolved as a legal entity, for all purposes, pursuant to applicable federal and state law, without further action by any entity, and the Confirmation Order shall contain a provision to such effect.

Notwithstanding the foregoing, without the need for any further approval, the Liquidating Trustee in the Liquidating Trustee's discretion may execute and file documents and take all other actions as the Liquidating Trustee deems appropriate relating to the dissolution of the Debtors under the applicable laws of any states, and in such event, all applicable regulatory or governmental agencies shall take all steps necessary to allow and effect the prompt dissolution of the Debtors as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates.  Any actions by the Liquidating Trustee pursuant to the preceding sentence shall not modify, alter, or otherwise affect the deemed dissolution of the Debtors as of the Effective Date pursuant to this Section.

## XI.

## EFFECTS OF CONFIRMATION

### A.    Binding Effect of the Plan

Except as provided in section 1141(d)(3) of the Bankruptcy Code, the provisions of the Plan bind the Debtors, any entity acquiring property under the Plan, any creditor or equity security holder, and their successors, assigns, heirs, executors, administrators and representatives, whether or not the Claim or Interest of such creditor or equity security holder is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan.

### B.    Vesting of Assets

Pursuant to sections 1123(b) and 1141(b) of the Bankruptcy Code, upon Plan confirmation, Plan property of the Estates will remain property of the Estates until the Effective Date.  Upon the Effective Date, except as otherwise provided in (a) the Plan, (b) any contract, instrument, release or other agreement or document that is created pursuant to the Plan, or (c) the Confirmation Order, all

property of the Debtors and the Estates shall vest in the Liquidating Trustee, on behalf of the

Liquidating Trust, free and clear of all Liens, Claims, and other interests of creditors and equity

security holders.

The following shall be preserved and vest in the Liquidating Trust on the Effective Date,

pursuant to sections 1123(b) and 1141(b) of the Bankruptcy Code, to the extent not released

pursuant to the Plan, the Confirmation Order, or any other order of the Court: (a) Causes of Action

of the Debtors and the Estates against any Entity; (b) all defenses, offsets, rights of recoupment,

rights of disallowance, recharacterization and/or equitable subordination of the Debtors and the

Estates with respect to Claims against the Debtors and the Estates; and (c) all rights of the Debtors,

the Estates, and the Liquidating Trust arising from the Plan itself. Pursuant to sections 1123(b) and

1141(b) of the Bankruptcy Code, upon the vesting of all property of the Debtors and the Estates in

the Liquidating Trustee, on behalf of the Liquidating Trustee, on the Effective Date, the Estates

will cease to exist.

**C.    <u>No Discharge</u>**

This Plan provides for the liquidation of all or substantially all of the property of the

Estates. As a result, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors is not

eligible to receive a discharge.

**D.    <u>Continuation of Automatic Stay; Creditor Action Restrained</u>**

Except as provided in section 362(b) of the Bankruptcy Code or an order entered pursuant

to section 362(d) of the Bankruptcy Code, the automatic stay of section 362(a) of the Bankruptcy

Code shall remain in full force and effect with respect to the Debtors, the Estates, the Liquidating

Trust, and property thereof.

This Plan is binding on every creditor and shareholder whose Claims and Interests are

provided for in the Plan, whether or not such creditor or shareholder votes to accept the Plan. No

creditor or shareholder may take any action to enforce any Claim against the Debtors, the Estates,

or the Liquidating Trust except as provided in the Plan and the Liquidating Trust Agreement.

**E.**    **No Liability for Solicitation or Participation**

As specified in section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

## XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court will retain jurisdiction over the Case after the Effective Date to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.    hear and determine objections to Claims;

2.    hear and determine any dispute arising under the APA and the accompanying Interim Administrative Services Agreement ("ASA");

3.    hear and determine any dispute arising under the Plan or Liquidating Trust Agreement, their implementation and the execution of any necessary documents thereunder;

4.    enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

5.    grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

6.    enforce all discharge, release and injunction provisions of the Plan;

7.    consider and rule upon requests for final compensation;

8.    hear and determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee after the Effective Date;

9.　　resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

10.　　ensure that distributions to Holders of Allowed Claims are accomplished as provided herein via the Liquidating Trust;

11.　　resolve disputes as to the ownership of any Claim;

12.　　hear and determine objections to Administrative Expense Claims and Claims;

13.　　enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

14.　　issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

15.　　consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

16.　　hear and determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

17.　　hear and determine any issue for which the Plan requires a Final Order of the Court;

18.　　hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

19.　　hear and determine Causes of Action preserved under the Plan, including Avoidance Actions;

20.　　hear and determine any matter regarding the existence, nature, and scope of the releases, exculpation, indemnification and injunctions provided in the Plan; and

21.　　enter a final decree closing the Case.

The foregoing list is illustrative only and not intended to limit in any way the Court's exercise of jurisdiction.  If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Case, including matters set forth above, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# XIII.

## MISCELLANEOUS PROVISIONS

### A.    Exculpation

Except as otherwise specially provided in the Plan or the Confirmation Order, none of the Debtors, the Estates, Howard B. Grobstein of Grobstein Teeple LLP (Debtor's Chief Restructuring Officer)  and the Debtor's professionals employed in this case (collectively the "Exculpated Parties") shall have or incur any liability to any Holder of a Claim or Interest for any act or omission occurring on or after the Petition Date to the Effective Date in connection with, related to, or arising out of the Case and pursuit of implementation, confirmation or consummation of this Plan, except for willful misconduct or gross negligence, fraud or malpractice as construed under CA PRC 1.8.8.

Nothing in this Section shall limit the liability of any Person for breach of any express obligation such Person has under the terms of the Plan, or under any postpetition agreement or other postpetition document entered into by such Person, or in accordance with the terms of the Plan, or for any breach of a duty of care owed to any other Person occurring after the Effective Date.

### B.    Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment or any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, license transfer or other similar tax.  For the avoidance of doubt, the transactions contemplated under the Plan include, among other things, all transactions and transfers contemplated in the Plan, including, without limitation, the transfer of the Debtors and the Estates' right, title and interest in property to the Liquidating Trust.

**C.      Expedited Tax Determination**

The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Debtors or the Estates for all taxable periods ending on or before the Effective Date.

**D.      Securities Laws**

**1.      Exemption from Registration Issues**

In reliance upon an exemption from the registration requirements of the Securities Act of 1933, as amended (the "Securities Act"), and of state and local securities laws afforded by section 1145 of the Bankruptcy Code, the Liquidating Trust interests to be issued pursuant to the Plan on and after the Effective Date need not be registered under the Securities Act or any state or local securities laws.

**2.      Exchange Act Reporting Obligations and Registration under Investment Company Act**

The Debtors anticipates that the Liquidating Trust may, under certain circumstances, be required to register or otherwise report under the Securities Act of 1934, as amended (the "Exchange Act"), and accordingly be required to file with the SEC and send to the holders of Liquidating Trust interests certain periodic reports and other information pursuant to the Exchange Act. The reports may be the same as or different from those required to be distributed to the holders of Liquidating Trust Interests pursuant to the Plan and the Liquidating Trust Agreement.

In addition, the Debtors currently anticipate that the Liquidating Trust will be exempt from registration under the Investment Company Act of 1940 ("Investment Company Act"). Exemptions may be sought from the SEC from all or some of the reporting requirements of the Exchange Act or the Investment Company Act, if it is determined that such reporting is required and that compliance with such requirements would be burdensome. The Debtors has not yet made any determinations regarding whether any such exemptions will be sought and the SEC had not yet made any determinations regarding such matters. There is no assurance that any such exemptions, if deemed necessary and applied for, will be granted.

28

**E.      Payment of Statutory Fees**

All fees payable on or before the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay all fees payable under 28 U.S.C. § 1930 until the Case is closed, dismissed, or converted.

**F.      Amendment, Modification or Withdrawal of the Plan**

The Debtors reserve the right, in accordance with the Bankruptcy Code and subject to Court approval, to amend or modify the Plan prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Liquidating Trustee may amend or modify the Plan and Liquidating Trust Agreement, or remedy any defect or omission or reconcile any inconsistency in the Plan, in accordance with the Bankruptcy Code and subject to Court approval, and in such a manner as may be necessary to carry out the purpose and intent of the Plan and Liquidating Trust Agreement.

**G.      Governing Law**

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and FRBP), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

**H.      Waiver of FRBP 7062**

The Debtors may request that the Confirmation Order include (a) a finding that FRCP 62(a), made applicable by FRBP 7062, shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after entry of the Confirmation Order.

**I.      Exhibits and Schedules**

All exhibits and schedules to the Plan and Disclosure Statement are incorporated into and constitute a part of the Plan as if set forth herein.

**J.        Conflict**

The terms of the Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.  If there is any conflict between the Plan and the Liquidating Trust Agreement, the terms of the Plan shall govern.

**K.        Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, trustee, administrator, successor or assign of such Entity.

**L.        Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**M.        Post-Effective Date Effect of Evidences of Claims or Interests**

Notes, bonds, stock certificates and other evidences of Claims against or Interests in the Debtors, and all instruments of the Debtors (in either case, other than those executed and delivered as contemplated hereby in connection with the consummation of the Plan, if any), shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

**N.        Severability of Plan Provisions**

If, before the Confirmation Date, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each

Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**O.      No Admissions or Waiver of Objections**

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will (1) be deemed to be an admission by the Debtors with respect to any matter discussed in the Plan, including liability on any Claim or the propriety of any Claim's classification, (2) constitute a waiver, acknowledgement, or release of any Claims, or (3) prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings.

**P.      Survival of Settlements**

All settlements approved by the Court pursuant to FRBP 9019 or otherwise shall survive consummation of the Plan.  If the terms of the Plan are inconsistent with the terms of any Court-approved settlement, the terms of the Plan shall supersede any inconsistent settlement provisions.

**Q.      Post-Confirmation Status Reports**

Pursuant to Local Rule 3020-1(b), the Confirmation Order shall provide as follows:

> Within 120 days of the entry of this order, the Liquidating Trustee shall file a status report explaining what progress has been made toward consummation of the Plan.  The initial report shall be served on the United States trustee, the 20 largest unsecured creditors, and those parties who have requested special notice. Further reports shall be filed every 180 days thereafter and served on the same entities, unless otherwise ordered by the court.

**R.      Effect of Post-Confirmation Conversion to Chapter 7**

If, after the Effective Date, the Court enters an order converting the Case to one under chapter 7 of the Bankruptcy Code, the Liquidating Trust Assets shall not be vested in the chapter 7 estate.  This means that there would be no assets for a chapter 7 Trustee to administer if this case were converted to chapter 7 after the plan is confirmed.

31

1  **S.**      **Final Decree**

2          Once the Estates has been fully administered within the meaning of FRBP 3022, the

3  Liquidating Trustee shall file a motion with the Court to obtain a final decree to close the Case.

4

5   DATED: November 25, 2025                    MARSHACK HAYS WOOD LLP

6                                                      /s/ Aaron E. de Leest
                                               By: _____
7                                                    MATTHEW W. GRIMSHAW
8                                                    DAVID A. WOOD
                                                     AARON E. DE LEEST
9                                                    Attorneys for Debtors CADUCEUS
                                                     PHYSICIANS MEDICAL GROUP, A
10                                                   PROFESSIONAL MEDICAL CORPORATION
                                                     dba CADUCEUS MEDICAL GROUP and
11                                                   CADUCEUS MEDICAL SERVICES, LLC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**EXHIBIT A**

**DEFINITIONS**

| | |
|---|---|
| ***Administrative Expense Claim*** | means any Claim against the Estates for administrative costs or expenses entitled to priority under § 507(a)(2) or (b). |
| ***Administrative Expense Claim Bar Date*** | means the date that is 30 calendar days after the Effective Date. |
| ***Affiliate*** | has the meaning set forth in § 101(2) of the Bankruptcy Code. |
| ***Allowed*** | means, with respect to any Claim or Interest, except as otherwise provided in the Plan: |

    (a) a Claim or Interest arising before the Effective Date (i) as to which a proof of claim has been filed in the Case, which has not been withdrawn and as to which no objection has been filed by the Claims Objection Deadline, or (ii) that is allowed or determined by Final Order of a court of competent jurisdiction;

    (b) any Claim or Interest that is agreed to, compromised, settled or otherwise resolved by the Debtors or the Liquidating Trustee; or

    (c) any Claim or Interest expressly allowed in the Plan.

| | |
|---|---|
| ***APA*** | means the *ASSET PURCHASE AGREEMENT by and among CADUCEUS MEDICAL SERVICES, LLC, and CADUCEUS PHYSICIANS MEDICAL GROUP, as Sellers, and ANCHOR MEDICAL GROUP, P.C., and ANCHOR MEDICAL MANAGEMENT, INC., as Buyers* Dated: May 6, 2025 |
| ***Avoidance Actions*** | means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtors or the Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under §§ 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal or foreign statutes and common law, including fraudulent transfer laws. |
| ***Ballot*** | means the voting form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which the Holder is to indicate acceptance or rejection of the Plan and make any other elections or representations required pursuant to the Plan and which must be actually received on or before the Voting Deadline. |
| ***Bankruptcy Code*** | means title 11 of the United States Code (11 U.S.C. §§ 101-1532). |
| ***Bar Date Notice*** | means the *Notice of Bar Date for Filing Proofs of Claim* Filed in the Case on September 25, 2024, Docket No. 106. |

1

| | |
|---|---|
| **Beneficiaries** | means Holders of Allowed Claims in the Classes established under the Plan. |
| **Business Day** | means a day that is not a Saturday, Sunday, a day designated as a legal holiday in FRBP 9006(a)(6), or any other day on which banking institutions in Los Angeles, California, are required or authorized to close by law or executive order. |
| **Cash** | means legal tender of the United States of America or equivalents thereof. |
| **Case(s)** | means the Debtors' chapter 11 case, jointly administered as case number 8:24-bk-11945-SC, pending in the Court. |
| **Cause of Action** | means any action, claim, cause of action, controversy, proceeding, reimbursement claim, affirmative defense, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, loss, damage, remedy, judgment, account, defense, offset (including setoff or recoupment rights), power, privilege, license and franchise of any kind or character whatsoever, known or unknown, foreseen or unforeseen, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, the term Cause of Action includes: (i) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (ii) the right to object to or otherwise contest Claims or Interests; 44(iii) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (iv) any Avoidance Action; (v) any claim or defense, including fraud, mistake, duress and usury, and any other defenses set forth in § 558 of the Bankruptcy Code and (vi) any claim under any state or foreign law, including any fraudulent transfer or similar claim. |
| **Claim** | has the meaning set forth in § 101(5) of the Bankruptcy Code. |
| **Claims Bar Date** | means the last date for filing proofs of Claims and Interests arising prior to the Petition Date, and such other deadlines for filing Claims against the Estates as may be set forth in the Bankruptcy Code or an order or orders of the Court. |
| **Claims Objection Deadline** | means 11:59 p.m. (prevailing California time) on the 120th calendar day after the Effective Date, subject to extensions and/or exceptions as may be ordered by the Court. |
| **Class** | means a category of Claims or Interests designated in the Plan. |
| **Class ** Claim** | means a Claim in the particular Class described. |
| **Class ** Interest** | means an Interest in the particular Class described. |

2

| | | |
|---|---|---|
| 1 | ***Clerk*** | means the Clerk of the Court. |
| 2 | | |
| 3 | ***Confirmation*** | means the entry of the Confirmation Order on the Docket. |
| 4 | ***Confirmation Date*** | means the date on which the Court enters the Confirmation Order. |
| 5 6 | ***Confirmation Hearing*** | means the hearing by the Court pursuant to § 1128(a) of the Bankruptcy Code to consider Confirmation of the Plan, as such hearing may be, or may have been, continued from time to time. |
| 7 | ***Confirmation Order*** | means the order of the Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code. |
| 8 9 | ***Convenience Claim*** | means a Claim in an amount equal to or less than $500. |
| 10 | ***Court*** | means the United States Bankruptcy Court for the Central District of California having jurisdiction over the Case. |
| 11 | ***Creditor*** | means any Holder of a Claim against the Debtors. |
| 12 13 | ***CRO*** | means Howard B. Grobstein, solely in his capacity as the Debtors' Chief Restructuring Officer. |
| 14 15 16 | ***Debtors*** | means Caduceus Physicians Medical Group, a Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS"). |
| 17 | ***Debtor(s) in Possession*** | means the Debtors in their capacity a a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. |
| 18 19 20 | ***Disallowed Claim*** | means a Claim against the Debtors that: (a) is not listed on the Schedules, or is listed on the Schedules as contingent, unliquidated, disputed, subject to adjustment, unknown, or in an amount equal to zero, and whose Holder has failed to timely File a proof of Claim; or (b) the Court has disallowed pursuant to order of the Court. |
| 21 22 | ***Disclosure Statement*** | means the disclosure statement relating to the Plan, including all exhibits, appendices and schedules thereto, as amended, supplemented or modified from time to time. |
| 23 24 | ***Disputed*** | means, with respect to any Claim or Interest, a Claim or Interest or any portion thereof that is not Allowed but has not been disallowed by a Final Order. |
| 25 | ***Docket*** | means the official docket maintained by the Clerk for the Case. |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| ***Effective Date*** | means the Business Day selected by the Debtor that is (a) on or after the Confirmation Date and the date on which the Confirmation Order shall have become a Final Order, and (b) on or after the date on which the conditions to the effectiveness of the Plan specified in Section III of the Plan have been either satisfied or waived as set forth therein. |
| ***Entity*** | has the meaning set forth in § 101(15) of the Bankruptcy Code. |
| ***Estates*** | means the bankruptcy estates created upon the filing of the Cases pursuant to § 541 of the Bankruptcy Code. |
| ***Executory Contract*** | means a contract to which the Debtors is a party and that is subject to assumption or rejection pursuant to § 365 of the Bankruptcy Code. |
| ***Exculpated Parties*** | means the parties described in Section XIII.A of the Plan. |
| ***Filed, File, or Filing*** | means duly and properly filed with the Court and reflected on the Docket, or the act of duly and properly filing a document with the Court that is reflected on the Docket. |
| ***Final Order*** | means an order or judgment of the Court entered on the Docket: |

      (a)    that has not been reversed, rescinded, stayed, modified, or amended;

      (b)    that is in full force and effect; and

      (c)    with respect to which (i) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending, or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

| | |
|---|---|
| ***FRBP*** | means the Federal Rules of Bankruptcy Procedure. |
| ***FRCP*** | means the Federal Rules of Civil Procedure. |
| ***General Unsecured Claim*** | means any Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, or Other Priority Claim. |
| ***Governmental Unit*** | has the meaning set forth in § 101(27) of the Bankruptcy Code. |
| ***Holder*** | means an Entity holding a Claim or an Interest, as applicable. |
| ***Impaired*** | means, with respect to any Claim or Interest, a Claim against or Interest in the Debtors that is in a Class that is impaired within the meaning of § 1124 of the Bankruptcy Code. |
| ***Insider*** | has the meaning set forth in § 101(31) of the Bankruptcy Code. |

4

| | |
|---|---|
| ***Interest*** | has the meaning set forth in § 101(16) of the Bankruptcy Code for "equity security." |
| ***Legal Rate*** | means 4.83% per annum, which is the interest rate on federal judgments for the calendar week preceding the Petition Date, and is based on the weekly average one-year constant maturity Treasury yield, as published by the Federal Reserve. |
| ***Lien*** | has the meaning set forth in § 101(37) of the Bankruptcy Code. |
| ***Liquidating Trust*** | means The Caduceus Liquidating Trust established on the Effective Date pursuant to the Plan and the Liquidating Trust Agreement. |
| ***Liquidating Trust Agreement*** | means the agreement pursuant to which the Liquidating Trust will be formed and implemented, the substantially final version of which is attached as Exhibit 1 to the Plan. |
| ***Liquidating Trust Assets*** | means (a) the Preserved Claims and any other claims, rights and causes of action vested in the Liquidating Trust, and (b) all other property of the Estates as of the Effective Date, which property shall vest in the Liquidating Trust on the Effective Date pursuant to the Liquidating Trust Agreement and the Plan. |
| ***Liquidating Trust Expenses*** | means the expenses incurred by the Liquidating Trust following the Effective Date (including the fees and costs of attorneys, advisors, other professionals and agents) for the purpose of (a) liquidating, selling, abandoning or collecting upon any of the Liquidating Trust Assets, (b) resolving Disputed Claims and effectuating Distributions to Creditors under the Plan, (c) otherwise implementing the Plan and administering the Liquidating Trust. |
| ***Liquidating Trust Interest*** | means a beneficial interest in the Liquidating Trust entitling the Holder thereof to the applicable treatment provided for under the Plan. |
| ***Liquidating Trustee*** | means Howard B. Grobstein, in his capacity as the trustee of the Liquidating Trust, pursuant to the Liquidating Trust Agreement, or any successor thereto as trustee of the Liquidating Trust. |
| ***Local Rules*** | means the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California. |
| ***Order*** | means an order or judgment of the Court as entered on the Docket. |
| ***Other Administrative Expense Claim*** | means an Administrative Expense Claim other than (a) a Claim for U.S. Trustee Fees, (b) a Professional Fee Claim, and (c) a Licensor Administrative Expense Claim. |

5

| | |
|---|---|
| ***Other Priority Claim*** | means a Claim against the Debtors entitled to priority in right of payment pursuant to § 507(a) of the Bankruptcy Code, other than (a) an Administrative Expense Claim or (b) a Priority Tax Claim. |
| ***Person*** | has the meaning set forth in § 101(41) of the Bankruptcy Code. |
| ***Petition Date*** | means August 1, 2024. |
| ***Plan*** | means *Debtors' Chapter 11 Plan of Liquidation*, as it may be amended or modified, from time to time, together with all addenda, exhibits, schedules, supplements or other attachments, if any. |
| ***Postpetition*** | means the time after the Petition Date. |
| ***Postpetition Tax Claims*** | means Administrative Claims and other Claims by a governmental unit for taxes against any of the Debtors (and for a reasonable rate of interest related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date. |
| ***Preserved Claim*** | means any Cause of Action held by the Debtors or the Estates on the Effective Date, including Avoidance Actions. |
| ***Priority Claim*** | means a Claim entitled to priority under § 507(a)(4), (a)(5), (a)(7) or (a)(8) of the Bankruptcy Code. |
| ***Priority Non-Tax Claim*** | means a Priority Claim other than a Priority Tax Claim. |
| ***Priority Tax Claim*** | means a Claim of a Governmental Unit against the Debtors entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code. |
| ***Pro Rata*** | means, with respect to an Allowed Claim, the percentage represented by a fraction (a) the numerator of which shall be an amount equal to such Claim and (b) the denominator or which shall be an amount equal to the aggregate amount of Allowed and estimated Claims in the same Class as such Claim, except in cases where Pro Rata is used in reference to multiple Classes, in which case Pro Rata means the portion of such Holder's Claim in a particular class bears to the aggregate amount of all Allowed and estimated Claims in such multiple Classes. |
| ***Professional*** | means a professional (including an attorney, accountant, or other advisor or agent) employed by the Debtors at the expense of the Estate pursuant to §§ 327, 328, 363 or 1103 of the Bankruptcy Code. |
| ***Professional Fee Claim*** | means any Claim of a Professional seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under §§ 330, 331, 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code. |
| ***Proof of Claim*** | means a proof of claim against a Debtor Filed in the Case by a Holder of a Claim against the Debtors. |

6

| | |
|---|---|
| ***Rejection Damages Claim*** | means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to § 365 of the Bankruptcy Code. |
| ***Sale Order*** | means the *Amended Order Granting Debtors' Motion For Order: Authorizing Sale Of Certain Tangible And Intangible Assets ("Purchased Assets"), Used In Connection With Debtors' Medical Practices; (A) Outside The Ordinary Course Of Business; (B) Free And Clear Of Liens, Claims, And Encumbrances; (C) Subject To Overbid; (D) For Determination Of Good Faith Purchaser Under 11 U.S.C. § 363(M); (E) For Waiver Of 14-Day Stay; And (F) Amending Bid Procedures* entered on the Docket on May 7, 2025, Docket No. 331. |
| ***Scheduled*** | means set forth on the Schedules. |
| ***Schedules*** | means the schedules of assets and liabilities filed by the Debtors pursuant to § 521 of the Bankruptcy Code and FRBP 1007, including any amendments and modifications thereto through the Confirmation Date. |
| ***Secured Claim*** | means a Claim that is secured by a Lien on property in which the Debtors or the Estates has an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law.  A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Estates' interest in the collateral, or to the extent of the amount subject to setoff, as the case may be, and as determined under § 506(a) of the Bankruptcy Code. |
| ***Unexpired Lease*** | means a lease to which the Debtors is a party and that is subject to assumption or rejection under § 365 of the Bankruptcy Code. |
| ***Unimpaired*** | means, with respect to a Claim, Interest or Class of Claims or Interests, not "impaired" within the meaning of such term in § 1124 of the Bankruptcy Code. |
| ***U.S. Trustee*** | means the Office of the United States Trustee for the Central District of California. |
| ***U.S. Trustee Fees*** | means fees or charges arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717. |
| ***Voting Deadline*** | means 5:00 p.m. (prevailing California time) on _____, 2025. |
| ***Voting Instructions*** | means the instructions for voting on the Plan contained in Section __ of the Disclosure Statement and the Ballots. |
| ***Voting Record Date*** | means __, 2025, the date designated by the Court set forth in the Disclosure Statement as the date for determining the Holders of Claims and Interests entitled to vote to accept or reject the Plan. |

7

**EXHIBIT 1**

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Agreement"), by and between Caduceus Physicians Medical Group, a Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS"), collectively referred to herein as "Debtors", the chapter 11 bankruptcy estates of the Debtors ("Estates"), and Howard B. Grobstein ("Trustee"), is executed in connection with the *Debtors' Chapter 11 Plan of Liquidation* ("Plan"). Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan.

## <u>RECITALS</u>

A. On August 1, 2024, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division ("Court"), which are jointly administered as Case No. 8:24-bk-11945-SC ("Case").

B. On _____, 2025, the Court entered an order confirming the Plan ("Confirmation Order").

C. The Plan provides for the creation of a post-confirmation liquidation trust ("Trust") to hold and administer the Trust Assets (defined below), to liquidate the non-Cash Trust Assets, and to distribute the proceeds of the Trust Assets to the Beneficiaries in accordance with the terms of the Plan and this Agreement.

D. The Trust is established for the sole purpose of liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d), with no objective or authority to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust, including the wind down and closure of the Estates.

E. The Trust is intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d) for United States federal income tax purposes.

F. The powers, authority, responsibilities and duties of the Trustee shall be governed by this Agreement, the Plan, the Confirmation Order, and other applicable orders issued by the Court.

G. This Agreement is intended to supplement, complement and implement the Plan. If any of the terms and/or provisions of this Agreement conflict with the terms and/or provisions of the Plan, the terms and/or provisions of the Plan shall govern.

1

# ARTICLE 1

## ESTABLISHMENT OF THE TRUST

1.1  <u>Establishment of Trust</u>.   Pursuant to the Plan, the Trust is hereby established on behalf of, and for the benefit of, the Beneficiaries.

1.2  <u>Appointment of Trustee</u>.  The Trustee has been selected pursuant to the terms of the Plan.  Confirmation of the Plan shall constitute the Court's approval of Howard B. Grobstein as Trustee, who shall hold such position until the Trustee's removal, resignation, or death.

1.3  <u>Purpose of the Trust</u>.  The Trust shall be established for the purpose of liquidating the Trust Assets and taking all actions necessary to wind down and close the Estates as set forth in the Plan, in accordance with Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Accordingly, the Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Trust Assets, make timely distributions, and not unduly prolong the duration of the Trust.  The liquidation of the Trust Assets may be accomplished either through the sale of Trust Assets (in whole or in combination), including the sale of any rights of action, or through the prosecution or settlement of any rights of action, or otherwise.  The Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan.

1.4  <u>Transfer of Assets and Rights to the Trustee</u>.

1.4.1  Except as provided otherwise in the Plan or this Agreement, as of the Effective Date, the Debtors and the Estates hereby transfer, assign, convey and deliver to the Trustee all of its right, title, and interest in each and every asset of the Debtors and the Estates free and clear of any lien, claim or interest of any other Person or Entity in such property ("Trust Assets").

1.4.2  The Trust Assets are transferred, assigned, conveyed and delivered to the Trustee subject to the following liabilities, if any: (a) any expenses incurred and unpaid, or to be incurred, by the Trustee in the performance of the Trustee's duties (including, without limitation, the filing of any tax returns and the payment of any taxes shown thereon, and any tax liability determined to be due and owing pursuant to requests for expedited determinations under Section 505 of the Bankruptcy Code); and (b) any obligations owing pursuant to the Plan and unpaid (including, without limitation, obligations incurred before the Effective Date and approved by Court order).

1.4.3  Upon the transfer of the Trust Assets, the Trustee shall succeed to all of the Debtors' and the Estates' right, title and interest in and to the Trust Assets and neither the Debtors nor the Estates will have any further interest in or with respect to the Trust Assets or this Trust.

1.4.4  The Trustee agrees to accept and hold the Trust Assets in trust on behalf of, and for the benefit of, the Beneficiaries, subject to the terms of this Agreement

EXHIBIT 1,  PAGE 41

and the Plan, and agrees to assume the role and duties of the Trustee as provided in this Agreement and the Plan.

          1.4.5     The Trustee shall be entitled to transfer to the Trust any and all assets of the Debtors and the Estates, and to execute and record any agreements, documents and instruments necessary to effectuate such transfer, in the Trustee's own name, on behalf of the Debtors and the Estates.

     1.5    <u>Treatment of Transfer of Trust Assets</u>.  The transfer of the Trust Assets to the Trust shall be made for the benefit of the Beneficiaries.  The Trust Assets shall be treated by all parties (including the Debtors, the Trustee, and the Beneficiaries) for tax purposes as being transferred (subject to the liabilities specified) by the Debtors or the Estate to the Beneficiaries, and then by the Beneficiaries to the Trust in exchange for a Liquidating Trust Interest, which interests shall be distributed by the Trustee to the Beneficiaries in exchange for their unpaid Claims against the Estates in accordance with the Plan.  The Beneficiaries of this Trust shall be treated as the grantors and owners hereof.

     1.6    <u>Reliance</u>.  The Trustee may rely upon the Debtors' filed schedules and statement of financial affairs and all other information provided by the Debtors or its representatives to the Trustee concerning Claims against the Estates, and the Debtors' reconciliation, if any, and other documents supporting such reconciliation.

     1.7    <u>Valuation of Trust Assets</u>.  The Trustee shall value the Trust Assets and assumed liabilities consistently for federal, state and local income tax purposes.  After the Effective Date, the Trustee, in reliance upon such professionals as the Trustee may retain, shall make a good faith valuation of the Trust Assets ("Trust Assets Valuation") within a reasonable time as determined by the Trustee.  Such valuation shall be made available from time to time, to the extent necessary or appropriate as reasonably determined by the Trustee in reliance on the Trustee's professionals, and used consistently by all parties (including, without limitation, the Trustee and the Beneficiaries) for federal, state and local income tax purposes.

     1.8    <u>Governance of the Trust</u>.  The Trust shall be governed by the Trustee subject to the provisions set forth in this Agreement, the Plan, the Confirmation Order, and other applicable orders issued by the Court.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Trust and not otherwise, except that the Trustee may deal with the Trust Assets for the Trustee's own account as provided herein.  Subject to the terms and conditions of this Agreement, the Trustee may delegate responsibility for discrete issues or decisions to third parties subject to continued oversight by the Trustee.

     1.9    <u>Funding of the Trust</u>.  The Trustee may from time to time make withdrawals from unencumbered Trust Assets in amounts and at times that the Trustee deems necessary or appropriate to fund any and all costs and expenses that the Trustee and the Trust incur subsequent to the Effective Date in accordance with this Agreement and the Plan.

3

EXHIBIT 1,  PAGE 42

1.10    <u>Name</u>.  The Trust shall be named and known as the Caduceus Liquidating Trust.

# ARTICLE 2

## LIQUIDATING TRUST INTERESTS

2.1    <u>Identification of Holders of Liquidating Trust Interests</u>.  The record Holders of Liquidating Trust Interests shall be the Holders of Class 1 Claims as set forth in the Plan.

2.2    <u>Transferability of Liquidating Trust Interests</u>.  Subject to compliance with applicable law, the Liquidating Trust Interests are transferable upon written notice to the Trustee; provided, however, that neither the Trust nor the Trustee shall take any steps, directly or indirectly, to facilitate the development of a secondary market in the Liquidating Trust Interests, including without limitation (a) listing the Liquidating Trust Interests on any national securities exchange or on the NASDAQ Stock Market, (b) placing advertisements designed to facilitate the transfer of the Liquidating Trust Interests, (c) distributing marketing materials regarding the Liquidating Trust Interests, or (d) collecting or publishing information regarding prices at which the Liquidating Trust Interests may be transferred.

2.3    <u>Holders of Liquidating Trust Interests Have No Rights in Connection with Administration of the Trust</u>.  Except as provided in the Plan, this Agreement grants exclusive authority over administration of the Trust to the Trustee.  Accordingly, Holders of Liquidating Trust Interests have no voting rights and no rights to administer the Trust.

# ARTICLE 3

## THE TRUSTEE

3.1    <u>Role of the Trustee</u>.  In furtherance of and consistent with the purpose of the Trust and the Plan, the Trustee shall, for the benefit of the Beneficiaries and subject to the provisions set forth in this Agreement and the Plan: (a) have the power and authority to hold, manage, and distribute the Trust Assets; (b) have the power and authority to hold, manage, and distribute the Cash or non-Cash Trust Assets obtained through the exercise of the Trustee's power and authority; and (c) have the power and responsibility to (i) take all actions necessary to implement the Plan, including objecting to any and all Claims underlying the Liquidating Trust Interests, (ii) file all required tax returns, and (iii) file and receive approval of a final report from the Court, all as may be provided for in additional and further detail below.

3.2    <u>Authority of Trustee</u>.  In connection with the administration of the Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Trustee is

EXHIBIT 1,  PAGE 43

authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Trust.  Except as otherwise provided in the Plan, nothing in this Agreement shall require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Trust, or as a condition for managing any payment or distribution out of the Trust Assets, although the Trustee may seek approval of the Court for any such action.  Without limiting, but subject to the foregoing, the Trustee shall be expressly authorized to:

3.2.1    hold legal title to any and all rights of the Holders of the Liquidating Trust Interests in or arising from the Trust Assets, including but not limited to collecting, receiving any and all money and other property belonging to the Trust and the right to vote any claim or interest in a case under the Bankruptcy Code and receive any distribution therein; provided, however, the Trustee shall have the power to cause legal title (or evidence of title) to any of the Trust Assets to be held by any nominee, on such terms and in such manner as the Trustee may determine;

3.2.2    commence, prosecute or settle objection to Claims, enforce contracts, and assert claims, defenses, offsets and privileges previously held by either the Debtors or the Estates;

3.2.3    protect and enforce the rights to the Trust Assets by any necessary or appropriate means, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

3.2.4    compromise, adjust, arbitrate, sue on or defend, pursue, prosecute, file, abandon, settle or otherwise resolve, claims and rights of action in favor of, or against the Debtors, the Estates, the Trust and the Trustee, including those based upon Sections 544, 547, 548, 549, 550, 551 or 553(b) of the Bankruptcy Code, as the Trustee deems advisable, and to take any and all actions necessary or appropriate to the foregoing;

3.2.5    avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law, including those identified in the Disclosure Statement, if any;

3.2.6    determine and satisfy any and all liabilities created, incurred or assumed by the Trust;

3.2.7    file all tax and information returns with respect to the Trust and pay taxes properly payable by the Trust, if any, including income taxes and employment taxes;

3.2.8    exercise any and all rights afforded a debtor under Section 505 of the Bankruptcy Code to request a prompt determination of federal and state tax liabilities of the Debtors or the Estates, whether such liabilities were incurred prior to the Petition Date,  during the pendency of the Case, or before the Effective Date;

3.2.9    execute offsets against claims as provided for in the Plan;

5

3.2.10    assert or waive any privilege or defense on behalf of the Trust, the Debtors, or the Estates;

3.2.11    pay any expense incurred by the Trust or the Trustee in the course of administering the Trust;

3.2.12    pay any Court-approved fees and reimburse expenses of any professionals or employees employed by the Debtors or the Estates;

3.2.13    at the expense of the Trust, and in Trustee's sole discretion, obtain insurance coverage with respect to the liabilities and obligations of the Trustee under this Agreement (in the form of an errors and omissions policy or otherwise);

3.2.14    obtain insurance coverage with respect to real and personal property which may become Trust Assets, if any;

3.2.15    retain and pay legal counsel to the Trust (including any law firm or attorney previously retained by the Debtors or the Estates to aid in the administration of the Trust, to prosecute or defend any claims or rights of action that constitute the Trust Assets, and to perform such other functions as may be appropriate;

3.2.16    retain and pay one or more public accounting firms or public accountants (including any accounting firm or public accountant previously retained by the Debtors or the Estates) to perform such reviews and/or audits of the financial books and records of the Trust, if any, as may be appropriate and to prepare and file any tax returns or information returns for the Trust as may be required;

3.2.17    retain and pay any other professionals (including any other professionals previously retained by the Debtors or the Estates) to assist the Trustee in carrying out the powers and duties of the Trustee under this Agreement;

3.2.18    employ one or more employees (including employees previously retained by the Debtors or the Estates) to assist the Trustee in carrying out the powers and duties of the Trustee under this Trust Agreement;

3.2.19    invest any moneys held as part of the Trust in accordance with the terms of Section 3.14 hereof, limited to such investments that are consistent with the Trust's status as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d);

3.2.20    request any appropriate tax determination with respect to the Trust, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

3.2.21    seek the examination of any Entity under, and subject to, the provisions of FRBP 2004;

3.2.22    seek estimation of contingent or unliquidated claims under Section 502(c) of the Bankruptcy Code;

3.2.23    sell, auction, lease, rent, encumber or transfer any Trust Assets, consistent with the purposes of the Trust as the Trustee shall deem advisable, and to take any and all actions necessary or appropriate to accomplish the foregoing; provided that the Trustee shall give notice and opportunity for hearing to the U.S. Trustee and all parties requesting special notice in connection with sales of Trust Assets, unless otherwise ordered by the Court;

3.2.24    except as otherwise provided in the Plan, abandon any Trust Assets that cannot be sold or otherwise disposed of for value and whose distribution to Holders of Liquidating Trust Interests would not be feasible or cost-effective based on the judgment and discretion of the Trustee;

3.2.25    file with the Court the reports and other documents required by the Plan or otherwise required to close the Case;

3.2.26    appear in, defend, or otherwise be heard as a party in interest in (a) appeals from the Confirmation Order and any proceedings related thereto; (b) proceedings related to the enforcement or interpretation of the Plan or this Agreement; (c) proceedings related to modifications or amendments to the Plan or this Agreement; (d) proceedings related to the establishment and administration of the Trust; and (e) proceedings related to the allowance of claims for compensation or expenses of counsel, accountants, professionals or employees employed by the Debtors, the Estates, the Trustee, or the Trust;

3.2.27    file motions with the Court seeking instruction or approval of any matter affecting the administration of the Trust;

3.2.28    take, or refrain from taking, any and all actions the Trustee reasonably deems necessary for the continuation, protection and maximization of the Trust Assets or to carry out the purposes hereof; and

3.2.29    retain and employ any professionals or employees, as provided herein, with approval of the Court.

3.3    Limitation of Trustee's Authority.

3.3.1    The Trustee shall have no power or authority except as set forth in this Agreement, the Plan, or Confirmation Order.

3.3.2    Notwithstanding anything herein to the contrary, the Trustee is not authorized to engage in any trade or business, and shall not take actions inconsistent with (a) the orderly liquidation of the Trust Assets and distributions to Beneficiaries as are required or contemplated by applicable law, the Plan and this Agreement, or (b) the actions necessary to wind down and dissolve the Trust.  The Trustee is not authorized to

EXHIBIT 1,  PAGE 46

engage in any investments or activities inconsistent with the treatment of the Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

3.3.3    The Trustee shall not commingle any of the Trust Assets with the Trustee's own property or the property of any other Person, or Entity.

3.3.4    Neither the Trust nor the Trustee shall take any action that would result in the Trust becoming subject to registration as an "investment company" pursuant to the Investment Company Act of 1940, as amended.

3.4    Books and Records.

3.4.1    The Trustee shall have access to the books and records of the Debtors and the Estates, as may be needed to fulfill the actions set forth herein.

3.4.2    The Trustee shall maintain books and records relating to the Trust Assets, income of the Trust, and the payment of expenses of, and liabilities of claims against or assumed by, the Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof.  Such books and records shall be maintained, at the Trustee's discretion, on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Trust.

3.4.3    Subject to all applicable privileges, the Beneficiaries shall have the right, upon twenty (20) days' prior written notice to the Trustee, to request a reasonable inspection of the books and records held by the Trustee.  All reasonable costs associated with such inspection shall be paid by such requesting Beneficiary.  The Trustee may require, to the extent the Trustee deems it necessary or appropriate, that any Beneficiary requesting information enter into a confidentiality agreement satisfactory in form and substance to the Trustee prior to obtaining the information.  Nothing in this Agreement provides any Beneficiary with a right to review, inspect, seek discovery of, or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

3.4.4    One (1) year after dissolution of the Trust, the Trustee is authorized to destroy any and all books and records without further notice or Court order, unless the Court has ordered otherwise.  The Trustee may move the Court for entry of an order authorizing the destruction of any and all books and records prior to expiration of the one (1) year period following dissolution of the Trust.

3.5    Additional Powers.  Except as otherwise set forth in this Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and the retained jurisdiction of the Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Assets and over the protection, conservation and disposition thereof.  No Person dealing with the Trust shall be obligated to inquire into the authority of the Trustee in connection with the protection, conservation or disposition of the Trust Assets.

EXHIBIT 1,  PAGE 47

3.6     Tax and Reporting Duties of the Trustee.

3.6.1     Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustee), the Trustee shall file returns for the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a).

3.6.2     The Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, including, without limitation, any requirements imposed with respect to Distributions (defined below) hereunder and under the Plan.

3.6.3     The Trustee shall file (or cause to be filed) any other statements, returns, reports or disclosures relating to the Trust that are required by any governmental authority, and all such statements, returns, reports or disclosures shall be prepared in reasonable detail in accordance with all applicable laws.

3.7     Compliance with Laws.  Any and all Distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable federal and state laws.  The Trustee may withhold a Distribution from any Beneficiary if the Trustee is unable, after reasonable investigation, to obtain taxpayer identification information for any Beneficiary sufficient to permit the Trustee to make any Distribution in compliance with applicable law.

3.8     Confidentiality.  The Trustee shall forever hold in strict confidence and not use for personal gain any material, non-public information of or pertaining to the Trust Assets, or the operation of the Trust and any other entity to which any of the Trust Assets may at any time relate.

3.9     Expense Reimbursement and Compensation to the Trustee.

3.9.1     The Trustee shall be entitled to reimbursement out of any available Cash in the Trust for the Trustee's actual, necessary out-of-pocket expenses and against and from any and all loss, liability, or damage which the Trustee actually sustains in good faith and without misconduct, negligence, or fraud in the exercise and performance of any of the Trustee's powers and duties under this Trust.

3.9.2     As compensation for the performance of the Trustee's duties, the Trustee shall be compensated for actual and necessary services rendered at the following initial hourly rate:  For services rendered by Howard B. Grobstein, $700 per hour.  No more than once per calendar year, the Trustee may increase the hourly rate upon ten (10) days' written notice, filed with the Court in the Case, provided that any such annual increase shall not exceed five percent (5.0%).

3.9.3     Upon the request of a Beneficiary, within ten (10) business days following the Trustee's receipt of any such request, the Trustee shall make available all

EXHIBIT 1,  PAGE 48

billing statements concerning (a) the actual and necessary services for which the Trustee and the Trustee's staff, if any, were compensated, and (b) the actual and necessary expenses for which the Trustee received reimbursement.

3.10    <u>Costs and Expenses of the Trustee</u>.  All costs and expenses of the Trustee and the Trust shall be borne by and as a charge against the Trust Assets.  The Trustee, in conjunction with its counsel, shall undertake reasonable best efforts to review each Cause of Action before such claims are filed, to determine the viability, chance of success, and potential recovery on such claim; and the Trustee shall not file a particular claim if that review indicates that, in the Trustee's sole discretion, the chance of success of any particular Cause of Action is low and/or the possible recovery on the Cause of Action is minimal.

3.11    <u>Compensation Procedures</u>.  The Trustee and all professionals employed by the Trustee shall be entitled to payment of their fees and reimbursement of all reasonable expenses on a monthly basis in accordance with the Plan.  Applications for compensation and reimbursement of expenses shall be filed in accordance with the Plan.

3.12    <u>Reliance by Trustee</u>.

3.12.1    The Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.

3.12.2    The Trustee may consult with and shall not be liable for any actions taken or suffered by the Trustee in accordance with the advice of such counsel and other professionals, and may also consult with and rely upon accountants and former consultants or advisors of the Debtors or the Estates, present and former officers, directors and consultants of the Debtors' affiliates or subsidiaries.

3.13    <u>Reliance by Persons Dealing with the Trust</u>.  Persons dealing with the Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Trustee to such Person in carrying out the terms of this Agreement, and the Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Trustee are determined by a Final Order to be solely due to the Trustee's gross negligence, fraud or willful misconduct.

3.14    <u>Investment and Safekeeping of Trust Assets</u>.  The right and power of the Trustee to invest Trust Assets, the proceeds thereof, or any income earned by the Trust, shall be limited to the right and power that a Trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

3.15    <u>Authorization to Expend Trust Assets</u>.  The Trustee may expend the Trust Assets: (a) as reasonably necessary to maintain the value of the Trust Assets during liquidation: (b) to pay all costs and expenses of the Trust (including, without limitation,

10

any taxes imposed on the Trust); and (c) to satisfy all other liabilities incurred or assumed by the Trust (or to which the Trust Assets are otherwise subject) in accordance with this Agreement, the Plan, or an order of the Court.

3.16    <u>Termination</u>.  The duties, responsibilities and powers of the Trustee will terminate on the date the Trust is dissolved under applicable law in accordance with the Plan, Article 8 of this Agreement, or by an order of the Court.

3.17    <u>Reliance</u>.  Any Person dealing with the Trustee shall be fully protected in relying upon the Trustee's certificate or instrument signed by the Trustee that the Trustee has authority to take any action under this Trust.

3.18    <u>Trustee's Funds</u>.  No provision of this Agreement or the Plan shall require the Trustee to expend or risk the Trustee's own funds or otherwise incur any financial liability in the performance of any of the Trustee's duties as Trustee hereunder or under the Plan, or in the exercise of any of the Trustee's rights or powers, if the Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Trustee against such risk or liability is not reasonably assured to the Trustee.

3.19    <u>Bond</u>.  The Trustee shall serve without a bond.

3.20    <u>Confidentiality</u>.  The Trustee shall, (a) while serving as Trustee under this Agreement, (b) following the termination of this Agreement, or (c) following the earlier of the Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Assets relates or of which he has become aware in the Trustee's capacity as Trustee.

## ARTICLE 4

## DISTRIBUTIONS

4.1    <u>Distribution; Withholding</u>.  The Trustee shall distribute from the Trust to the Beneficiaries whose underlying Claims are Allowed, Cash on hand (including, without limitation, all net Cash income plus all net Cash proceeds from the Trust Assets, including, without limitation, as Cash for this purpose, all permissible investments described in Section 2.13) from the Trust to the Beneficiaries (such distributions being referred to herein as "**Distributions**").  The timing and amount of such Distributions shall be at the Trustee's discretion and in accordance with Section VI of the Plan.

4.2    <u>Reserve for Disputed Claims</u>.  When a Distribution is made, the Trustee shall reserve from the Distribution an amount equal to the Pro Rata amount that would have been distributed to the Beneficiaries holding Disputed Claims had the Disputed Claims been Allowed Claims at the time of the Distribution.  In the event a Disputed Claim is ultimately Allowed, the Beneficiary holding the previously Disputed Claim shall receive

EXHIBIT 1,  PAGE 50

the Beneficiary's Pro Rata share of the reserved Distribution.  The Trustee shall follow the procedures for objecting to Disputed Claims as set forth in Section IX of the Plan.

4.3    Undeliverable Distributions. If the Distribution to a Trust Beneficiary is returned to the Trustee as undeliverable ("Undeliverable Distributions"), no further Distribution shall be made to such Trust Beneficiary unless and until the Trustee is notified in writing of such Trust Beneficiary's then current address. Undeliverable Distributions shall remain in the possession of the Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such Undeliverable Distribution becomes an Unclaimed Distribution under this Agreement and the Plan.  The Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, provided, however, to the extent consistent with the Plan, this Agreement shall not require the Trustee to locate any Trust Beneficiary.

4.4    Unclaimed Distributions.  Any entity which fails to claim any Cash within 90 days from the date upon which a Distribution is first made to such entity ("Unclaimed Distribution") shall forfeit all rights to any distribution under the Plan, and the Trustee shall be authorized to cancel any distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (i.e., the Trust) free of any restrictions under the Plan, the Bankruptcy Code or the FRBP. Upon forfeiture, the claim of any creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the Debtors, the Estates, and the Trustee, notwithstanding any federal or state escheat laws to the contrary, and such creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom distributions are made.

4.5    Allocation of Tax Items.

4.5.1    Unless otherwise required by applicable tax law, items of income, gain, loss and deduction recognized or incurred by the Trust and the amount of distributions received by the Trust shall be allocated Pro Rata among the Beneficiaries who are entitled to receive Distributions in the tax year in accordance with this Agreement and the Plan.

4.5.2    Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Trustee shall:

(a)    treat all Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(b)    on the last day of each calendar year, to the extent there is a reserve for Disputed Claims on that date, treat as taxable income or loss of this separate trust, the portion of the annual taxable income or loss of the Trust that would have been

12

allocated to the Holders of such Disputed Claims had such Disputed Claims been Allowed on the Effective Date;

(c)    treat as a distribution from this separate trust any increased amounts distributed by the Trust as a result of any Disputed Claim resolved earlier in the taxable year; and

(d)    to the extent permitted by applicable law, report consistently for state and local income tax purposes.

# ARTICLE 5

## SUCCESSOR TRUSTEE

5.1    <u>Resignation of Trustee</u>.  The Trustee may resign by giving written notice thereof filed with the Court and served on the Beneficiaries.  Such resignation shall become effective on the earlier to occur of: (a) sixty (60) days after the filing of such notice, or (b) the appointment of a successor and the acceptance by such successor of such appointment.

5.2    <u>Removal of Trustee</u>.  The Trustee may be removed by the Court, for Cause, upon motion of a Beneficiary.  For purposes of this Section, "**<u>Cause</u>**" means (a) willful misconduct, gross negligence or fraud by the Trustee in connection with the affairs of the Trust, (b) such physical or mental disability as substantially prevents the Trustee from performing the Trustee's duties as Trustee hereunder, or (c) a breach of fiduciary duty or an unresolved material conflict of interest.  Such removal shall become effective on the date specified by the Court.  In the event such removal occurs, a notice of the identity of the successor Trustee shall be filed with the Court and served on the Beneficiaries.

5.3    <u>Appointment of Successor Trustee upon Resignation, Removal, or Death</u>.  If the Trustee resigns pursuant to Section 5.1, is removed pursuant to Section 5.2, or dies, the Court shall appoint a successor Trustee.  Any successor Trustee appointed hereunder shall execute and file a statement accepting such appointment and agreeing to be bound by the terms of the Plan and this Agreement.  Upon such filing, the successor Trustee shall immediately become vested with all the rights, powers, trusts and duties of the Trustee. Notice of such successor Trustee shall be filed with the Court and served on the Beneficiaries.

5.4    <u>Acceptance of Appointment by Successor Trustee</u>.  Any successor Trustee appointed pursuant to this Article 5 shall execute an instrument accepting such appointment as the Trustee under this Agreement and shall file and maintain such acceptance with the books and records of the Trust.   Upon acceptance of such appointment as aforesaid, such successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Trust with like effect as if originally named herein; provided, however, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the

EXHIBIT 1,  PAGE 52

successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Trust all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

# ARTICLE 6

## EXCULPATION AND INDEMNIFICATION

6.1     Standard of Care/Exculpation.  Except in the case of willful misconduct, gross negligence or fraud, the Trustee and the Trustee's attorneys, accountants, professionals, employees and any other duly designated agents or representatives shall not be liable for any loss or damage by reason of any action taken or omitted by them in their capacity as Trustee or attorney, accountant, professional, employee or other agent or representative of the Trustee.

6.2     No Liability for Acts of Predecessor Trustees.  No successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility.

6.3     No Implied Obligations.  The Trustee shall not be liable for any duties or obligations except for the performance of such duties and obligations as are specifically set forth herein and in the Plan, and no implied covenants or obligations shall be read into this Agreement.

6.4     No Personal Liability.  Persons dealing with the Trust must look solely to the Trust or Trust Assets for the enforcement of any claims against the Trust or to satisfy any liability incurred by the Trustee to such Persons in carrying out the terms of the Trust, and neither the Trustee nor any other Person shall have any personal liability or individual obligation to satisfy any such liability.

6.5     Indemnification.  The Trust shall indemnify and hold harmless the Trustee and the Trustee's attorneys, accountants, professionals, employees and all other duly designated agents and representatives from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Trust or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.  The Trustee shall only be entitled to indemnification from the Trust under this Section to the extent that the Trustee is not covered by insurance, if any.

6.6     Advancement.  If the Trustee becomes involved in any action, proceeding, or investigation in connection with any matter arising out of or in connection with this Agreement, the Plan, or the affairs of the Trust, the Trust shall periodically advance or otherwise reimburse on demand the Trustee's reasonable legal and other expenses (including the cost of any investigation, and attorneys' fees, disbursements and related

EXHIBIT 1,  PAGE 53

expenses) incurred in connection therewith.  The Trustee shall be required to repay promptly to the Trust the amount of any such advanced or reimbursed expenses paid to the Trustee to the extent that it is ultimately determined that the Trustee engaged in willful misconduct, gross negligence, or fraud in connection with the affairs of the Trust with respect to which such expenses were paid.

# ARTICLE 7

## REPORTS

7.1    <u>Securities Laws Reporting</u>.  Under Section 1145 of the Bankruptcy Code, the issuance of Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration of securities, if applicable.  If the Trustee determines that the Trust is required to comply with the registration and reporting or other requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, the Trustee shall take any and all actions to comply with, or qualify for exemption from, such reporting or other requirements and to file periodic reports with the Securities and Exchange Commission as necessary.

7.2    <u>Tax Reporting</u>.  Promptly following the end of each calendar year, the Trustee shall submit to each Beneficiary appearing on its records during such year a separate statement setting forth the Beneficiary's share of items of income, gain, loss, deduction or credit.  The Trust's tax return shall suffice.  The Trust's taxable income, gain, loss, deduction, and credit shall be allocated Pro Rata to the Beneficiaries in accordance with such Beneficiaries' respective beneficial interests in the Trust Assets.  In addition, the Trustee shall file all tax returns required to be filed and shall pay all taxes on such returns, if any, from the Trust Assets.  The Trustee shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Trust that are required by any governmental authority.

7.3    <u>Reporting to the U.S. Trustee</u>.  If and as required by the Plan, the Confirmation Order or the Court, the Trustee shall file reports with the Office of the United States Trustee ("U.S. Trustee") (if required by the U.S. Trustee) and shall promptly pay any and all fees assessed by the U.S. Trustee; provided, however, that the Trustee shall only be required to file such periodic reports and pay such fees to the extent required by the U.S. Trustee and the Court, as the case may be.  The funding for such payments shall be pursuant to Section 3.10.

7.4    <u>Other Reporting</u>.  If and as required by the Plan, the Confirmation Order or the Court, the Trustee shall cause to be prepared such reports as are required or advisable to provide: (a) a report of annual receipts and disbursements, (b) a schedule of all asset dispositions, (c) a schedule of Distributions made, (d) a summary listing of the status of the resolution of Causes of Action and objections to Claims, (e) the status of any Trust Assets not yet distributed, and (f) a list of payments made to Trust Professionals.

EXHIBIT 1,  PAGE 54

## ARTICLE 8

## TERMINATION AND FINAL DISTRIBUTION

8.1     <u>Termination of Trust</u>.  The Trust shall terminate on the earlier of: (a) thirty (30) days after the full and final Distribution of the Trust Assets or proceeds thereof in accordance with the terms of this Agreement and the Plan, or (b) the fifth (5th) anniversary of the Effective Date; provided, however, that within six months of the fifth (5th) anniversary of the Effective Date, the Court, upon a motion by the Trustee or any party in interest, may extend the term of the Trust for an additional term of not more than five (5) years if it is necessary for the liquidation of the Trust Assets.  Notwithstanding the foregoing, the Trustee shall not unduly prolong the duration of the Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all property and Claims that constitute Trust Assets and to effect the full and final Distribution of the Trust Assets to the Beneficiaries in accordance with the terms hereof and the Plan and, thereafter, terminate the Trust as soon as practicable.  Notwithstanding anything to the contrary herein, any termination of the Trust is conditioned upon payment of all costs and fees payable to the U.S. Trustee and filing and receiving Court approval of an order to close the Case.

8.2     <u>Final Distribution</u>.  Prior to and upon termination of the Trust, the Trust Assets will be finally distributed to the Beneficiaries pursuant to the provisions set forth herein.  If any Trust Assets are not duly claimed, such Trust Assets will be redistributed to all other Beneficiaries on a Pro Rata basis in accordance with the terms of this Agreement and the Plan.

8.3     <u>Remainder Amounts After Final Distribution</u>.  After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $10,000, the Trustee may donate such amount to a non-profit organization agreeable to counsel for the Debtors.

8.4     <u>De Minimis Distributions</u>.  If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Trustee may withhold such distribution until a final distribution is made to such Holder. If any final distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Trustee may cancel such distribution. Any potential distributions pursuant to this Section shall be treated as an Unclaimed Distribution.

## ARTICLE 9

## AMENDMENT AND WAIVER

9.1     <u>Amendment and Waiver</u>.  Any substantive provision of this Agreement may be amended, modified, supplemented or waived by the Trustee upon approval of the

EXHIBIT 1,  PAGE 55

Court. Any amendment, modification or supplement to this Agreement shall not be inconsistent with the purpose and intention of the Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with the Plan and Treasury Regulations Section 301.7701-4(d).

# ARTICLE 10

## MISCELLANEOUS PROVISIONS

10.1    <u>Intention of Parties to Establish Liquidating Trust</u>.  This Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent with such intent and purpose.  If necessary, this Agreement may be amended to comply with such federal income tax laws, which amendments may be made to apply retroactively.

10.2    <u>Preservation of Privilege and Defenses</u>.  Any attorney-client privilege, work-product privilege or other privilege or immunity to which the Debtors or the Estates are entitled shall vest in the Trust, and the Trustee shall be entitled to assert such privilege or immunity to the extent that the Debtors or the Estates would be entitled prior to the Effective Date.  The Trustee shall be entitled to waive any privilege or immunity in the Trustee's sole discretion.

10.3    <u>Cooperation and Further Assurances of the Debtors and Estates</u>.  The Debtors and the Estates shall, upon reasonable request of the Trustee, execute, acknowledge, and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Trustee any portion of the Trust Assets intended to be conveyed in the form and manner provided for in the Plan and to vest in the Trustee the powers, instructions, or funds in trust hereunder.  The Debtors and the Estates, for itself and any predecessor or successor entity, hereby disclaims and waives any and all rights to any reversionary interests in any of the Trust Assets.  The Debtors and the Estates shall upon the request of the Trustee relinquish to the Trustee its books and records.

10.4    <u>Prevailing Party</u>.  If the Trustee or the Trust, as the case may be, is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, the Trustee or the Trust, as the case may be, shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

10.5    <u>Laws as to Construction</u>.  This Agreement shall be governed and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws, and federal bankruptcy law to the extent applicable.

10.6    <u>Retention of Jurisdiction</u>.  To the fullest extent permitted by law, the Court shall retain exclusive jurisdiction to resolve any matters concerning the interpretation and enforcement of this Agreement, and any disputes arising under or in connection with

17

this Agreement between or among the Trustee, the Trust, any Beneficiary, and/or any other party in interest.

10.7    <u>Severability</u>.  If any provision of this Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

10.8    <u>Notices</u>.  Any notice or other communication under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

| | |
|---|---|
| If to the Trustee: | Howard B. Grobstein<br>6300 Canoga Avenue<br>Suite 1500W<br>Woodland Hills CA 91367 |
| with a copy to: | David A. Wood<br>Matthew Grimshaw<br>Aaron E. de Leest<br>Marshack Hays Wood LLP<br>870 Roosevelt<br>Irvine, CA 92620 |
| If to a Beneficiary: | For each Beneficiary that is a creditor, notices shall be sent to the address on such Holder's Proof of Claim filed with the Court (or if no Proof of Claim has been filed, the address shown for such claimant in the Debtors' schedules), unless such Beneficiary has since (a) filed a change of address notification with the Court, or (b) following the Effective Date, notified the Trustee in writing of such Beneficiary's change of address. |

10.9    <u>Headings</u>.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

10.10    <u>Integration</u>.  This Agreement and the Plan constitute the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.

10.11    <u>Further Assurances</u>.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all

18

such further actions as may reasonably be required from time to time to carry out the intent and purposes of the Trust and to consummate the transactions contemplated hereby.

10.12  <u>Successors and Assigns</u>.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto, and their respective successors and assigns.

10.13  <u>Agreement Purpose and Plan Incorporation</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and therefore this Agreement incorporates the provisions of the Plan.  If any provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

10.14  <u>Counterparts</u>.  This Agreement may be signed by the parties hereto in counterparts, which, taken together, shall constitute one and the same document, and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

DATED: _____, 2025        **CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION DBA CADUCEUS MEDICAL GROUP AND CADUCEUS MEDICAL SERVICES, LLC**

_____
By:    Howard B. Grobstein
Its:    Chief Restructuring Officer on behalf of the Debtors and the Debtors' Bankruptcy Estates

**LIQUIDATING TRUSTEE**

_____
Howard B. Grobstein

19

EXHIBIT 1, PAGE 58

**EXHIBIT 2**

**[INTENTIONALLY LEFT BLANK]
TO BE PROVIDED**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 25, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **November 25, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
CADUCEUS MEDICAL SERVICES LLC
18200 YORBA LINDA BLVD STE 111
YORBA LINDA, CA 92886-4043

**DEBTOR / CREDITOR / POC ADDRESS**
CADUCEUS PHYSICIANS MEDICAL GROUP, A
PROFESSIONAL CORPORATION
18200 YORBA LINDA BLVD STE 111
YORBA LINDA, CA 92886-4043

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 25, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY – VIA PERSONAL DELIVERY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR'S CHIEF RESTRUCTURING OFFICER**
HOWARD GROBSTEIN
hgrobstein@gtllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 25, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **INTERESTED PARTY COURTESY NEF:** Samuel Mushegh Boyamian samuel@marguliesfaithlaw.com, Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com; Amber@MarguliesFaithLaw.com
- **ATTORNEY FOR SECURED CREDITOR BMO BANK NATIONAL ASSOCIATION:** Christopher Crowell ccrowell@hrhlaw.com
- **ATTORNEY FOR DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Aaron E. De Leest on behalf adeleest@marshackhays.com, adeleest@marshackhays.com, alinares@ecf.courtdrive.com
- **INTERESTED PARTY COURTESY NEF:** Jeremy Faith Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com; Amber@MarguliesFaithLaw.com
- **SPECIAL COUNSEL ARENTFOX SCHIFF LLP:** M Douglas Flahaut df@echoparklegal.com
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Matthew Grimshaw mgrimshaw@marshackhays.com, mgrimshaw@ecf.courtdrive.com; alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR REGAL MEDICAL GROUP, INC.:** Payam Khodadadi pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- **INTERESTED PARTY COURTESY NEF:** Marc A Lieberman marc.lieberman@flpllp.com, addy@flpllp.com, andrea@flpllp.com
- **SPECIAL COUNSEL ARENTFOX SCHIFF LLP:** Aram Ordubegian ordubegian.aram@arentfox.com
- **ATTORNEY FOR CREDITOR BATES JOHNSON BUILDING, LTD.:** Brett Ramsaur    brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com
- **ATTORNEY FOR CREDITOR ROMANOV GROUP, LLC:** Jeremy H Rothstein    jrothstein@gblawllp.com, msingleman@gblawllp.com;mbowes@gblawllp.com
- **INTERESTED PARTY COURTESY NEF:** Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Ronghua Sophia Wang sophia.wang@afslaw.com
- **INTERESTED PARTY COURTESY NEF:** Pamela Kohlman Webster pwebster@buchalter.com, smartin@buchalter.com
- **ATTORNEY FOR SECURED CREDITOR DESPIERTA, LLC, ITS SUCCESSORS AND/OR ASSIGNEES:** Reilly D Wilkinson rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; spineda@ecf.courtdrive.com; alinares@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**