MATTHEW W. GRIMSHAW, #210424
grimshaw@marshackhays.com
DAVID A. WOOD, #272406
dwood@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt, Irvine, CA 92620
Telephone: 949-333-7777
Facsimile: 949-333-7778

Attorneys for Debtor,
CADUCEUS PHYSICIANS MEDICAL GROUP,
a Professional Medical Corporation, dba
CADUCEUS MEDICAL GROUP and
CADUCEUS MEDCAL SERVICES, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP,<br><br>Debtor.<br><br>☒   ALL DEBTORS<br><br>☐   Caduceus Physicians Medical Group, dba Caduceus Medical Group, ONLY<br><br>☐   Caduceus Medical Services, LLC, ONLY | Case No. 8:24-bk-11945-SC<br><br>Chapter 11<br><br>(Jointly Administered with 8:24-bk-11946-SC)<br><br>DEBTORS' CHAPTER 11 STATUS REPORT<br><br>Hearing:<br>Date:  December 10, 2025<br>Time:  1:30 p.m.<br>Ctrm:  5B<br>Place:  411 West Fourth Street<br>        Santa Ana, CA 92701 |

TO THE HONORABLE SCOTT C. CLARKSON UNITED STATES BANKRUPTCY COURT

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED

PARTIES:

/ / /

/ / /

/ / /

Debtors and Debtors-in-Possession, Caduceus Physicians Medical Group, a Professional Medical Corporation, dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS," and collectively with CPMG, the "Debtors") submit this status report in advance of the December 10, 2025, status hearing, and to provide all parties in interest an updated Chapter 11 status report.

**1.    The Bid Procedure, Sale Motion, and the close of the Sale**

On February 5, 2025, as Dk. No. 211, the Debtors' filed a motion for approval of sale and bidding procedures for sale of certain tangible and intangible assets ("Purchased Assets"), used in connection with Debtors' medical practices operated at the Debtors' clinic located at 18200 Yorba Linda Boulevard, Suite 111, Yorba Linda, California 92886 (the "Clinic," and the medical practices operated at the Clinic referred to herein as the "Business") ("Bid Procedure Motion"). Through the Bid Procedure Motion, the Debtors' set forth the schedule for the marketing, and sale of the Debtors' assets. On February 12, 2025, the Court entered an order approving the Bid Procedure Motion ("Bid Procedures Order").

On February 26, 2025, as Dk. No. 248, the Debtor filed a motion to approve the sale under the Bid Procedures Order ("Sale Motion"), and thereafter, on April 4, 2025, the Court entered an order approving the Sale Motion ("Sale Order"). A true and correct copy of the Sale Order is attached here as Exhibit "1." Pursuant to the Sale Order, the Purchased Assets (as defined in the Sale Motion and Sale Order) were to be sold to Regal Medical Group, Inc. ("Buyer"). However, as disclosed at the hearing on the Sale Motion, the underlying APA (as defined in the Sale Motion and Order) had a contingency whereby the Buyer and the landlord for the Yorba Linda Property ("YL Landlord") had to come to terms on a lease as a condition precedent to closing. Unfortunately, the Buyer and the YL Landlord were unable to come to an agreement, and the Buyer informed the Debtors that they were terminating the sale contemplated in the APA, Sale Motion, and Sale Order.

Fortunately, the Debtors anticipated this issue, and through the Sale Order, the Court authorized that "[i]f Buyer fails to consummate the Sale on the terms set forth in the APA, then Debtors are authorized to consummate a transaction with the Back-up Bidder." *See* Ex. 1, pg. 9, ¶¶26 & 27. On May 6, 2025, as Dk. No. 330, the Debtors filed a "notice of submission of back up bidder

fully executed asset purchase agreement," ("Notice of Backup Bid") whereby Anchor Medical Group P.C., and Anchor Medical Management, Inc., ("Anchor") submitted a fully executed asset purchase agreement. On May 7, 2025, as Dk. No. 331, the Court entered a supplemental sale order approving the Notice of the Backup Bid and the sale to Anchor ("Supplemental Sale Order"). A true and correct copy of the Supplemental Sale Order is attached here as Exhibit "2."

The Debtors are pleased to report that the sale contemplated in the Notice of Backup Bid and Amended Sale Order successfully closed on or about May 9, 2025.

## 2.    The Plan and Disclosure Statement

On September 2, 2025, as Dk. Nos. 375 and 376, Debtors filed their Chapter 11 Plan of Liquidation and Disclosure Statement respectively. On September 2, 2025, as Dk. No. 377, Debtor filed a Motion for approval of chapter 11 disclosure statement. The hearing for the approval of the Disclosure Statement is scheduled for December 10, 2025, at 1:30 p.m. The Debtor has received negotiated certain language in the exculpation and release clauses of the Plan and Disclosure with the Office of the United States Trustee ("UST"). Contemporaneously with the filing of the instant status report, the Debtors will be filing a first amended Chapter 11 Plan of Liquidation and Disclosure Statement which reflects the negotiated language with the UST. As of the filing of this instant status conference, no other objections and/or oppositions were filed as to the Disclosure Statement.

Dated:  November 24, 2025          MARSHACK HAYS WOOD LLP

                                                        /s/ David A. Wood
                                            By: _____
                                                  MATTHEW W. GRIMSHAW
                                                  DAVID A. WOOD
                                                  ATTORNEYS FOR CADUCEUS PHYSICIANS
                                                  MEDICAL GROUP, A PROFESSIONAL
                                                  MEDICAL CORPORATION, DBA
                                                  CADUCEUS MEDICAL GROUP AND
                                                  CADUCEUS MEDICAL SERVICES LLC

**EXHIBIT 1**

1  MATTHEW W. GRIMSHAW, #210424
   mgrimshaw@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  AARON E. DE LEEST, #216832
   adeleest@marshackhays.com
4  MARSHACK HAYS WOOD LLP
   870 Roosevelt, Irvine, CA 92620
5  Telephone: 949-333-7777
   Facsimile: 949-333-7778
6

7  Attorneys for Debtor,
   CADUCEUS PHYSICIANS MEDICAL GROUP,
   a Professional Medical Corporation, dba
8  CADUCEUS MEDICAL GROUP and
   CADUCEUS MEDCAL SERVICES, LLC
9

| | FILED & ENTERED |
|---|---|
| | **APR 04 2025** |
| | CLERK U.S. BANKRUPTCY COURT |
| | Central District of California |
| | BY deramus DEPUTY CLERK |

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:24-bk-11945-TA |
| CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation, dba CADUCEUS MEDICAL GROUP, | Chapter 11 |
| | (Jointly Administered with 8:24-bk-11946-TA) |
| Debtor. | |
| ☒   ALL DEBTORS | ORDER GRANTING DEBTORS' MOTION FOR ORDER: AUTHORIZING SALE OF CERTAIN TANGIBLE AND INTANGIBLE ASSETS ("PURCHASED ASSETS"), USED IN CONNECTION WITH DEBTORS' MEDICAL PRACTICES; (A) OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES; (C) SUBJECT TO OVERBID; (D) FOR DETERMINATION OF GOOD FAITH PURCHASER UNDER 11 U.S.C. §363(M); (E) FOR WAIVER OF 14-DAY STAY; AND (F) AMENDING BID PROCEDURES |
| ☐   Caduceus Physicians Medical Group, dba Caduceus Medical Group, ONLY | |
| ☐   Caduceus Medical Services, LLC, ONLY | |
| | [EXHIBIT ATTACHED] |
| | Hearing: |
| | Date:  March 18, 2025 |
| | Time:  11:00 a.m. |
| | Ctrm: 5B |
| | Place: 411 W. Fourth Street |
| | Santa Ana, CA 92701 |

/ / /

/ / /

/ / /

1

On March 18, 2025, the Court conducted a hearing on the motion of Debtors, Caduceus Physicians Medical Group, a Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS") (collectively, CPMG and CMS are defined as "Debtors") for an order approving the sale of certain tangible and intangible assets ("Purchased Assets"), used in connection with Debtors' medical practices operated at the Debtors' clinics located at (1) 18200 Yorba Linda Boulevard, Suite 111, Yorba Linda, California 92886 ("Yorba Linda Clinic"); (2) 19742 MacArthur Boulevard, Suite 100, Irvine, California 92612 ("Irvine Clinic"); and (3) 333 Thalia Street, Laguna Beach, CA 92651 ("Laguna Beach Clinic") (the Yorba Linda Clinic, the Irvine Clinic, and the Laguna Beach Clinic are each, a "Clinic," and collectively are, at times, referred to herein as the "Clinics") (the medical practices operated at the Clinics are, at times, referred to herein as the "Business") and to enter into certain other agreements in connection therewith (the "Transaction"), subject to overbid: (a) outside the ordinary course of business, (b) free and clear of all liens, claims, and encumbrances, (c) subject to overbid (d) for determination of good faith purchaser under 11 U.S.C. § 363(m), (e) waiver of the 14-day stay period set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, and (f) amending bid procedures, to Regal Medical Group, Inc., ("Buyer") pursuant to a Proposed Stalking Horse APA ("APA")[1], filed on February 26, 2025, as Dk No. 248 ("Motion")[2]. All appearances were noted on the record.

The Court, having considered the Motion and its supporting evidence, the notice of Motion, and all other pleadings and papers filed in this case, including Bank National Association's Limited Opposition filed as Dk. No. 272; the opposition filed by Despierta LLC as Dk. No. 273, the opposition filed by Romanov Group LLC as Dk. No. 275; Bates Johnson Building Ltd.'s limited opposition filed as Dk. No. 265; and the reply filed by Debtors as Dk. No. 278, and the oral arguments of counsel on the record at the hearing; and having determined that it has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and

---

[1] The APA is filed with the Court on March 18, 2025, as Dk. No. 281.

[2] All terms not defined in this order shall have the meaning ascribed to them in the Motion.

307628v2/1436-003

at the sale hearing establish just cause for the relief granted herein; and after due deliberation

thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### General Provisions

1.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and
this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

2.      Venue of this case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for relief sought in the Motion are 11 U.S.C. §§ 105,363, and
365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006,
9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      Prior to the hearing, the court issued a tentative ruling, a copy of which is attached
hereto as Exhibit "1." The tentative ruling became the final ruling and, as supplemented by the
findings on the record and those set forth herein, explains the legal and factual basis for the entry of
this order.

5.      At the hearing, an auction of the Purchased Assets occurred on the record. The
successful bidder was Buyer Regal Medical Group for $1,500,000. No other prospective bidders
appeared at the hearing or requested at the hearing to participate in the auction.

6.      According to the APA, the Purchased Assets (as defined below) which are defined as
all of Debtors' right, title and interest in, to and under all of the assets, properties and rights of every
kind and nature, whether real, personal or mixed, tangible or intangible, wherever located and
whether now existing or hereafter acquired (other than the specifically Excluded Assets listed in
Exhibit A attached to the APA), which are used or held for use on the Closing Date by Debtors
exclusively in connection with the Business (collectively, the "Purchased Assets"), including,
without limitation, the following:

      A.  all of the tangible personal property owned by Debtors and located at the Clinics,

          including equipment, furniture and office furnishings (the "Personal Property");

      B.  all inventories of supplies, drugs, food, janitorial and office supplies, and other

          disposables and consumables located at the Clinic (the "Inventory");

307628v2/1436-003

C.  all of the following to the extent located at the Clinic, legally transferrable, and not subject to prior consent of any third party: operating manuals, forms, files, books, records, and documents with respect to the Clinic, including, without limitation, all patient records, employee records, equipment records, and electronic medical records;

D.  all of the following to the extent legally transferrable and not subject to prior consent of any third party: the right to use any trademarks, service marks, trademark and service mark registrations and registration applications, trade names, trade name registrations, logos, domain names, trade dress, copyrights, copyright registrations, website content, know- how, trade secrets and the corporate or company names of the Clinic used in connection with the Business, together with all rights to sue and recover damages for infringement, dilution, misappropriation or other violation or conflict associated with any of the foregoing; and

E.  all of Debtors' interest, to the extent assignable or transferable, in and to all contracts and agreements (including, but not limited to, purchase orders) with respect to the operation of the Clinic that have been designated by Buyer as a contract to be assumed and listed on Exhibit B … [attached to the APA] (the "Assumed Contracts").

Notwithstanding the foregoing, the Purchased Assets shall not include assets of the Debtors which that are not primarily used in connection with the operation of the Clinic and those assets identified in Exhibit A to the APA, which include but are not limited to (1) the Debtors' the actual cash balances of Seller, including, without limitation, all deposits in transit but not yet credited, as of the Closing Date; and (2) the Debtors' anticipated refundable employee retention tax credit ("ERTC") (collectively, the "Excluded Assets").

# Final Order

7.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

307628v2/1436-003

## Notice

8.     As evidenced by the notice of the Motion and the certificate of service filed in connection with the Motion, the 6004-2 Notice of Sale of Estate Property (the "6004-2 Notice"), and based upon evidence submitted in connection therewith: (i) due, proper, timely, adequate and sufficient notice to all interested parties of the Motion, notice of the Motion, and the 6004-2 Notice has been provided in accordance with 11 U.S.C. §§ 102(1), 363, 365 and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9014, and all other provisions of the Bankruptcy Rules and/or the Local Bankruptcy Rules ("LBR") governing the transactions that are the subject of the Motion; (ii) such notice was good, sufficient and appropriate; and (iii) the foregoing notices were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the sale hearing, or the sale shall be required.

9.     A reasonable opportunity to object and be heard with respect to the sale and the Motion and the relief requested therein has been afforded to all interested persons and entities as required by LBR 9013-1(d) and no party in interest opposed the Motion or the relief requested therein.

## The Good Faith of Buyer

10.     Pursuant to 11 U.S.C. § 363(b) and (f) and Bankruptcy Rule 6004(f), the sale of the Purchased Assets to Buyer for One Million Five Hundred Thousand and No/100 Dollars ($1,500,000) (the "Purchase Price"), is a sound and prudent exercise of the Debtor's reasonable business judgment and is in the best interests of the estate and its creditors.  No party in interest has furnished the Court with sufficient evidence or reasons to challenge the reasonableness of the Debtors' business judgment in this regard.

11.     The consideration to be paid by the Buyer with respect to the purchase of the Purchased Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the laws of the United States, any state, territory or possession, or the District of Columbia.

307628v2/1436-003

12. Neither the Debtors nor the Buyer has engaged in any conduct that would cause or permit the PSA or the sale of the Purchased Assets to the Buyer to be invalidated or avoided under 11 U.S.C. § 363(n). Specifically, among other things, including the statements of the Debtors and the Buyer in open court (i) the Debtors were free to negotiate with any other party that expressed an interest in purchasing the Purchased Assets; (ii) the negotiation and execution of the PSA and all aspects of the sale of the Purchased were conducted in good faith; and (iii) the ultimate sale price was the result of a spirited auction that took place publicly on the record before the Bankruptcy Court. Accordingly, upon consummation of the sale of the Purchased Assets as set forth in the PSA, the Buyer will be a buyer in good faith within the meaning of 11 U.S.C. § 363(m) and therefore entitled to the protections afforded thereby.

## The Highest and Best Offer

13. The sale to Buyer for the Purchase Price constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the estate than would be provided by any other available alternative. The terms and conditions of the PSA are fair and reasonable and entry into the PSA by the Debtors are a sound and prudent exercise of its reasonable business judgment and the Sale is in the best interests of the estate and creditors.

14. The Debtors have demonstrated good, sufficient, and sound business purposes and justification for the sale and the terms of the sale as described in the PSA are outside the ordinary course of business pursuant to 11 U.S.C. § 363(b).

15. The process set forth in the bidding procedures proposed in the Motion (the "Bidding Procedures") and the auction in open Court afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.

16. The Debtors fully complied with the Bidding Procedures.

## No Fraudulent Transfer or Successor Liability

17. The PSA has not been entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and/or under the laws of the United States, any state, territory, possession, or the District of Columbia.

307628v2/1436-003

18.    The transfer of the Purchased Assets to the Buyer concurrently with the closing of the sale in accordance with the APA and Motion will constitute a legal, valid and effective transfer of the Purchased Assets and shall vest with or vest in Buyer, all rights, title and interests of the estate to the Property free and clear of all liens, liabilities, claims and encumbrances of any kind and nature, except as otherwise permitted in the APA.

19.    Buyer is not a mere continuation of the Debtors or the estate and there is no continuity of enterprise between Buyer and the Debtors. Buyer is not holding itself out to the public as a continuation of the Debtors.  Buyer is not a successor to the Debtors or the estate and the Sale does not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors.

## Validity of Transfer

20.    Subject only to the entry of this Order, the Debtors have (or at all relevant times had) (i) full power and authority to execute and deliver the APA and all other documents contemplated thereby, (ii) all authority necessary to consummate the transactions contemplated by the APA, and (iii) taken all action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby.  Subject only to the entry of this Order (a) the Debtors' sale of the Purchased Assets has been duly and validly authorized, and (b) no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale pursuant to the APA and the transactions contemplated thereby.

21.    The estate is the sole and lawful owner of the Purchased Assets.  Subject to 11 U.S.C. § 363(f), and except as otherwise provided in the APA, the transfer of the Purchased Assets to Buyer will be, as of the date of the closing of the transactions contemplated by the APA a legal, valid, and effective transfer of the Purchased Assets, which transfer vests or will vest Buyer with all right, title, and interest of the estate to the Purchased Assets free and clear of any such interest in such property, including without limitation (i) all liens and encumbrances relating to, accruing or arising any time prior to the Closing Date with the exception of the Permitted Exceptions as provided in the APA (collectively, "Liens"), (ii) all rights of any lessee under 11 U.S.C. § 365(h) to have possession after rejection of its lease, and (iii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in 11 U.S.C. § 101(5)), liabilities, obligations, demands,

7

guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below)) and Liens that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, the estate's or Buyer's interests in the Property, or any similar rights, or in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (iii), "Claims"), relating to, accruing or arising any time prior to the Closing Date, except as otherwise provided in the PSA.

## 11 U.S.C. § 363(f) is Satisfied

22.     The conditions of 11 U.S.C. § 363(f) have been satisfied; therefore, the Debtors may sell the Purchased Assets free and clear of any interest in the Purchased Assets as provided in the APA.

23.     Buyer would not have entered into the APA and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to Buyer were not free and clear of all such interests, Liens and Claims, except as otherwise provided in the APA.

24.     The Debtors may sell the Purchased Assets free and clear of all Liens and Claims against the estate or the Purchased Assets (except as otherwise provided in the APA) because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. Additionally, the purchase price of One Million and Five Hundred Thousand ($1,500,000) is sufficient to pay BMO in full on its first priority lien which is estimated to be $1,200,000 and therefore 11 U.S.C. § 363(f)(3) is also satisfied.  Thus, the Purchased Assets shall be sold free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) as provided herein.

25.     In light of the first priority lien held by BMO against all of the Debtors' assets, if BMO were to foreclose on its collateral, the junior lienholders, including Backd, LendSpark, Despierta, and IMIM would be eliminated as junior lienholders. Thus, the sale of the Purchased

Assets is free and clear of Backd's lien, LendSpark's lien, Despierta's lien, IMIM's lien, and any other junior lien pursuant to 11 U.S.C. § 363(f)(1).

26.    Shareholder Notes were not perfected by a security instrument against the Debtors. Accordingly, the Court may approve a sale free and clear of the Shareholder Notes pursuant to 11 U.S.C. §§ 363(f)(4) & 544(a)(1).

27.    The Sale does not constitute a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the estate's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the estate.

28.    Prior to the Petition Date, CPMG maintained a privacy policy restricting CPMG's use and disclosure of certain personally identifiable information ("PII")—namely, "protected health information," as defined by the federal Health Insurance Portability and Accountability Act ("HIPAA")—about the patients to whom CPMG provided medical services ("Patients") ("Privacy Policy").

29.    The Privacy Policy has been maintained throughout the pendency of Debtors' chapter 11 cases.

30.    On February 20, 2025, the Bankruptcy Court appointed Lucy L. Thomson as the Consumer Privacy Ombudsman ("CPO"). Dkt. 280.

31.    On March 18, 2025, the CPO filed her Ombudsman Report, advising the Court regarding Privacy Policy and the protection of the Patients' PII in connection with a sale. Dkt. 280. Among other things, the Report confirms that a sale to Buyer comports with applicable law, including HIPAA, and recommends approval of the transaction contemplated by the APA.

32.    No evidence was presented showing, and no arguments were made indicating, that approving the sale to Buyer would violate applicable non-bankruptcy law, including without limitation, HIPAA.

33.    Other good and sufficient cause exists for granting the Motion.

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted;

2.    All objections to the Motion that were filed and not withdrawn on the record or deemed moot due to other events are overruled.

3.    Those parties who did not object to the Motion are deemed to have consented to all transactions contemplated by the Motion and the PSA including, without limitation, the sale of the Purchased Assets pursuant to 11 U.S.C. § 363(f)(2).

4.    The Proposed Stalking Horse APA attached to the Motion as Exhibit "4", which was previously approved by the Court via the Bid Procedure Motion and Order, is approved (as revised per Dk. No. 281), and the Debtors are authorized to execute the APA filed on March 18, 2025, as Dk. No. 281;

5.    Debtors are authorized to sell the Purchased Assets outside the ordinary of course of business and are further authorized to immediately pay any and all amounts owed to BMO based on its first-priority lien;

6.    Debtors are authorized to sign all documents and take all actions necessary to consummate the sale and close the transaction as contemplated in the APA, consistent with terms and conditions thereof;

7.    The sale of the Purchased Assets is free and clear of all liens, claims, and interests Under 11 U.S.C. § 363(f). Specifically, the sale is free and clear of the following interests, with all such liens, claims, and interests to attach to the proceeds of sale with the same validity, priority, or extent that they would attach to the Property:

         a.    BMO UCC-1 Financing Statement, Filing No. 07-7097322653;

         b.    Backd UCC-1 Financing Statement, Filing No. U240030443226;

         c.    LendSpark UCC-1 Financing Statement, Filing No. U240055864431;

         d.    Despierta UCC-1 Financing Statement, Filing No. U240061296020;

         e.    Dell UCC-1 Financing Statement, Filing No. U210017365931;

         f.    TIAA UCC-1 Financing Statement, Filing No. 20-7804086055;

         g.    Hologic UCC-1 Financing Statement, Filing No. U210071055719;

         h.    IMIM Claim; and

         i.    Shareholder Notes.

8.    A sound business purposes exists for the sale;

9.    The sale is in the best interest of the Estate, and the minimum proposed sale price of $1,500,000 (or higher) is fair and reasonable;

10.    All sale proceeds shall be held in a newly established and segregated Debtor-In-Possession account (the "DIP Sale Account"), approved by the United States Trustee, which maintains and holds all sale proceeds separate and apart from any funds that the Debtors use for payment of operating expenses in accordance with any and all Court-approved budgets.  In no case shall any sale proceeds in the DIP Sale Account be intermingled with any funds from the Debtors' existing Debtor-In-Possession account(s) from which the Debtors pay operating and budgeted expenses.  No sale proceeds shall be disbursed from the DIP Sale Account absent written consent of BMO or further Court order directing Debtors disbursement of funds, after a noticed motion with at least seven (7) days' notice and opportunity for creditors, including BMO, to object.  In the event that the Debtors object to any portion of the secured claims, all sale proceeds shall be held in the DIP Sale Account in the full amount of the secured creditor's claimed lien, without disbursement of any funds, until the claim objection is resolved in full by the Debtors and secured creditor or by order of the Court, after a noticed hearing in accordance with all applicable Bankruptcy rules and procedures.

11.    Adequate notice of the Motion has been given;

12.    The sale is made in good faith and for value;

13.    Buyer (or, pursuant to subsequent testimonial or declaratory evidence, any other Backup Bidder) is determined to have the protections of a good faith purchaser pursuant to 11 U.S.C. § 363(m);

14.    The sale of the Purchased Assets shall be "as-is" and "where-is" with all faults and without warranty, representation, or recourse whatsoever;

15.    Should the successful bidder not timely complete the purchase of the Purchased Assets pursuant to the terms of Stalking Horse APA, the Back-Up Bidder, if any, may be substituted for the Successful Bidder;

16.    The 14-day stay of the effectiveness of the sale order is waived; and

17.    The Court retains jurisdiction: (a) to interpret, enforce, and implement the terms

11

and provisions of this sale; and (b) to resolve any disputes arising under or related to this order.

## Treatment of Executory Contracts and Unexpired Leases

18.     Pursuant to the terms of the APA, any anti-assignment provisions or consent requirements in the Designated Contracts shall not restrict, limit or prohibit the assumption, assignment and sale of the Designated Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of 11 U.S.C. § 365(f).

19.     Any cure to the extent it includes penalties not recoverable under 11 U.S.C. § 365(b)(2)(D) Code for non-monetary defaults is disallowed.

## Other Provisions

20.     The sale to Buyer comports with all applicable non-bankruptcy law, including, without limitation, HIPAA. CPMG and Buyer are each a "covered entity," as such term is defined by HIPAA, and are subject to HIPAA's restrictions regarding the use and disclosure of certain information.

21.     Buyer shall retain and secure the Patients' records post-closing in accordance with applicable non-bankruptcy law, including, without limitation, HIPAA, and Buyer's record retention policies. Buyer shall also enter into a Patient Records Custody Agreement with CPMG in accordance with the terms of the APA.

22.     The failure specifically to include any particular provision of the APA or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA and all related ancillary documents be authorized and approved in their entirety; provided, however, that this Order shall govern if there is any inconsistency between the APA (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

23.     This Order constitutes an itemized statement of the property sold, the name of Buyer, and the price received for the property as a whole as required by Rule 6004(f)(1) of the Bankruptcy Rules.

307628v2/1436-003

24.     A certified copy of this Order may be filed with the California Secretary of State shall be act to cancel any liens and other encumbrances of record, as necessary.

25.     The sale to Buyer shall occur ("Closing") on the later of (a) the first business day that is twenty-one (21) calendar days following the date upon which this Order becomes a final order or (b) the first business day after the necessary conditions under the APA have been fulfilled, and this date may be extended by mutual consent of the Debtors and the Buyer (the "Closing Date").

26.     The Debtors may petition the Court for approval of a Back-up Buyer at anytime prior to the Closing Date.

27.     If Buyer fails to consummate the Sale on the terms set forth in the APA, then Debtors are authorized to consummate a transaction with the Back-up Buyer.

###

Date: April 4, 2025

_Theodor C. Albert_
Theodor C. Albert
United States Bankruptcy Judge

13

# EXHIBIT 1

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Theodor Albert, Presiding
### Courtroom 5B Calendar

---

**Tuesday, March 18, 2025**                                              **Hearing Room    5B**

---

<u>11:00 AM</u>
**8:24-11945    Caduceus Physicians Medical Group, a Professional**                **Chapter 11**

   **#8.00**    Debtors' Motion For Order Authorizing Sale Of Certain Tangible And Intangible
               Assets ("Purchased Assets"), Used in Connection with Debtors' Medical
               Practices: (A) Outside the Ordinary Course of Business; (B) Free and Clear of
               Liens, Claims, and Encumberances; (C) Subject to Overbid; (D) for
               Determination of Good Faith Purchaser Under 11 U.S.C. Section 363(m); (E)
               For Waiver of 14-day Stay; and (F) Amending Bid Procedures

                            Docket        248

**Tentative Ruling:**

        Tentative for March 18, 2025

               This is Debtors Caduceus Physicians Medical Group, a
        Professional Medical Corporation dba Caduceus Medical Group
        ("CPMG") and Caduceus Medical Services, LLC ("CMS") (collectively,
        CPMG and CMS are defined as "Debtors") motion for order approving
        the sale of tangible and intangible assets ("Purchased Assets") used in
        connection with Debtors' medical practices operated at Debtor's clinics
        and to enter into certain other agreements, subject to overbid: (a)
        outside the ordinary course of business, (b) free and clear of all liens,
        claims, and encumbrances, (c) subject to overbid (d) for determination
        of good faith purchaser under 11 U.S.C. § 363(m), (e) waiver of the 14-
        day stay period set forth in Rule 6004(h) of the Federal Rules of
        Bankruptcy Procedure, and (f) amending bid procedures.

   **A.  <u>Legal Standard</u>**

        Section 363(b) provides that after notice and a hearing, a trustee may
   sell property of the estate out of the ordinary course of business. Courts have
   held that in order to approve a sale, a court must find that the trustee
   demonstrates a valid business justification, and that the sale is in the best
   interest of the estate. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th
   Cir. BAP 1996); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-42
   (Bankr. C.D. Cal. 1991). A sale is in the best interest of the estate when it is
   fair and reasonable, it has been given adequate marketing, it has been

---

EXHIBIT 1, PAGE 14

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Theodor Albert, Presiding
### Courtroom 5B Calendar

Tuesday, March 18, 2025                                    Hearing Room        5B

<u>11:00 AM</u>
**CONT...**        **Caduceus Physicians Medical Group, a Professional**                    **Chapter 11**

advertised and negotiated in good faith, the purchaser is proceeding in good
faith, and it is an arm's length transaction. *In re Wilde Horse Enterprises, Inc.*,
136 B.R. at 841. The court goes on to explain that good faith encompasses
fair value and further speaks to the integrity of the transaction. Bad faith
would include collusion between the seller and buyer or any attempt to take
unfair advantage of any potential purchasers. *Id.* at 842.

### B. <u>Approval of Sale Motion?</u>

There are three main points of contention between Debtors and the opposing
parties: (a) whether sale should be free and clear of liens; (2) assumption and
assignment of unexpired leases/executory contracts; and (3) amendment of
the bid procedures.

### 1. **Sale Free and Clear of Liens**

The Debtors seek court authorization to sell property free and clear of
all liens, claims, and interests, with the liens to attach to the sale proceeds.

Section 363(f) allows a trustee to sell property of the bankruptcy estate
"free and clear of any interest in such property of an entity," if any one of the
following five conditions is met: (1) Applicable non-bankruptcy law permits a
sale of such property free and clear of such interest; (2) Such entity consents;
(3) Such interest is a lien and the price at which such property is to be sold is
greater than the aggregate value of all liens on such property; (4) Such
interest is in bona fide dispute; or (5) Such entity could be compelled, in a
legal or equitable proceeding, to accept
money satisfaction of such interest. 11 U.S.C. § 363(f); s*ee e.g., Pinnacle
Restaurant at Big Sky, LLC v. CH SP Acquisitions, LLC (In re of Spanish
Peaks Holdings II, LLC)*, 862 F.3d 1148, 1153-54 (9th Cir. 2017). Section
363(f) is written in the disjunctive, such that satisfaction of any one of the five
conditions is sufficient to allow a trustee to sell property of the estate free and
clear of liens. *In re Gerwer*, 898 F.2d 730 (9th Cir. 1990).

BMO holds a first-priority blanket lien and requests in its limited
opposition that the proceeds from the sale be placed in an escrow account,
with BMO's liens attaching to the funds in the same priority and validity as

EXHIBIT 1, PAGE 15

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, March 18, 2025                                             Hearing Room        5B

<u>11:00 AM</u>
CONT...        **Caduceus Physicians Medical Group, a Professional**                        Chapter 11

attached to the Purchased Assets. BMO also requests that Debtors pay BMO's secured claims in full directly from the escrow account. Debtors state in their reply that they do not contemplate a true escrow for this transaction but will have the CRO place any deposits and sale proceeds into a segregated US Trustee approved debtor-in-possession account. Absent any further argument from BMO, the court agrees with Debtors decision to place the proceeds in a segregated account.

Debtors further argue that Despierta, holding a fourth-priority lien, would also be eliminated under Section 363(f)(1), as the sale proceeds are sufficient to satisfy BMO's first-priority lien. Despierta, in its opposition, strongly opposes this argument that since the proposed sale price is insufficient to cover Despierta's lien, it would be foreclosed out in a hypothetical foreclosure sale. Despierta contends that this is misleading because a foreclosure sale is typically initiated by a third party, not a debtor, and is done for the benefit of the creditor initiating the sale. Here, Debtor is trying to sell the collateral for its own benefit. That may be the case but the in *Pinnacle Rest. at Big Sky, LLC v. CH SP Acquisitions, LLC (In re Spanish Peaks Holdings II, LLC)*, 872 F.3d 892 (9th Cir. 2017) ("Pinnacle"), the Ninth Circuit Court of Appeals held that where state foreclosure law would eliminate a junior interest, Trustee may sell property free and clear of such interest pursuant to Section 363(f)(1). *Id*. at 900. Thus, regardless of it being for its own benefit, if the state foreclosure proceeding would eliminate Despierta's lien, then Debtors here are permitted to do the same. Nonetheless, Despierta seeks under Section 363(e) adequate protection for creditors' interest for the months of February and March 2025. However, Debtors argue in the reply that they plan to tender these payments, but after the sale will no longer provide payments as Despierta is an out-of-money creditor and unsecured.

As Debtors have addressed the concerns above, the court finds that the sale can proceed free and clear of liens under Section 363(f).

**2. Assumption and Assignment of Unexpired Leases/Executory Contracts**

Debtors seek to establish a process for reconciling the Cure Amounts

EXHIBIT 1, PAGE 16

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, March 18, 2025                                    Hearing Room        5B

11:00 AM
**CONT...        Caduceus Physicians Medical Group, a Professional                    Chapter 11**

associated with the Designated Contracts, as per the Bid Procedure Motion
and Order. This process will allow the Debtors and the counterparties to
reconcile any proposed Cure Amounts under 11 U.S.C. § 365 of the
Bankruptcy Code and determine whether they consent to the assumption of
the contracts, regardless of the Cure Amount. The counterparties will also
have the right to object to the assumption and assignment of the contracts or
the Cure Amount.

        Under 11 U.S.C. § 365(a), a trustee, subject to court approval, may
assume or reject any executory contract or unexpired lease of the debtor.
Section 365(b)(1) further specifies the requirements for assuming an
executory contract or unexpired lease, which include curing any defaults,
compensating the non-debtor party for actual pecuniary losses caused by the
default, and providing adequate assurance of future performance under the
contract or lease. Specifically, section 365(b)(1) requires that if there has
been a default in an executory contract or lease, the trustee must: (A) cure or
provide assurance of curing the default; (B) compensate or assure
compensation for any pecuniary loss; and (C) provide adequate assurance of
future performance under the contract or lease. 11 U.S.C. § 365(b)(1).

        In its limited opposition, Bates generally approved of the sale but seeks
clarification that any purchaser or overbidder who seeks assignment of the
lease by and between Bates and Debtor must explicitly comply with the
provisions of Section 465(b)(1) and (f)(2). Specifically, any purchase or
overbidder must cure all defaults and provide adequate assurance of future
performance. Adequate assurance includes demonstration of the ability to
pay the additional monthly payments commencing on April 1 as provided in its
Seventh Amendment Lease with Debtor. Based on Debtors statements
above, it appears that provisions are in place to resolve the issue of the cure
amounts. Additionally, Debtors indicate that evidence of the Stalking Horse
Bidder's, Regal, ability to perform under the lease will be presented at the
hearing. Accordingly, Bates' concerns should be resolved at the hearing.

        In BMO's limited opposition, it points to an inconsistency between the
sale motion and the Regal APA concerning cure costs related to assumed
contracts. The sale motion defines the Purchase Price as $1,500,000 plus
cure costs, whereas the Regal APA limits Regal's liability for cure costs to

EXHIBIT 1, PAGE 17

**United States Bankruptcy Court**
**Central District of California**
Santa Ana
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, March 18, 2025                                    Hearing Room        5B

**CONT...        Caduceus Physicians Medical Group, a Professional                Chapter 11**

$150,000 with Debtors covering any cure costs above this amount. BMO is concerned that this latter arrangement would create an uneven playing field if competing bidders are not offered the same terms, and requests that Debtors confirm their financial capacity to cover costs above $150,000 without using proceedings from the sale or cash collateral. Debtors clarify in the reply that any cure costs exceeding $150,000 will come from estate funds, but Debtors do not expect the cap to be exceeded.

In Romanov's opposition, it argues that the motion proposes rejection of the lease with Debtor but does not specify when the Debtors will surrender the premises or remain on the premises indefinitely. The Debtors' deadline to assume or reject the lease has already expired and Romanov argues that Debtors are violating their duty to either pay rent or reject the least in timely manner. Debtors strongly dispute the argument that they "have no paid rent post-petition". The opposition neglects to the inform the court that Romanov and Debtors are parties to a deferral agreement to which Debtors made $206,000 in deferred rent payments and $388, 617.70 in other lease payments for a total of $594,617 in postpetition Lease payments.

Romanov also argues that Debtors have not provided any evidence for adequate assurance if there is assignment of the landlord lease. However, Debtors argue in the reply that Regal is not interested in assuming the lease, so a Section 365 analysis is not necessary. The overbidder may be interested in keeping the lease and has provided Debtors with its balance sheet demonstrating financial ability to pay any valid cure costs and continue to perform its obligations under the lease.

**3. Amendment of the Bid Procedures**

The Debtor has selected Regal as the Stalking Horse Bidder for the auction scheduled on March 19, 2025. Regal's asset purchase agreement (APA) includes an expense reimbursement provision and a breakup fee, which would apply if Regal is not the winning bidder. The Bid Procedures Order did not originally include provisions for these fees, so the Debtor is seeking to amend the Bid Procedures to incorporate them. The Debtors argue that the amended bidding procedures are within their reasonable business judgment. When the Bid Procedure Motion was first filed, no

**United States Bankruptcy Court**
**Central District of California**
**Santa Ana**
**Theodor Albert, Presiding**
**Courtroom 5B Calendar**

Tuesday, March 18, 2025                                             Hearing Room          5B

11:00 AM
CONT...          **Caduceus Physicians Medical Group, a Professional**                          **Chapter 11**
stalking horse bidder had been secured. However, following negotiations with
Regal, the Debtors now have a stalking horse bidder and believe that the
Expense Reimbursement and Breakup Fee are reasonable under the
circumstances of the case.

As part of this, any overbid in the auction must be at least $150,000
higher than Regal's initial bid, meaning the first overbid must be a minimum of
$1,650,000. This ensures that Regal's expense reimbursement and breakup
fee are accounted for. Additionally, Regal is entitled to credit bid up to
$150,000 during the auction, reflecting the value of the expense
reimbursement and breakup fee. For instance, Regal's $1,500,000 bid would
be equivalent to an overbid of $1,650,000 from another party. The Stalking
Horse APA allows Regal to receive up to $50,000 in expense reimbursement
and a $100,000 breakup fee if Regal is not the winning bidder.

In BMO's limited opposition, it raises concerns about the excessive
nature of the breakup fee and reserves the right to oppose the fee and the
expense reimbursement at the hearing. BMO also requests that the fees not
be paid from sale proceeds until BMO's secured claims are fully satisfied.
Despierta also takes issues with the excessive expense reimbursement and
breakup fees and argues that these fees may hinder other potential bidders
from participating in the auction. In its respective opposition, Romanov
submits that Regal or Stalking Horse Bidder is already an existing creditor
and does not need additional incentives to bid. Further, there are limited
funds available and the excessive breakup fees and expense reimbursement
would unfairly prioritize Regal over other creditors effectively giving them a
super priority claim. Debtors contend in their reply that the Breakup Fee and
Expense Reimbursement are reasonable because Regal brough value to the
sale process by setting the stage from the auction and committing to the
$1,500,000 minimum purchase price for the Purchased Assets. Further,
Regal has set the stage for the auction and facilitated Debtors' sale of the
Purchased Assets. The court agrees with Debtors, and any risk of unfairness
is mitigated by implementation of the overbidding procedure to allow for other
overbidders to bid higher.

Grant. *Appearance required.*

| Party Information |
|:---:|

EXHIBIT 1, PAGE 19

# United States Bankruptcy Court
## Central District of California
### Santa Ana
### Theodor Albert, Presiding
### Courtroom 5B Calendar

---

**Tuesday, March 18, 2025**                                    **Hearing Room      5B**

---

<u>11:00 AM</u>
**CONT...      Caduceus Physicians Medical Group, a Professional**                    **Chapter 11**
<u>**Debtor(s):**</u>

Caduceus Physicians Medical                    Represented By
                                                David  Wood
                                                Matthew  Grimshaw
                                                Aaron E. De Leest
                                                Ronghua Sophia Wang

---

EXHIBIT 1, PAGE 20

**EXHIBIT 2**

1  MATTHEW W. GRIMSHAW, #210424
   mgrimshaw@marshackhays.com
2  DAVID A. WOOD, #272406
   dwood@marshackhays.com
3  AARON E. DE LEEST, #216832
   adeleest@marshackhays.com
4  MARSHACK HAYS WOOD LLP
   870 Roosevelt, Irvine, CA 92620
5  Telephone: 949-333-7777
   Facsimile: 949-333-7778
6
   Attorneys for Debtor,
7  CADUCEUS PHYSICIANS MEDICAL GROUP,
   a Professional Medical Corporation, dba
8  CADUCEUS MEDICAL GROUP and
   CADUCEUS MEDCAL SERVICES, LLC
9

**FILED & ENTERED**

**MAY 07 2025**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY deramus  DEPUTY CLERK

10              UNITED STATES BANKRUPTCY COURT

11        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12

13  In re                                    Case No. 8:24-bk-11945-TA

14  CADUCEUS PHYSICIANS MEDICAL              Chapter 11
    GROUP, a Professional Medical Corporation,
15  dba CADUCEUS MEDICAL GROUP,              (Jointly Administered with 8:24-bk-11946-
                                             TA)
16              Debtor.
                                             AMENDED ORDER GRANTING
17  ☒    ALL DEBTORS                         DEBTORS' MOTION FOR ORDER:
                                             AUTHORIZING SALE OF CERTAIN
18  ☐    Caduceus Physicians Medical Group, dba   TANGIBLE AND INTANGIBLE ASSETS
    Caduceus Medical Group, ONLY            ("PURCHASED ASSETS"), USED IN
19                                           CONNECTION WITH DEBTORS'
    ☐    Caduceus Medical Services, LLC, ONLY    MEDICAL PRACTICES; (A) OUTSIDE
20                                           THE ORDINARY COURSE OF
                                             BUSINESS; (B) FREE AND CLEAR OF
21                                           LIENS, CLAIMS, AND
                                             ENCUMBRANCES; (C) SUBJECT TO
22                                           OVERBID; (D) FOR DETERMINATION
                                             OF GOOD FAITH PURCHASER UNDER
23                                           11 U.S.C. §363(M); (E) FOR WAIVER OF
                                             14-DAY STAY; AND (F) AMENDING
24                                           BID PROCEDURES

25                                           Hearing:
                                             Date:  March 18, 2025
26                                           Time:  11:00 a.m.
                                             Ctrm:  5B
27                                           Place:  411 W. Fourth Street
                                             Santa Ana, CA 92701
28

1

On March 18, 2025, the Court conducted a hearing on the motion of Debtors, Caduceus Physicians Medical Group, a Professional Medical Corporation dba Caduceus Medical Group ("CPMG") and Caduceus Medical Services, LLC ("CMS") (collectively, CPMG and CMS are defined as "Debtors") for an order approving the sale of certain tangible and intangible assets ("Purchased Assets"), used in connection with Debtors' medical practices operated at the Debtors' clinics located at (1) 18200 Yorba Linda Boulevard, Suite 111, Yorba Linda, California 92886 ("Yorba Linda Clinic"); (2) 19742 MacArthur Boulevard, Suite 100, Irvine, California 92612 ("Irvine Clinic"); and (3) 333 Thalia Street, Laguna Beach, CA 92651 ("Laguna Beach Clinic") (the Yorba Linda Clinic, the Irvine Clinic, and the Laguna Beach Clinic are each, a "Clinic," and collectively are, at times, referred to herein as the "Clinics") (the medical practices operated at the Clinics are, at times, referred to herein as the "Business") and to enter into certain other agreements in connection therewith (the "Transaction"), subject to overbid: (a) outside the ordinary course of business, (b) free and clear of all Liens, Claims, or Interests (as defined in Section 1.2 of the Anchor APA), (c) subject to overbid (d) for determination of good faith purchaser under 11 U.S.C. § 363(m), (e) waiver of the 14-day stay period set forth in Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, and (f) amending bid procedures, to Regal Medical Group, Inc., ("Regal") pursuant to a Proposed Stalking Horse APA ("APA")[1], filed on February 26, 2025, as Dk No. 248 ("Motion")[2]. All appearances were noted on the record.

On April 4, 2025, following a hearing on the Motion and after considering the pleadings and papers filed in connection therewith, including Bank National Association's Limited Opposition filed as Dk. No. 272; the opposition filed by Despierta LLC as Dk. No. 273, the opposition filed by Romanov Group LLC as Dk. No. 275; Bates Johnson Building Ltd.'s limited opposition filed as Dk. No. 265; and the reply filed by Debtors as Dk. No. 278, and the oral arguments of counsel on the record at the hearing, entered its *Order Granting Debtors' Motion for Order: Authorizing Sale of Certain Tangible and Intangible Assets ("Purchased Assets"), Used in Connection With Debtors'*

---

[1] The APA is filed with the Court on March 18, 2025, as Dk. No. 281.

[2] All terms not defined in this order shall have the meaning ascribed to them in the Motion.

307628v2/1436-003

*Medical Practices; (A) Outside the Ordinary Course of Business; (B) Free and Clear of Liens, Claims, and Encumbrances; (C) Subject to Overbid; (D) for Determination of Good Faith Purchaser Under 11 U.S.C. §363(M); (E) for Waiver of 14-Day Stay; and (F) Amending Bid Procedures*, Dkt. No. 301, ("Initial Sale Order") approving the sale to Regal.

Among other things, the Initial Sale Order permits the Debtors to nominate a Back-Up Bidder[3] and to substitute the Back-Up Bidder in place of Regal, if Regal fails to timely close the transaction contemplated by the Stalking Horse APA.

One of the conditions to Regal closing a transaction under the Stalking Horse APA was negotiation of a new lease with one of the Debtors' landlords. Regal was unable to obtain the required new lease, and therefore, Regal informed the Debtors that it was terminating the Stalking Horse APA transaction.

On May 6, 2025, the Debtors filed its *Notice of Submission of Back-Up Bidder Fully Executed Asset Purchase Agreement*, Dkt. No. 330, designating Anchor Medical Group, P.C. ("Anchor Medical") and Anchor Medical Management, Inc. ("Anchor Management" and collectively with Anchor Medical, "Anchor") as the Back-Up Bidder ("Back-Up Bidder Notice") and attaching the *Asset Purchase Agreement by and among Caduceus Medical Services, LLC and Caduceus Physicians Medical Group, as Sellers, and Anchor Medical Group, P.C., and Anchor Medical Management, Inc., as Buyers*, dated May 6, 2025 (the "Anchor APA") and the accompanying *Interim Administrative Services Agreement* (the "ASA").

Having considered the Back-Up Bidder Notice, the *Declaration of Essam Quraishi, M.D.* ("Quraishi Declaration") (collectively, "Supplemental Filings") and the other pleadings in this case, and having determined that it has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and Supplement Filings establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, the Court enters this amended sale order to permit the Debtors to proceed in the sale to Anchor.

*/ / /*

---

[3] Any capitalized term not defined herein shall have the meaning ascribed to it in the Initial Sale Order.

307628v2/1436-003

**THE COURT HEREBY FINDS AS FOLLOWS:**

## General Provisions

1.      This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).

2.      Venue of this case and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for relief sought in the Motion are 11 U.S.C. §§ 105, 363, and 365 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      At the hearing, an auction of the Purchased Assets occurred on the record. The successful bidder was Buyer Regal Medical Group for $1,500,000. No other prospective bidders appeared at the hearing or requested at the hearing to participate in the auction. Nonetheless, the Court agreed that the Debtors could designate a Back-Up Bidder at a later date. *See* Initial Sale Order, pg. 13, ¶¶ 26 & 27.

5.      Regal terminated the sale under the Stalking Horse APA.

6.      The Debtors filed the Back-Up Bidder Notice, designating Anchor as the Back-Up Bidder.

7.      The Motion and Supplemental Filings confirm that the Debtors have exercised proper business judgment in electing to proceed with a sale to Anchor.

8.      According to the Anchor APA, the Purchased Assets (as defined below) which are defined as all of Debtors' right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible, wherever located and whether now existing or hereafter acquired (other than the specifically Excluded Assets listed in Exhibit A attached to the APA), that are used or held for use on the Closing Date by Debtors, directly or indirectly, in connection with the Business (collectively, the "Purchased Assets"), including, without limitation, the following:

A.      all accounts receivable owing or to be owed to Sellers and arising from medical or healthcare products or services furnished or performed by Sellers or any employee, agent, or contractor of Sellers before the Closing Date, including, without limitation,

4

all charges, payments, copayments, deductibles, and other obligations for the payment of money;

B.  all of the tangible personal property owned by Sellers, including equipment, furniture, and office furnishings, including without limitation the personal property listed on *Schedule 1(B)* (collectively, the "**Personal Property**");

C.  all inventories of drugs, food, supplies (such as janitorial and office supplies), and other disposables and consumables (collectively, the "**Inventory**");

D.  all operating manuals, forms, files, books, records, documents, Patient Records, employee records, and equipment records (collectively, "**Books and Records**");

E.  all of the Sellers' trademarks, service marks, trademark and service mark registrations and registration applications, trade names, trade name registrations, logos, URLs and domain names, social media accounts, trade dress, copyrights, copyright registrations, website content, signage, advertising, promotional materials, know-how, trade secrets, corporate or company names, telephone and facsimile numbers, email addresses, and rights to sue and recover damages for infringement, dilution, misappropriation, or other violation or conflict associated with any of the foregoing with respect to the Business (collectively, "**IP**"), as generally set forth in *Schedule 1(E)*, which is attached hereto and incorporated herein by reference.

F.  all of Sellers' rights and interests, to the extent assignable or transferable, in and to the contracts, leases, purchase orders, and other agreements designated by Anchor to be assumed by Sellers and assigned to Anchor pursuant to *Section 6* as set forth in *Schedule 1(F)*, which is attached hereto and incorporated herein by reference (the "**Assigned Contracts**").

G.  all claims related to the Purchased Assets, the Assumed Liabilities, or operation of the Business (including property claims) under insurance policies, all rights and proceeds of any condemnation proceeding affecting the Purchased Assets; and all guarantees, representations, warranties, and indemnities and proceeds thereof, and related rights against third parties, arising with respect to the Purchased Assets or any Assumed

5

Liabilities or associated with the operation of the Business.

H.   Permits for the ownership, operation, use, maintenance, or repair of any of the Purchased Assets (in each case to the extent transferable without the consent of any Governmental Authority and regardless of the length of the process necessary to effect such a transfer, unless the Bankruptcy Court orders the transfer of such Permit), not including those Permits described in *Section 2(F)*.

I.   all security deposits held by counterparties to Assigned Contracts.

J.   all rights under non-disclosure, confidentiality, non-compete, or non-solicitation agreements with employees, contractors, and agents of any Seller or with third parties; and

K.   except for Excluded Assets, all general intangibles associated with the Business.

For the avoidance of doubt, as between PC and MSO, as of the Closing Date: (i) MSO is the acquirer of all Purchased Assets (the "**Non-Medical Assets**"), except the Patient Records and such other Purchased Assets that may be acquired or controlled only by a medical practice in accordance with Law (the "**Medical Assets**"); and (ii) PC is the acquirer of all Medical Assets.

Notwithstanding the foregoing, the Purchased Assets do not include the following assets (collectively, the "Excluded Assets"):

A.   Any accounts receivable owing, to be owing, or to be owed to CMG and arising from medical healthcare products or services furnished to Persons enrolled in Governmental Healthcare Programs;

B.   Any tax credits or refunds owing, to be owing, or to be owed to Sellers arising from Sellers' claim on any tax return or other tax-related document of a "employee retention credit" within the meaning of Section 2301 of the Coronavirus Aid, Relief and Economic Security Act of 2020 (Pub. L. 116-136 (2020)), as enacted March 27, 2020 and amended from time to time, whether received before or after the Closing Date (collectively, the "ERTC");

C.   The actual cash balances of Sellers, including, without limitation, all deposits in transit but not yet credited, as of the Closing Date;

6

307628v2/1436-003

D. Any personal property identified in *Schedule 2(D)* hereto;

E. Any and all of Sellers' payor contracts with any commercial health insurance plan or Governmental Healthcare Program (collectively, the "Payor Contracts"), as well as any other contract of the Sellers not included as an Assigned Contract herein;

F. All Permits relating to the Clinics and the Urgent Care Facility as are necessary to maintain and conduct the Business during the Transition Period; and

G. Any and all employment agreements or other contracts between CMG and Clinical Staff.

9.    Notwithstanding anything to the contrary in the Anchor APA, the Debtors will not sell, transfer, convey, or deliver to, and Anchor will not purchase, acquire, or accept from Sellers, any of Debtors' assets, rights, or properties to the extent Anchor is prohibited by any Law, order, ordinance, decree, or requirement of any Law or Governmental Healthcare Program, applicable to the parties or the operation of the Business from owning or holding such assets, rights, or properties. The parties acknowledge that Anchor is not purchasing, and the Purchased Assets do not include, Debtors' accounts receivable arising from Debtors' rendering of services and provision of medicine, drugs, or supplies to patients through the Closing Date and relating to Governmental Healthcare Programs and other third-party patient claims of Debtors due from beneficiaries or governmental third-party payors (collectively, the "**Government Receivables**"); *provided, however*, that Anchor is purchasing and accepting the Purchased Assets, including all amounts collected in respect of the Government Receivables, which includes all economic rights and burdens of ownership for all income tax purposes.

10.    Pursuant to the Anchor APA, the Debtors are appointing Anchor to act as Debtors' collection agent with respect to the Government Receivables generated by or on behalf of Debtors on or before the Closing Date. In connection therewith, on or before the Closing Date, Debtors will establish or maintain an existing depository bank account at a financial institution mutually acceptable to the parties, and after the Closing, Anchor, as collection agent, will deposit in such depository account cash, checks, drafts, or other similar items of payment received in respect of the Government Receivables generated on or before the Closing Date. Debtors hereby assign to Anchor all amounts

7

collected in respect of the Government Receivables generated on or before the Closing Date (the "A/.R Collections").

## Final Order

11.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

## Notice

12.     As evidenced by the notice of the Motion and the certificate of service filed in connection with the Motion, the 6004-2 Notice of Sale of Estate Property (the "6004-2 Notice"), the Initial Sale Order, and the Supplemental Filings, and based upon evidence submitted in connection therewith: (i) due, proper, timely, adequate and sufficient notice to all interested parties of the Motion, notice of the Motion, and the 6004-2 Notice has been provided in accordance with 11 U.S.C. §§ 102(1), 363, 365 and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9014, and all other provisions of the Bankruptcy Rules and/or the Local Bankruptcy Rules ("LBR") governing the transactions that are the subject of the Motion; (ii) such notice was good, sufficient and appropriate; and (iii) the foregoing notices were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the sale hearing, or the sale shall be required.

13.     A reasonable opportunity to object and be heard with respect to the sale and the Motion and the relief requested therein has been afforded to all interested persons and entities as required by LBR 9013-1(d). Further, no party opposed the Debtors' request to nominate a Back-Up Bidder at a date after the hearing on the Motion, and the Debtors have done so.

## The Good Faith of Buyer

14.     Pursuant to 11 U.S.C. § 363(b) and (f) and Bankruptcy Rule 6004(f), the sale of the Purchased Assets to Buyer for One Million Five Hundred Thousand and No/100 Dollars ($1,450,000) (the "Purchase Price"), is a sound and prudent exercise of the Debtor's reasonable business judgment and is in the best interests of the estate and its creditors.  No party in interest has furnished the Court

1 with sufficient evidence or reasons to challenge the reasonableness of the Debtors' business judgment

2 in this regard.

3     15.    The consideration to be paid by the Buyer with respect to the purchase of the Purchased

4 Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

5 the laws of the United States, any state, territory or possession, or the District of Columbia.

6     16.    Neither the Debtors nor the Buyer has engaged in any conduct that would cause or

7 permit the Anchor APA or the sale of the Purchased Assets to the Buyer to be invalidated or avoided

8 under 11 U.S.C. § 363(n).  Specifically, among other things, including the statements of the Debtors

9 in open court and Buyer in the Supplement Filings (i) the Debtors were free to negotiate with any other

10 party that expressed an interest in purchasing the Purchased Assets; (ii) the negotiation and execution

11 of the Anchor APA and all aspects of the sale of the Purchased were conducted in good faith; and (iii)

12 the ultimate sale price was the result of good faith, arms' length negotiations between the Debtors and

13 Buyer in accordance with the procedures for selecting a Back-Up Bidder approved in the Initial Order.

14 Accordingly, upon consummation of the sale of the Purchased Assets as set forth in the Anchor APA,

15 the Buyer will be a buyer in good faith within the meaning of 11 U.S.C. § 363(m) and therefore entitled

16 to the protections afforded thereby.

17 <center>**The Highest and Best Offer**</center>

18     17.    The sale to Buyer for the Purchase Price constitutes the highest and best offer for the

19 Purchased Assets, and will provide a greater recovery for the estate than would be provided by any

20 other available alternative.  The terms and conditions of the Anchor APA are fair and reasonable and

21 entry into the Anchor APA by the Debtors are a sound and prudent exercise of its reasonable business

22 judgment and the Sale is in the best interests of the estate and creditors.

23     18.    The Debtors have demonstrated good, sufficient, and sound business purposes and

24 justification for the sale and the terms of the sale as described in the Anchor APA are outside the

25 ordinary course of business pursuant to 11 U.S.C. § 363(b).

26     19.    The process set forth in the bidding procedures proposed in the Motion (the "Bidding

27 Procedures") and the auction in open Court, and the Initial Sale Order, including the Debtors' ability

28

<center>9</center>

307628v2/1436-003

to designate a Back-Up Bidder at a later date, afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.

20.  The Debtors fully complied with the Bidding Procedures as supplemented by the Initial Sale Order.

## No Fraudulent Transfer or Successor Liability

21.  The Anchor APA has not been entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and/or under the laws of the United States, any state, territory, possession, or the District of Columbia.

22.  The transfer of the Purchased Assets to the Buyer concurrently with the closing of the sale in accordance with the Anchor APA and Motion will constitute a legal, valid and effective transfer of the Purchased Assets and shall vest with or vest in Buyer, all rights, title and interests of the estate to the Property free and clear of all liens, liabilities, claims and encumbrances of any kind and nature, except as otherwise permitted in the Anchor APA.

23.  Buyer is not a mere continuation of the Debtors or the estate and there is no continuity of enterprise between Buyer and the Debtors.  Buyer is not holding itself out to the public as a continuation of the Debtors.  Buyer is not a successor to the Debtors or the estate and the Sale does not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors.

## Validity of Transfer

24.  Subject only to the entry of this Order, the Debtors have (or at all relevant times had) (i) full power and authority to execute and deliver the Anchor APA and all other documents contemplated thereby, (ii) all authority necessary to consummate the transactions contemplated by the APA, and (iii) taken all action necessary to authorize and approve the Anchor APA and the consummation of the transactions contemplated thereby.  Subject only to the entry of this Order (a) the Debtors' sale of the Purchased Assets has been duly and validly authorized, and (b) no consents or approvals, other than those expressly provided for in the Anchor APA, are required for the Debtors to consummate the Sale pursuant to the Anchor APA and the transactions contemplated thereby.

25.  The estate is the sole and lawful owner of the Purchased Assets.  Subject to 11 U.S.C. § 363(f), and except as otherwise provided in the Anchor APA, the transfer of the Purchased Assets

1    to Buyer will be, as of the date of the closing of the transactions contemplated by the APA a legal,

2    valid, and effective transfer of the Purchased Assets, which transfer vests or will vest Buyer with all

3    right, title, and interest of the estate to the Purchased Assets free and clear of any such interest in such

4    property, including without limitation (i) all liens and encumbrances relating to, accruing or arising

5    any time prior to the Closing Date, (ii) all rights of any lessee under 11 U.S.C. § 365(h) to have

6    possession after rejection of its lease, and (iii) all debts arising under, relating to, or in connection with

7    any act of the Debtors or claims (as that term is defined in 11 U.S.C. § 101(5)), liabilities, obligations,

8    demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of

9    any kind and nature, whether arising prior to or subsequent to the commencement of this case, and

10   whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation,

11   rights with respect to Claims (as defined below)) and Liens that purport to give to any party a right of

12   setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing

13   interest, right of first refusal, purchase or repurchase right or option, or termination of, the estate's or

14   Buyer's interests in the Property, or any similar rights, or in respect of taxes, restrictions, rights of first

15   refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction

16   of use, voting, transfer, receipt of income or other exercise of any attributes of ownership)

17   (collectively, as defined in this clause (iii), "Claims"), relating to, accruing or arising any time prior

18   to the Closing Date, except as otherwise provided in the Anchor APA.

## 11 U.S.C. § 363(f) is Satisfied

20   26.    The conditions of 11 U.S.C. § 363(f) have been satisfied; therefore, the Debtors may

21   sell the Purchased Assets free and clear of any interest in the Purchased Assets as provided in the

22   Anchor APA.

23   27.    Buyer would not have entered into the Anchor APA and would not consummate the

24   transactions contemplated thereby if the sale of the Purchased Assets to Buyer were not free and clear

25   of all such interests, Liens and Claims, except as otherwise provided in the Anchor APA.

26   28.    The Debtors may sell the Purchased Assets free and clear of all Liens and Claims

27   against the estate or the Purchased Assets (except as otherwise provided in the Anchor APA) because,

28   in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.

Additionally, the purchase price of One Million and For Hundred Fifty Thousand ($1,450,000) is sufficient to pay BMO in full on its first priority lien which is estimated to be $1,200,000 and therefore 11 U.S.C. § 363(f)(3) is also satisfied. Thus, the Purchased Assets shall be sold free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) as provided herein.

29. In light of the first priority lien held by BMO against all of the Debtors' assets, if BMO were to foreclose on its collateral, the junior lienholders, including Backd, LendSpark, Despierta, and IMIM would be eliminated as junior lienholders. Thus, the sale of the Purchased Assets is free and clear of Backd's lien, LendSpark's lien, Despierta's lien, IMIM's lien, and any other junior lien pursuant to 11 U.S.C. § 363(f)(1).

30. Shareholder Notes were not perfected by a security instrument against the Debtors. Accordingly, the Court may approve a sale free and clear of the Shareholder Notes pursuant to 11 U.S.C. §§ 363(f)(4) & 544(a)(1).

31. The Sale does not constitute a *sub rosa* Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the estate's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the estate.

32. Prior to the Petition Date, CPMG maintained a privacy policy restricting CPMG's use and disclosure of certain personally identifiable information ("PII")—namely, "protected health information," as defined by the federal Health Insurance Portability and Accountability Act ("HIPAA")—about the patients to whom CPMG provided medical services ("Patients") ("Privacy Policy").

33. The Privacy Policy has been maintained throughout the pendency of Debtors' chapter 11 cases.

34. On February 20, 2025, the Bankruptcy Court appointed the CPO, who has confirmed that no issues exist with respect to the sale to Anchor under the Anchor APA.

35. Other good and sufficient cause exists for amending the Order granting the Motion to permit the sale to Anchor.

/ / /

307628v2/1436-003

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted and the Initial Sale Order is amended to permit a sale to Anchor as described below;

2.      The Anchor APA attached to the Back-Up Bidder Notice is approved, and the Debtors are authorized to execute the Anchor APA and the ASA;

3.      Debtors are authorized to sell the Purchased Assets outside the ordinary of course of business and are further authorized to immediately pay any and all amounts owed to BMO based on its first-priority lien;

4.      Debtors are authorized to sign all documents and take all actions necessary to consummate the sale and close the transaction as contemplated in the APA, consistent with terms and conditions thereof;

5.      The sale of the Purchased Assets is free and clear of all liens, claims, and interests under 11 U.S.C. § 363(f). Specifically, the sale is free and clear of the following interests, with all such liens, claims, and interests to attach to the proceeds of sale with the same validity, priority, or extent that they would attach to the Property:

                a.   BMO UCC-1 Financing Statement, Filing No. 07-7097322653;

                b.   Backd UCC-1 Financing Statement, Filing No. U240030443226;

                c.   LendSpark UCC-1 Financing Statement, Filing No. U240055864431;

                d.   Despierta UCC-1 Financing Statement, Filing No. U240061296020;

                e.   Dell UCC-1 Financing Statement, Filing No. U210017365931;

                f.   TIAA UCC-1 Financing Statement, Filing No. 20-7804086055;

                g.   Hologic UCC-1 Financing Statement, Filing No. U210071055719;

                h.   IMIM Claim; and

                i.   Shareholder Notes.

6.      All funds earned by the Debtors for medical services provided pursuant to the ASA are free from any lien, encumbrance, claim or interest related to or arising from the Debtors operations or in connection with the administration of these Chapter 11 Cases and are required to be transferred to Anchor Management as provided under the ASA, and the Debtor is required to reimburse Anchor

Management for all costs and expenses incurred by Anchor Management in connection with the administrative services provided ASA as set forth therein. Any administrative claim arising from a breach of the ASA by the Debtors will be an administrative claim in these Chapter 11 cases, paid on par with other administrative claims.

7.      A sound business purpose exists for the sale;

8.      The sale is in the best interest of the Estate, and the minimum proposed sale price of $1,450,000 (or higher) is fair and reasonable;

9.      Adequate notice of the sale to Buyer and approval of the Anchor APA has been given;

10.     The sale is made in good faith and for value;

11.     Buyer is determined to have the protections of a good faith purchaser pursuant to 11 U.S.C. § 363(m);

12.     The sale of the Purchased Assets shall be "as-is" and "where-is" with all faults and without warranty, representation, or recourse whatsoever;

13.     The 14-day stay of the effectiveness of the sale order is waived; and

14.     The Court retains jurisdiction: (a) to interpret, enforce, and implement the terms and provisions of this sale; and (b) to resolve any disputes arising under or related to this order.

## Treatment of Executory Contracts and Unexpired Leases

15.     Pursuant to the terms of the Anchor APA, any anti-assignment provisions or consent requirements in the Designated Contracts shall not restrict, limit or prohibit the assumption, assignment and sale of the Designated Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of 11 U.S.C. § 365(f).

16.     Any cure to the extent it includes penalties not recoverable under 11 U.S.C. § 365(b)(2)(D) Code for non-monetary defaults is disallowed.

## A/R Collections

17.     Notwithstanding anything to the contrary in the Anchor APA, the Debtors will not sell, transfer, convey, or deliver to, and Anchor will not purchase, acquire, or accept from Sellers, the Government Receivables; *provided, however*, that Anchor is purchasing and accepting the Purchased

14

Assets, including all amounts collected in respect of the Government Receivables, which includes all economic rights and burdens of ownership for all income tax purposes.

18. Anchor is authorized to act as Debtors' collection agent with respect to the Government Receivables generated by or on behalf of Debtors on or before the Closing Date. In connection therewith, on or before the Closing Date, Debtors are authorized and directed to establish or maintain an existing depository bank account at a financial institution mutually acceptable to the parties, and after the Closing, Anchor, as collection agent, shall deposit in such depository account cash, checks, drafts, or other similar items of payment received in respect of the Government Receivables generated on or before the Closing Date, and such A/R Collections do not and will not constitute property of the Debtors' estate.

## Other Provisions

19. The failure specifically to include any particular provision of the APA or any related ancillary document in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Anchor APA and all related ancillary documents be authorized and approved in their entirety; provided, however, that this Order shall govern if there is any inconsistency between the Anchor APA (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

20. This Order constitutes an itemized statement of the property sold, the name of Buyer, and the price received for the property as a whole as required by Rule 6004(f)(1) of the Bankruptcy Rules.

307628v2/1436-003

21.     A certified copy of this Order may be filed with the California Secretary of State shall be act to cancel any liens and other encumbrances of record, as necessary.

###

Date: May 7, 2025

Erithe Smith
United States Bankruptcy Judge

16

307628v2/1436-003

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **DEBTORS' CHAPTER 11 STATUS REPORT** will be served
or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On
**November 25, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **November 25, 2025**, I served the following persons and/or entities at the
last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a
sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here
constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
CADUCEUS MEDICAL SERVICES LLC
18200 YORBA LINDA BLVD STE 111
YORBA LINDA, CA 92886-4043

**DEBTOR / CREDITOR / POC ADDRESS**
CADUCEUS PHYSICIANS MEDICAL GROUP, A
PROFESSIONAL CORPORATION
18200 YORBA LINDA BLVD STE 111
YORBA LINDA, CA 92886-4043

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on **November 25, 2025**, I served the following persons and/or entities by personal
delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the
judge will be completed no later than 24 hours after the document is filed.

**PRESIDING JUDGE'S COPY – VIA PERSONAL DELIVERY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR'S CHIEF RESTRUCTURING
OFFICER**
HOWARD GROBSTEIN
hgrobstein@gtllp.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 25, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>: CONTINUED:

- **INTERESTED PARTY COURTESY NEF:** Samuel Mushegh Boyamian samuel@marguliesfaithlaw.com, Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com; Amber@MarguliesFaithLaw.com
- **ATTORNEY FOR SECURED CREDITOR BMO BANK NATIONAL ASSOCIATION:** Christopher Crowell ccrowell@hrhlaw.com
- **ATTORNEY FOR DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Aaron E. De Leest on behalf adeleest@marshackhays.com, adeleest@marshackhays.com, alinares@ecf.courtdrive.com
- **INTERESTED PARTY COURTESY NEF:** Jeremy Faith Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com; Amber@MarguliesFaithLaw.com
- **SPECIAL COUNSEL ARENTFOX SCHIFF LLP:** M Douglas Flahaut df@echoparklegal.com
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Matthew Grimshaw mgrimshaw@marshackhays.com, mgrimshaw@ecf.courtdrive.com; alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR REGAL MEDICAL GROUP, INC.:** Payam Khodadadi pkhodadadi@mcguirewoods.com, dkiker@mcguirewoods.com
- **INTERESTED PARTY COURTESY NEF:** Marc A Lieberman marc.lieberman@flpllp.com, addy@flpllp.com, andrea@flpllp.com
- **SPECIAL COUNSEL ARENTFOX SCHIFF LLP:** Aram Ordubegian ordubegian.aram@arentfox.com
- **ATTORNEY FOR CREDITOR BATES JOHNSON BUILDING, LTD.:** Brett Ramsaur    brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com
- **ATTORNEY FOR CREDITOR ROMANOV GROUP, LLC:** Jeremy H Rothstein    jrothstein@gblawllp.com, msingleman@gblawllp.com;mbowes@gblawllp.com
- **INTERESTED PARTY COURTESY NEF:** Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** Ronghua Sophia Wang sophia.wang@afslaw.com
- **INTERESTED PARTY COURTESY NEF:** Pamela Kohlman Webster pwebster@buchalter.com, smartin@buchalter.com
- **ATTORNEY FOR SECURED CREDITOR DESPIERTA, LLC, ITS SUCCESSORS AND/OR ASSIGNEES:** Reilly D Wilkinson rwilkinson@scheerlawgroup.com, rwilkinson@ecf.courtdrive.com
- **ATTORNEY FOR DEBTOR CADUCEUS MEDICAL SERVICES LLC and DEBTOR CADUCEUS PHYSICIANS MEDICAL GROUP, A PROFESSIONAL MEDICAL CORPORATION:** David Wood dwood@marshackhays.com, dwood@ecf.courtdrive.com; lbuchananmh@ecf.courtdrive.com; spineda@ecf.courtdrive.com; alinares@ecf.courtdrive.com

2. <u>**SERVED BY UNITED STATES MAIL**</u>: CONTINUED:

| **20 LARGEST CREDITOR** | **20 LARGEST CREDITOR** | **20 LARGEST CREDITOR** |
|---|---|---|
| AMERICAN EXPRESS ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS P.O. BOX 0001 LOS ANGELES, CA 90096-0001 | AMERICAN EXPRESS NATIONAL BANK C/O BECKET AND LEE LLP PO BOX 3001 MALVERN, PA 19355-0701 | ASD HEALTHCARE - AMERISOURCEBERGEN ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR LAW TO RECEIVE SERVICE OF PROCESS P.O. BOX 100741 PASADENA, CA 91189-0741 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

**20 LARGEST CREDITOR**
AT&T
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
PO BOX 5019
CAROL STREAM, IL 60197-5019

**20 LARGEST CREDITOR**
AT&T
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
P.O. BOX 5025
CAROL STREAM, IL 60197-5025

**20 LARGEST CREDITOR**
~~BATES JOHNSON BLDG., LTD -
CHIRON 1~~
~~ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS~~
~~19742 MACARTHUR BVLD, #240
IRVINE, CA 92612-2446~~

**20 LARGEST CREDITOR**
~~BATES JOHNSON BUILDING LTD -
105~~
~~ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS~~
~~19742 MACARTHUR BVLD, #240
IRVINE, CA 92612-2446~~

**20 LARGEST CREDITOR**
~~BATES JOHNSON BUILDING, LTD -
CHIRO~~
~~ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS~~
~~19742 MACARTHUR BVLD, #240
IRVINE, CA 92612-2446~~

**20 LARGEST CREDITOR / POC
ADDRESS**
BUCHALTER, APC
ATTN: PAMELA K. WEBSTER
1000 WILSHIRE BLVD., STE. 1500
LOS ANGELES, CA 90017-1730

**20 LARGEST CREDITOR / POC
ADDRESS**
COMPLETE OFFICE
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
P.O. BOX 631935
CINCINNATI, OH 45263-1935

**20 LARGEST CREDITOR**
~~DAVID FLOOD, M.D.~~
~~4510 ALHAMBRA STREET~~
~~SAN DIEGO, CA 92107-4019~~

**20 LARGEST CREDITOR**
FORM MD 360
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
26691 PLAZA DRIVE, SUITE 200
MISSION VIEJO, CA 92691-8582

**20 LARGEST CREDITOR**
GASTROINTESTINAL AND LIVER
CON.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
2621 S. BRISTOL STREET, #202
SANTA ANA, CA 92704-5718

**20 LARGEST CREDITOR**
GREENWAY HEALTH LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
4301 W BOY SCOUT BLVD, #800
TAMPA FL 33607-5702

**20 LARGEST CREDITOR**
IRON MOUNTAIN RECORDS MGMT
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
P.O. BOX 601002
PASADENA, CA 91189-1002

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**20 LARGEST CREDITOR**
KELVIN NGUYEN, DPM
10091 NORTHAMPTON AVE.
WESTMINSTER, CA 92683-7535

**20 LARGEST CREDITOR**
MCKESSON MEDICAL SURGICAL
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
P.O. BOX 51020
LOS ANGELES, CA 90051-5320

**20 LARGEST CREDITOR / POC
ADDRESS**
MCKESSON MEDICAL-SURGICAL
INC.
C/O STEPHANIE HAMPTON
9954 MAYLAND DRIVE, SUITE 4000
HENRICO, VA 23233

**20 LARGEST CREDITOR**
MERCK & CO., INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
P.O. BOX 94000
PALATINE, IL 60094-4000

**20 LARGEST CREDITOR**
~~PFIZER INC.~~
~~ATTN: OFFICER, A MANAGING OR~~
~~GENERAL AGENT, OR TO ANY~~
~~OTHER AGENT AUTHORIZED BY~~
~~APPOINTMENT OR LAW TO RECEIVE~~
~~SERVICE OF PROCESS~~
~~P.O. BOX 417510~~
~~BOSTON, MA 02241-7510~~

**20 LARGEST CREDITOR / POC
ADDRESS**
SAFE BALANCE
C/O DREW S NORTON
1700 W BIG BEAVER RD, SUITE 220
TROY, MI 48084

**20 LARGEST CREDITOR**
~~SAFE BALANCE~~
~~ATTN: OFFICER, A MANAGING OR~~
~~GENERAL AGENT, OR TO ANY~~
~~OTHER AGENT AUTHORIZED BY~~
~~APPOINTMENT OR LAW TO~~
~~RECEIVE SERVICE OF PROCESS~~
~~401 S. OLD WOODWARD AVE.,~~
~~STE. 308~~
~~BIRMINGHAM, MI 48009-6625~~

**20 LARGEST CREDITOR**
SANOFI PASTEUR INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
12458 COLLECTION CENTER DR.
CHICAGO, IL 60693-0001

**20 LARGEST CREDITOR / POC
ADDRESS**
TECHMD
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
111 GRANT AVENUE, SUITE 103
ENDICOTT, NY 13760-5444

**20 LARGEST CREDITOR**
TECHMD
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
P.O. BOX 5
ENDICOTT, NY 13761-0005

**20 LARGEST CREDITOR**
VIERERGRUPPE MANAGEMENT INC.
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO RECEIVE
SERVICE OF PROCESS
1932 EAST DEERE AVE, SUITE 150
SANTA ANA, CA 92705-5716

**20 LARGEST CREDITOR /
LANDLORD**
~~BATES JOHNSON BLDG, LTD~~
~~ATTN: OFFICER, A MANAGING OR~~
~~GENERAL AGENT, OR TO ANY~~
~~OTHER AGENT AUTHORIZED BY~~
~~APPOINTMENT OR LAW TO RECEIVE~~
~~SERVICE OF PROCESS~~
~~19742 MACARTHUR BVLD, #240~~
~~IRVINE, CA 92612-2446~~

**20 LARGEST CREDITOR /
LANDLORD**
GLENNEYRE LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
327 THIRD STREET
LAGUNA BEACH, CA 92651-2306

**20 LARGEST CREDITOR / LANDLORD**
BATES, JOHNSON BUILDING, LTD., A
CALIFORNIA LIMITED PARTNERSHIP
C/O GENERAL PARTNER DALE T
FALASCO, TRUSTEE DALE T.
FALASCO LIVING TRUST 3/23/95
243 OCEAN VIEW AVE
NEWPORT BEACH, CA 92663

**20 LARGEST CREDITOR /
LANDLORD**
BATES, JOHNSON BUILDING, LTD., A
CALIFORNIA LIMITED PARTNERSHIP
C/O GENERAL PARTNER JAMES W.
JOHNSON, TRUSTEE JAMES W.
JOHNSON TRUST 7/16/79
2311 CLIFF DR
NEWPORT BEACH, CA 92663

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

**20 LARGEST CREDITOR**
PFIZER INC.
66 HUDSON BOULEVARD EAST
NEW YORK, NY 10001-2192

**20 LARGEST CREDITOR**
CALIFORNIA ORTHOPAEDIC
INSTITUTE
7485 MISSION VALLEY ROAD
SAN DIEGO, CA 92108

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**