STANLEY OTAKE
225 N. Deerwood Street
Orange, CA 92869
562-225-1934
Email: ucla1000@aol.com

STANLEY OTAKE, PATIENT CARE OMBUDSMAN,
IN PRO PER

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>CADUCEUS PHYSICIANS MEDICAL GROUP, a Professional Medical Corporation,<br>Dba CADUCEUS MEDICAL GROUP,<br><br>Debtor.<br><br>Debtor and Debtor in Possession | Bankruptcy Case No. 8:24-bk-11945-TA<br>**Chapter 11 Case**<br><br>**FINAL REPORT OF PATIENT CARE OMBUDSMAN PURSUANT TO 11 U.S.C. § 333(b)(2)**<br><br>[No Hearing Required] |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES OF INTEREST:

- 1 -

Pursuant to Federal Rules of Bankruptcy Procedure 207.2(c) and the order directing this appointment entered on August 19, 2024, Stanley Otake was duly appointed on August 23. 2024 as the Patient Care Ombudsman (PCO) for the Caduceus Physicians Medical Group ("Debtor") bankruptcy case.

## I. INTRODUCTION

On August 19, 2024, the Court ordered the appointment of a PCO pursuant to 11 U.S.C. § 333 (a)(1) to monitor and report to the Court, the quality of patient care provided by the Debtor. As per compliance with the Notice of Appointment, a one page notice was posted at each of the Debtor's practice locations with the PCO's contact information allowing for reporting of any patient care concerns and questions. Those locations included two in Yorba Linda, one in Irine and a practice in Laguna Beach, California.

## II, INITIAL MEETING

On August 28, 2024, PCO met with the Debtor's team including Gregg Denicola, M.D., CEO, Ray Weaver, Monique Wusstig and Kailey Wright. PCO discussed his role in the bankruptcy case and asked questions regarding the Debtor's organizational structure including individuals overseeing operations and professional medical care. PCO and the Debtor's discussed challenges that led to the bankruptcy filing. PCO discussed the requirement for posting the Notice of Appointment and scheduled site visits to each practice location.

## III. SITE VISITS

On November 8, 2024 and on December 16, 2024, PCP performed site inspections on the Caduceus Practices. All sites were inspected, and all were compliant with health and safety requirements. Previous concerns regarding expired medications were addressed and none were found on inspections of exam and treatment rooms.

PCO reviewed staff scheduling reports and is satisfied that staffing meets patient volume and acuity requirements. PCO was informed of the relocation of certain services in the Yorba Linda office and has no concerns regarding impact to patient care by the changes made.

All facilities appeared to have ample supplies and medications. Review and discussions related to negative social media postings were conducted and the PCO is satisfied with the feedback regarding patient complaints.

On May 8. 2025, the Debtor successfully closed a sale to a new buyer, Anchor Medical Group, P.C. (AMG). AMG simultaneously entered into an agreement with the Debtor to provide certain administrative services until licensing, credentialing and billing details with payors are completed. The Debtor remains in charge of the medical care of patients until the end of the transition period which is estimated to last anywhere from six to twelve months. Communication with the Debtor regarding scheduling site visits and questions regarding patient complaints were routinely handled until recently as roles apparently have changed within the organization. The Debtor shared that staffing key back-office positions and customer service positions have been challenged by the uncertainty of future employment and stability of a company in bankruptcy. Debtor shared they are interviewing and hiring new providers to improve access to care.

On July 1, 2025, performed site inspections at the Yorba Linda facilities and observed personnel changes and new management in place. Staff mentioned changes forthcoming with their phone systems which was a big problem with scheduling and communications with the office. PCO reviewed staffing schedules at each location for physician and staff coverage. A routine review of exam rooms revealed expired medications in every exam room. Management provided proof of training and inservice of policy within five days post visit.

## V.    CONCLUSION

On October 2, 2025, Debtor Filed Motion to Terminate the Appointment of the Patient Care Ombudsman. The PCO acknowledges that the sale was concluded and the new owners are now in charge of both the management services and the oversight of medical care. The transition period of six months was also nearing conclusion and termination was reasonable. On November 17, 2025, the court discharged the PCO from any further duties and obligations in this case.

After all site reviews and inspections, the PCO found that the care being provided to the patients of the Debtor's practice remains within the standard of care in the community. The PCO is available to answer any concerns or questions of the Court or of any parties.

X _____    /s/ *StanleyOtake*
Stanley Otake                      By: Stanley Otake, Patient Care Ombudsman
Patient Care Ombudsman

December 8, 2025

- 4 -